



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **EHAB ALLABABIDI,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>CORPORATE DEFENDANTS:<br>ADVOCATE HEALTH AND HOSPITALS<br> CORPORATION d/b/a ADVOCATE<br> LUTHERAN GENERAL HOSPITAL;<br>ADVOCATE AURORA HEALTH, INC.;<br><br>INDIVIDUAL DEFENDANTS:<br>DR. LAURA MURPHY, MD;  DR. ANNA KURAPEY, DO;<br>DR. PATRICK PIPER, MD;  DR. MAY SOLIZ, MD;<br>AMANDA S. GUSSWEIN, CNP;  KAREN FORTE, LCPC;<br>JANICE MARCH, LCSW;  GRACE COAKLEY, RN;<br>NICOLE M. ABBATACOLA, RN;  PATRYCJA ZYGMUNT, RN;<br>EMILIA M. HOSTALEK, RN;  SEBASTIAN P. SMYLA, RN;<br>ALYSSA KOURELIS, RN;  SHIRIN Z. JIVA, RN,<br><br>*Defendants.* | **CIVIL ACTION**<br><br>Case No. _____<br><br>Judge: _____<br><br>Magistrate: _____<br><br>┌─────────────────────────┐<br>│ **JURY TRIAL DEMANDED** │<br>└─────────────────────────┘<br><br>Filed: _____<br><br>**1:25-cv-15800**<br>**Judge Jorge L. Alonso**<br>**Magistrate Judge Laura K. McNally**<br>**RANDOM/Cat 2** |

# VERIFIED COMPLAINT

## FOR DAMAGES UNDER RICO

(18 U.S.C. §§ 1962(c), (d))
AND COMMON LAW FRAUD

**PLAINTIFF, PRO SE:**

**EHAB ALLABABIDI**
8516 W. Winona St.
Chicago, IL 60656
Tel: (773) 920-0030
Email: defcon5ready@gmail.com
*(For ECF Notification Purposes)*

**/s/ Ehab Allababidi**
*Plaintiff, Pro Se*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 5

JURISDICTION AND VENUE .................................................................... 5

    Federal Question Jurisdiction (28 U.S.C. § 1331) ................................................. 5

    Supplemental Jurisdiction (28 U.S.C. § 1367) ..................................................... 5

PARTIES ........................................................................................................ 5

    The Plaintiff ........................................................................................ 5

    Corporate Defendants ........................................................................... 6

    Individual Defendants (14 Hospital Staff) .............................................. 6

    Ultra Vires Conduct / Personal Liability ............................................... 8

THE RICO ENTERPRISE ............................................................................ 9

    Association-in-Fact Enterprise Structure ............................................... 9

    Enterprise Distinctness (Cedric Kushner) ............................................. 10

    Roles Within the Enterprise ................................................................. 12

PATTERN OF RACKETEERING ACTIVITY .............................................. 14

    Predicate Act Matrix .......................................................................... 15

    Wire Fraud - $33,580.00 False Claims (18 U.S.C. § 1343) ...................... 15

    Healthcare Fraud - Revenue Code 0126 Abuse (18 U.S.C. § 1347) ........... 18

THE SCHEME TO DEFRAUD ..................................................................... 19

PLAINTIFF'S EXPERIENCE ....................................................................... 20

    January 28, 2023: Voluntary Arrival .................................................... 20

    February 2, 2023: Forced Injection (16:17 CST) ................................... 21

    115-Hour Four-Point Mechanical Restraint .......................................... 21

    February 7, 2023: Police Called (5 Days Later) .................................... 23

    Criminal Charges Filed Without Investigation ...................................... 22

RICO LEGAL STANDARDS ........................................................................ 27

    Enterprise Definition (Boyle v. United States) ...................................... 28

    Pattern Requirement (H.J. Inc. v. Northwestern Bell) ............................ 28

    Proximate Causation (Holmes v. SIPC) ............................................... 29

ANTICIPATED DEFENSES AND RESPONSES ........................................... 29

    Defense 1: Intracorporate Conspiracy Doctrine .................................... 29

    Defense 2: No Pattern / Single Scheme ................................................ 30

Defense 3: No Enterprise Separate from Defendants ............................................................ 30

Defense 4: Speculative Damages ................................................................. 31

Defense 5: Rule 9(b) Particularity ................................................................. 31

Defense 6: Statute of Limitations ................................................................. 32

**COUNT I - RICO (18 U.S.C. § 1962(c))** ................................................................. 34

Conduct of Enterprise Affairs ................................................................. 34

Through Pattern of Racketeering Activity ................................................................. 35

Treble Damages Entitlement ................................................................. 38

**COUNT II - RICO CONSPIRACY (18 U.S.C. § 1962(d))** ................................................................. 42

**COUNT III - COMMON LAW FRAUD** ................................................................. 43

Misrepresentation by Omission ................................................................. 44

Justifiable Reliance ................................................................. 44

**COUNT IV - UNJUST ENRICHMENT** ................................................................. 45

**PRAYER FOR RELIEF** ................................................................. 49

Tier 1: Direct Financial Damages ................................................................. 49

Tier 2: Consequential Damages ................................................................. 49

Tier 3: Treble Damages Under RICO ................................................................. 49

**VERIFICATION** ................................................................. 50

**EXHIBITS** ................................................................. 51

Exhibit A: Chain of Custody Timeline ................................................................. 51

Exhibit B: Hospital Bill ($33,580.00) ................................................................. 54

Exhibit C: Police Fact Sheet (16:20 Incident) ................................................................. 60

Exhibit D: Medication Administration Records ................................................................. 66

Exhibit E: Restraint Documentation (115 Hours) ................................................................. 71

Exhibit F: Transfer Order (Dr. Piper) ................................................................. 80

Exhibit G: Vital Signs / MEWS Data ................................................................. 84

Exhibit H: Nursing Flowsheets (Contradictions) ................................................................. 91

Exhibit I: Dr. Murphy Renewal Orders ................................................................. 98

Exhibit J: Subpoena Tracking Sheet ................................................................. 105

Exhibit K: Face Sheet / Insurance (Dallas TX) ................................................................. 107

# TABLE OF AUTHORITIES

**CASES:**

| | |
|---|---|
| *Bagent v. Blessing Care Corp., 224 Ill. 2d 154 (2007)* | 8, 29 |
| *Boyle v. United States, 556 U.S. 938 (2009)* | 9, 28 |
| *Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001)* | 10, 28, 29 |
| *Connick v. Suzuki Motor Co., 174 Ill. 2d 482 (1996)* | 44 |
| *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)* | 29 |
| *Grogan v. Platt, 835 F.2d 844 (11th Cir. 1988)* | 29, 41 |
| *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)* | 28, 29, 34 |
| *Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992)* | 28, 30, 39 |
| *Midwest Grinding Co. v. Spitz, 976 F.2d 1016 (7th Cir. 1992)* | 31 |
| *People of the State of Illinois v. Ehab Allababidi, No. 23CR0241301* | 22, 27, 31, 33, 39, 40, 49 |
| *Reves v. Ernst & Young, 507 U.S. 170 (1993)* | 11, 14, 28, 30 |
| *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)* | 38, 39 |

**FEDERAL STATUTES:**

| | |
|---|---|
| 18 U.S.C. § 1347 (Healthcare Fraud) | 8, 15, 18, 19, 21, 34 |
| 18 U.S.C. § 1343 (Wire Fraud) | 15, 16, 34 |
| 18 U.S.C. § 1961 (RICO Definitions) | 9, 10, 14, 28, 34 |
| 18 U.S.C. § 1962(c) (RICO - Conduct of Enterprise) | 5, 10, 14, 27, 34, 42, 49 |
| 18 U.S.C. § 1962(d) (RICO - Conspiracy) | 42 |
| 18 U.S.C. § 1964(c) (Civil RICO Remedies) | 5, 28, 38, 41, 49 |
| 28 U.S.C. § 1331 (Federal Question Jurisdiction) | 5 |
| 28 U.S.C. § 1367 (Supplemental Jurisdiction) | 5 |
| 28 U.S.C. § 1391(b) (Venue) | 5 |
| 28 U.S.C. § 1746 (Unsworn Declarations) | 50 |
| 28 U.S.C. § 1915 (In Forma Pauperis) | 1 |
| 31 U.S.C. § 3729 (False Claims Act) | 46 |

**ILLINOIS STATUTES:**

| | |
|---|---|
| 5 ILCS 140/ (Freedom of Information Act) | 27, 37 |
| 405 ILCS 5/3-403 (Voluntary Patient Rights) | 20, 44 |
| 405 ILCS 5/3-601 (Commitment Petition Filing) | 8, 12, 18, 20 |
| 405 ILCS 5/3-602 (Certificate Requirements) | 18 |
| 720 ILCS 5/10-1 (Kidnapping) | 9, 21 |
| 720 ILCS 5/12-3.05(d)(11) (Aggravated Battery to Nurse) | 22 |

**COURT RULES:**

| | |
|---|---|
| Fed. R. Civ. P. 8 (General Rules of Pleading) | 28 |
| Fed. R. Civ. P. 9(b) (Pleading Fraud with Particularity) | 14, 31 |
| Local Rule 3.2 (Related Cases Disclosure) | 49 |

## INTRODUCTION

**1.** This is a civil action brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c) and (d), and common law fraud arising from Defendants' scheme to unlawfully detain psychiatric patients without legal authorization while billing government healthcare programs for fictitious "detoxification" services.

**2.** Defendants operated an enterprise through **Advocate Lutheran General Hospital**'s 12th floor psychiatric unit that systematically: (a) detained voluntary patients without filing legally required commitment petitions; (b) fraudulently billed Medicare and Medicaid for services not rendered; (c) used chemical and physical restraints to prevent patients from leaving; and (d) caused criminal prosecutions to be initiated against patients who resisted by providing false or misleading reports to law enforcement.

**3.** Plaintiff was detained for eleven (11) days without any legal authority, billed $33,580.00 for "Room Charge Detox" services he never received, and criminally prosecuted for behavior that occurred three (3) minutes after Defendants forcibly injected him with sedating medications.

## JURISDICTION AND VENUE

**4.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 (federal question) and 18 U.S.C. 1964(c) (civil RICO).

**5.** This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1367.

**6.** Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b) because a substantial part of the events giving rise to this action occurred in Cook County, Illinois, and Defendants reside and conduct business in this district.

**7.** The amount in controversy exceeds $75,000 exclusive of interest and costs.

## PARTIES

The Plaintiff

**8.** Plaintiff Ehab Allababidi is a natural person and citizen of Illinois, residing in Cook County, Illinois, with mailing address 8516 W. Winona St., Chicago, Illinois 60656.

The Corporate Defendants

**9.** Defendant **Advocate Health and Hospitals Corporation** ("**Advocate**") is an Illinois corporation that owns and operates **Advocate Lutheran General Hospital**, located at 1775 Dempster Street, Park Ridge, Cook County, Illinois.

**10.** Defendant **Advocate Aurora Health, Inc.** ("**Advocate** Aurora") is a Wisconsin corporation that manages, controls, and materially participates in the billing, risk management, and operational policies of **Advocate Lutheran General Hospital**.

**11.** **Advocate** and **Advocate** Aurora (collectively, the "Corporate Defendants") are providers enrolled in Medicare (Title XVIII of the Social Security Act) and Illinois Medicaid (Title XIX), and regularly submit claims for reimbursement to the Centers for Medicare and Medicaid Services ("CMS") and the Illinois Department of Healthcare and Family Services.

The Individual Defendants

**12.** Defendant **Dr.** Laura Murphy**, MD**, is the attending psychiatrist who ordered Plaintiff's eleven-day detention without filing any petition for involuntary admission, ordered forced medication injections, and authorized billing under Revenue Code 0126 ("Room Charge Detox") for a patient who was not receiving detoxification services.

**13.** Defendant **Amanda S.** Gusswein**, CNP**, is a Certified Nurse Practitioner who detained Plaintiff in an examination room while arranging forced chemical restraint.

**14.** Defendant **Karen** Forte**, LCPC**, is a Licensed Clinical Professional Counselor who, according to clinical notes, participated in preparation of Certificates for involuntary admission that were never filed with any court and were not produced in Plaintiff's medical records.

**15.** Defendant **Janice** March**, LCSW**, is a Licensed Clinical Social Worker who, according to clinical notes stating "Worker completed the petition and placed on the chart with the certificate," participated in preparation of a Petition for Involuntary Admission that was never filed with the Cook County Circuit Court as required by Illinois law and was not produced in Plaintiff's medical records.

**16.** Defendant **Dr.** Anna Kurapey**, DO**, is a physician who, upon information and belief based on clinical notes, signed Inpatient Certificates that were referenced but never filed with any court and were not produced in Plaintiff's medical records.

17. Defendant **Grace** Coakley**, RN**, is a Registered Nurse who administered forced injections to Plaintiff and reported his pharmacological reactions to police as criminal behavior.

18. Defendant **Nicole M.** Abbatacola**, RN**, is a Registered Nurse who failed to perform required safety monitoring during Plaintiff's physical restraint.

19. Defendant **Patrycja** Zygmunt**, RN**, is a Registered Nurse who applied and maintained multi-day four-point mechanical restraints on Plaintiff, exceeding the CMS 4-hour limit by 2,775%.

20. Defendant **Dr.** Patrick Piper**, MD**, is a Resident Physician who signed restraint renewal orders on February 2-3, 2023, and ordered Plaintiff's transfer to the 12th Floor MMWU (Room 1258) at 18:49 CST—a unit with limited/no CCTV surveillance—44 minutes after the alleged incident.

21. Defendant **Dr.** May Soliz**, MD**, is a Physician who signed restraint renewal orders on February 5, 2023, authorizing the continuation of four-point mechanical restraints far beyond the federal 4-hour limit.

22. Defendant **Emilia M.** Hostalek**, RN**, is a Registered Nurse who initiated four-point mechanical restraints on Plaintiff at 18:05 CST on February 2, 2023, and documented same.

23. Defendant **Sebastian P.** Smyla**, RN**, is a Registered Nurse who continued Plaintiff's four-point mechanical restraints during overnight shifts on February 3, 5, and 6, 2023, and documented gaps in required q-15 minute safety monitoring.

24. Defendant **Alyssa** Kourelis**, RN**, is a Registered Nurse who continued Plaintiff's four-point mechanical restraints on February 6, 2023, at 22:13 CST.

25. Defendant **Shirin Z.** Jiva**, RN**, is a Registered Nurse who, upon information and belief, was one of the four nurses who reported the 16:20 CST "incident" to police and is listed as a victim in the criminal complaint. Despite claiming to be a victim of battery at 16:20 CST, **Jiva** returned to Plaintiff's room five (5) hours later at 21:16 CST to administer an Enoxaparin (blood thinner) injection while Plaintiff was in four-point restraints—proving she was not in "reasonable apprehension of harm" as required for her criminal complaint. This return to provide direct care to her alleged "attacker" violates standard hospital protocols prohibiting victim-nurses from treating patients they accuse of assault, and demonstrates that the criminal charges were filed in bad faith. Upon information and belief, during this 21:16 injection, **Jiva** and/or accompanying staff mocked Plaintiff by stating words to the effect of "we need to put some blood thinners in

him" while laughing—conduct constituting Intentional Infliction of Emotional Distress.

**26.** All Individual Defendants acted within the scope of their employment with the Corporate Defendants, and the Corporate Defendants are vicariously liable for their conduct.

## ULTRA VIRES CONDUCT AND INTRA-CORPORATE CONSPIRACY DOCTRINE

**27.** INAPPLICABILITY OF INTRA-CORPORATE CONSPIRACY DOCTRINE: Defendants will likely argue that Individual Defendants cannot "conspire" with the Corporate Defendants because they are employees acting within the scope of employment. This defense fails because:

   a. The Individual Defendants acted outside the scope of legitimate employment. Committing healthcare fraud (18 U.S.C. § 1347), battering patients without consent, and filing false reports to law enforcement are ultra vires acts—conduct beyond the authority granted by any employment contract.

   b. No hospital employment contract authorizes employees to: (i) detain voluntary patients without court orders; (ii) bill for services not rendered; (iii) falsify medical records; (iv) report drug-induced behavior as criminal assault; or (v) maintain restraints for 28× the federal limit.

   c. Under Illinois law, employees who commit intentional torts or criminal acts step outside the scope of employment. See *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154 (2007).

   d. The conspiracy alleged herein is not a "single entity" acting through agents, but rather multiple RICO "persons"—each with distinct personal interests (license protection, liability avoidance, career advancement)—agreeing to conduct the Enterprise's affairs through racketeering activity.

   e. THE UNFILED PETITION AS ULTRA VIRES PROOF: Despite a clinical note referencing preparation of a petition and certificate, no Petition for Involuntary Admission was ever filed with the Cook County Circuit Court as required by 405 ILCS 5/3-601, and no such documents were produced in Plaintiff's medical records. Because no petition was filed within 24 hours as required by statute, the Individual Defendants' subsequent detention of Plaintiff was legally unauthorized and outside the scope of their employment (Ultra Vires). Illinois law is unambiguous: no petition filed with the court = no legal authority to detain. A hospital cannot employ staff to commit kidnapping; therefore, the Individual Defendants' actions in detaining Plaintiff for eleven (11) days without any court-filed petition were personal acts of racketeering—not corporate acts protected by the intra-corporate conspiracy doctrine.

Each Individual Defendant knew or should have known that detaining a patient without a court-filed petition constitutes false imprisonment and kidnapping under Illinois law (720 ILCS 5/10-1), and their participation in such detention was ultra vires conduct for which they bear personal RICO liability.

## THE RICO ENTERPRISE

DEFINITION OF THE ENTERPRISE (Distinct from Each Defendant)

28. The "Enterprise" is an association-in-fact within the meaning of 18 U.S.C. 1961(4), consisting of the integrated detention-and-billing workflow operated through **Advocate Lutheran General Hospital**'s 12th Floor MMWU (Medical Mental Wellness Unit). The Enterprise is NOT identical to any single Defendant; rather, it is the ongoing operational system through which each Defendant—as a RICO "person"—conducted racketeering activity. Consistent with *Boyle v. United States*, 556 U.S. 938 (2009), this association-in-fact has a purpose (maximizing revenue through fraudulent billing), relationships among participants (hierarchical roles from corporate policy-makers to executing staff), and longevity (operating since at least January 2023). The Enterprise includes:

   a. The physical infrastructure: The 12th Floor MMWU detention unit, its restraint equipment, medication dispensary, and electronic billing systems;

   b. The billing workflow: The systematic application of Revenue Code 0126 ("Room Charge Detox" at $2,930/day) to psychiatric patients regardless of actual diagnosis;

   c. The documentation system: Medical records, restraint logs, nursing flowsheets, and commitment paperwork prepared but not filed;

   d. The claims transmission pipeline: Electronic submission of claims from Park Ridge, Illinois to Blue Cross Community in Dallas, Texas via interstate wire;

   e. External instrumentalities and third parties used by the Enterprise: The Enterprise utilizes external instrumentalities to accomplish its objectives, including Blue Cross Community's claims processing center in Dallas, Texas (PO Box 650712, Dallas, TX 75265-0712), Epic Systems Corporation (the EMR vendor), and billing clearinghouse intermediaries who facilitate the interstate transmission of claims. These external entities are not members of the Enterprise but rather instrumentalities and conduits through which the Defendant-members transmit fraudulent claims. The Enterprise membership is limited to the named Defendants who share the common purpose of the detention-billing scheme.

**28A.**   ENTERPRISE IS DISTINCT FROM DEFENDANT-PERSONS: To satisfy the distinctness requirement of *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), Plaintiff specifically alleges that:

   a.   The Corporate Defendants (**Advocate**, **Advocate** Aurora) are RICO "persons" who CONDUCT the Enterprise—they are not themselves the Enterprise. The Enterprise is the detention-billing workflow system, not the corporation;

   b.   The Individual Defendants are RICO "persons" who PARTICIPATE in the Enterprise's affairs—they are employees who operate the workflow, not the workflow itself;

   c.   The Enterprise has an existence independent of any single defendant: if **Dr. Murphy** were terminated tomorrow, the 12th Floor MMWU workflow would continue to operate with different personnel; if **Advocate** sold the hospital, the workflow could continue under new ownership. The Enterprise is the system, not the actors;

   d.   External participants (Blue Cross processors, Epic EMR systems) demonstrate that the Enterprise extends beyond **Advocate**'s corporate boundaries, further establishing distinctness.

**29.**   DISTINCTNESS: The Enterprise is separate and distinct from each Defendant. Each Defendant is a RICO "person" under 18 U.S.C. 1961(3) who conducted or participated in the Enterprise's affairs. No single Defendant IS the Enterprise; each Defendant USED the Enterprise to commit predicate acts. This distinction is critical: **Advocate Health and Hospitals Corporation** is a person; the detention-billing workflow it operates is the enterprise. **Dr. Murphy** is a person; the medical order system she utilized to authorize restraints and billing codes is part of the enterprise. This satisfies the distinctness requirement established by the Supreme Court in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001), which held that a corporate employee or affiliate can be distinct from a corporate enterprise for purposes of § 1962(c).

THE 12TH FLOOR MMWU WORKFLOW AS DISTINCT ENTERPRISE: **Advocate** (the Person) creates the policies, but the 12th Floor MMWU Workflow (the Enterprise) is the distinct mechanism that executes the detention-and-billing scheme. This Enterprise consists of specific hardware (four-point restraint beds, locked unit doors, medication dispensary), specific software (Epic EMR system), and specific personnel (security staff, psychiatric nurses trained in chemical restraint administration) that function independently of the hospital's general medical operations. On information and belief, the Epic EMR system may contain billing configuration settings or chargemaster

mappings that facilitate the application of Revenue Code 0126 ("Room Charge Detox") to 12th Floor MMWU admissions. The factual basis for this belief is that Plaintiff's itemized bill (Exhibit B) shows Revenue Code 0126 applied as a per diem line item for eleven consecutive days despite the complete absence of any detoxification orders, withdrawal assessments, or detox medications in the 420-page medical record—a pattern inconsistent with individualized billing decisions. Discovery will determine whether this results from EMR default settings, chargemaster mapping rules, billing department policy, or some combination thereof. The 12th Floor MMWU is not merely a "department" of **Advocate**—it is a specialized psychiatric detention unit with its own infrastructure, protocols, and revenue stream that operates as a distinct enterprise through which each Defendant-person conducted racketeering activity.

## ENTERPRISE STRUCTURE

**30.** The Enterprise has the following characteristics:

    a. COMMON PURPOSE: To maximize revenue by billing premium "Detox" rates (Revenue Code 0126, $2,930/day) for psychiatric patients regardless of actual diagnosis or treatment provided.

    b. ONGOING ORGANIZATION: The Enterprise has operated continuously since at least January 2023 and continues to operate. It has a defined structure with hierarchical decision-making.

    c. DECISION FLOW: Corporate Defendants establish billing codes and revenue policies; attending physicians authorize detention and medication orders; social workers prepare commitment paperwork; nursing staff execute restraints and document justifications; billing department transmits claims.

**31.** On information and belief, the Enterprise utilizes the 12th Floor MMWU in part because it may have limited or no standard psychiatric video surveillance (CCTV) compared to Unit 3C. If confirmed, the selection of a unit with reduced video monitoring capability would be relevant to the scheme.

## OPERATION AND MANAGEMENT (REVES PARTICIPATION)

**32.** Each Defendant is a RICO "person" who conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, satisfying the *Reves* "operation or management" test. *Reves* requires that the defendant have "some part in directing" the enterprise's affairs. 507 U.S. at 179. The following identifies each Defendant's specific decision-making authority and the documentary proof thereof:

a.  CORPORATE DEFENDANTS (**Advocate**/**Advocate** Aurora):
ROLE: Enterprise architects and beneficiaries. DECISION AUTHORITY: Established
Revenue Code 0126 billing policy for the 12th Floor MMWU; set revenue targets that
incentivized extended detention; controlled claims transmission systems; received and
retained fraudulent proceeds ($33,580.00). DISCRETION EXERCISED: The Corporate
Defendants chose to implement and maintain the billing infrastructure that enabled
systematic fraud. EXHIBIT PROOF: Exhibit B (itemized bill showing Revenue Code
0126 charges transmitted under **Advocate**'s provider number); Exhibit K (insurance
face sheet identifying **Advocate** as billing entity).

b.  **DR. LAURA MURPHY**, MD (Authorizer):
ROLE: Attending psychiatrist with sole authority over admission, treatment, and
discharge. DECISION AUTHORITY: As attending physician, **Dr. Murphy** had
exclusive discretion to: (i) order or discontinue detention; (ii) order or discontinue
chemical/mechanical restraints; (iii) authorize billing codes through her treatment orders;
(iv) discharge Plaintiff at any time. DISCRETION EXERCISED: **Dr. Murphy** chose
to maintain detention for 11 days without filing legally required petitions; chose to renew
restraint orders 28+ times (115 hours / 4-hour limit); chose not to order detoxification
treatment while billing for "Detox" services. EXHIBIT PROOF: Exhibit I (restraint
renewal orders bearing her signature); Exhibit B (billing for services she authorized).

c.  **JANICE MARCH**, LCSW (Documentation/Non-Filing):
ROLE: Licensed Clinical Social Worker responsible for filing commitment petitions.
DECISION AUTHORITY: **March** had professional discretion over whether and
when to file the Petition for Involuntary Admission with the court. Under 405 ILCS
5/3-601, she was required to file within 24 hours. DISCRETION EXERCISED:
**March** chose to prepare commitment documentation but deliberately did not file it
with any court, thereby avoiding judicial oversight while creating internal documentation
that appeared compliant. A clinical note states "Worker completed the petition and placed
on the chart with the certificate"; however, no such petition or certificate was ever filed
with the Cook County Circuit Court as required by Illinois law, and no petition or
certificate documents were produced in the medical records provided to Plaintiff despite
this notation. EXHIBIT PROOF: Clinical note referencing petition preparation; absence
of petition/certificate in 420-page medical record production; Cook County Circuit Court
docket search showing no mental health petition filed for Plaintiff during the relevant
time period.

d.  **KAREN FORTE**, LCPC (Documentation/Non-Filing):
ROLE: Licensed Clinical Professional Counselor responsible for certificates. DECISION
AUTHORITY: **Forte** had professional discretion over the content and filing of
certificates supporting involuntary admission. DISCRETION EXERCISED: A clinical

note references preparation of certificates, but no certificates were ever filed with any court, and no certificate documents were produced in Plaintiff's medical records, enabling detention without judicial authorization. EXHIBIT PROOF: Clinical note referencing certificate preparation; absence of certificates in 420-page medical record production; Cook County Circuit Court records showing no certificates filed.

e. **GRACE COAKLEY**, RN (Execution/Reporting):
ROLE: Registered Nurse who administered chemical restraints and reported to police. DECISION AUTHORITY: As the RN who administered the 16:17 injection, **Coakley** exercised professional judgment over medication administration timing and technique. She also exercised discretion in reporting Plaintiff's drug-induced behavior to police as criminal assault. DISCRETION EXERCISED: **Coakley** chose to administer Haloperidol 3mg and Lorazepam 2mg at 16:17; chose to report Plaintiff's behavior at 16:20 (180 seconds later) to police as assault rather than recognizing pharmacological causation. EXHIBIT PROOF: Exhibit D (MAR showing **Coakley**'s 16:17 administration); Exhibit C (Police Fact Sheet showing 16:20 incident time).

f. **NICOLE M. ABBATACOLA**, RN (Execution/Monitoring):
ROLE: Registered Nurse responsible for restraint monitoring. DECISION AUTHORITY: **Abbatacola** had discretion over restraint monitoring frequency and documentation of patient status. DISCRETION EXERCISED: **Abbatacola** chose to document restraint justifications despite gaps in required q-15 minute monitoring. EXHIBIT PROOF: Exhibit E (restraint documentation with monitoring gaps); Exhibit H (nursing flowsheets).

g. **PATRYCJA ZYGMUNT**, RN (Execution/Restraint):
ROLE: Registered Nurse who applied and maintained mechanical restraints. DECISION AUTHORITY: **Zygmunt** exercised professional discretion over the application, tightness, and duration of four-point mechanical restraints. DISCRETION EXERCISED: **Zygmunt** chose to maintain restraints for 115 consecutive hours—28.75× the 4-hour federal limit—despite stable MEWS scores (0-1) indicating no clinical necessity. EXHIBIT PROOF: Exhibit E (restraint documentation); Exhibit G (MEWS scores showing stable patient).

h. **AMANDA S. GUSSWEIN**, CNP (Initial Detention):
ROLE: Certified Nurse Practitioner in Emergency Department. DECISION AUTHORITY: **Gusswein** exercised discretion in the initial detention and chemical restraint decision. DISCRETION EXERCISED: **Gusswein** chose to detain Plaintiff and arrange forced chemical restraint within 33 minutes of his voluntary arrival. EXHIBIT PROOF: ED records showing 18:38 arrival and 19:11 first forced injection (medical records).

i. **DR. ANNA KURAPEY**, DO (Certification):
ROLE: Physician who signed inpatient certificates. DECISION AUTHORITY: Kurapey exercised professional discretion in signing certificates supporting involuntary admission. DISCRETION EXERCISED: Kurapey chose to sign certificates that were never filed with any court. EXHIBIT PROOF: Medical records showing Kurapey's signature on unfiled certificates (Exhibit E).

**33.**   The Enterprise affects interstate commerce because: (a) **Advocate Aurora Health** is headquartered in Wisconsin; (b) Medicare and Medicaid payments are transmitted electronically across state lines to Dallas, Texas; (c) medical supplies and pharmaceuticals used in the scheme travel in interstate commerce; and (d) the Hospital serves patients from multiple states.

RICO ELEMENTS CHECKLIST (18 U.S.C. 1962(c))

**34.**   For the Court's convenience, Plaintiff identifies each element of a civil RICO claim and the paragraphs establishing same:

ELEMENT 1 - PERSON: Each Defendant is a RICO "person" capable of conducting an enterprise's affairs. See 18 U.S.C. 1961(3); paragraphs 8-20.

ELEMENT 2 - ENTERPRISE: The detention-billing workflow is an association-in-fact enterprise, distinct from each Defendant, with common purpose, ongoing organization, and structure. See paragraphs 21-26.

ELEMENT 3 - CONDUCT/PARTICIPATION: Each Defendant conducted or participated in the Enterprise's affairs through a pattern of racketeering activity (Reves "operation or management" test satisfied). See paragraph 25(a)-(e).

ELEMENT 4 - PATTERN: Two or more related predicate acts (wire fraud, healthcare fraud, mail fraud) with continuity (open-ended). See paragraphs 28-40.

ELEMENT 5 - INJURY TO BUSINESS OR PROPERTY: Plaintiff suffered concrete financial injuries—specifically, $33,580 in fraudulent charges submitted to Medicaid and criminal defense costs resulting from false police reports—proximately caused by the predicate acts. See paragraphs 80-82.

**PATTERN OF RACKETEERING ACTIVITY**

**35.**   Defendants engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. 1961(5), consisting of multiple related predicate acts occurring within ten years.

PREDICATE ACTS MATRIX (Rule 9(b) Compliance)

**36.** The following matrix identifies each predicate act with particularity:

**PREDICATE 1 - WIRE FRAUD (18 U.S.C. 1343):**

Date: On or about February 7, 2023
Actor: Corporate Defendants (billing department)
Method: Electronic transmission via interstate wire; on information and belief, transmitted as an EDI 837 Institutional claim (the standard HIPAA-compliant electronic format for hospital billing) through a healthcare clearinghouse to the payor's claims processing system. This transmission method is standard practice for hospital-to-payor claims submission.
Origin: Park Ridge, Illinois
Destination: Blue Cross Community, PO Box 650712, Dallas, TX 75265-0712
Document: Claim/Visit ID #467392168
False Statement: Revenue Code 0126 "Room Charge Detox" for non-detox patient
Amount: $33,580.00
Exhibit Proof: Exhibit B (Itemized Bill), Exhibit K (Face Sheet/Insurance)

**PREDICATE 2 - HEALTHCARE FRAUD (18 U.S.C. 1347):**

Date: January 28 - February 7, 2023 (services); February 7, 2023 (billing)
Actor: **Dr. Murphy** (authorized); Corporate Defendants (submitted)
Method: Electronic claims submission to CMS/Illinois Medicaid; on information and belief, submitted via EDI 837 Institutional format through a healthcare clearinghouse or direct payer portal connection
False Statement: Services medically necessary and legally authorized
Amount: $33,580.00
Exhibit Proof: Exhibit B (Bill); clinical notes referencing unfiled petition/certificate; Cook County Circuit Court docket (no mental health case filed)

**PREDICATE 3 - HEALTHCARE FRAUD (18 U.S.C. 1347):**

Date: On or about February 10-14, 2023 (per 42 C.F.R. § 424.32, institutional providers typically submit claims within 3-7 days of discharge; Plaintiff discharged February 7, 2023)
Actor: **Advocate Health and Hospitals Corporation** (billing submission)
Recipient: Illinois Department of Healthcare and Family Services (Medicaid)
Method: Electronic claims submission to state Medicaid program via EDI 837I format
Document: False claims for Revenue Code 0126 "Room Charge Detox"
False Statement: Services rendered were medically necessary detoxification services

Amount: $33,580.00

Regulatory Violation: 42 C.F.R. § 424.32(a)(2) requires claims to accurately describe services rendered; submission of false "detox" code violates this requirement

Exhibit Proof: Exhibit B (itemized bill showing fraudulent charges paid by Medicaid)

**OVERT ACT - SUPPRESSION OF INVESTIGATIVE REPORT:**

Date: February 21, 2023

Actor: Enterprise participants (annotation on tracking sheet)

Method: Deliberate exclusion from subpoena response

Document: Detective Fitzgerald #142 investigative report

Significance: Consciousness of wrongdoing; concealment of pharmacological causation

Exhibit Proof: Exhibit J (Subpoena Tracking Sheet)

Predicate Act One: Wire Fraud (18 U.S.C. 1343)

37.     THE DALLAS NEXUS - INTERSTATE WIRE TRANSMISSION: As part of a scheme or artifice to defraud, on information and belief, on or about February 7, 2023, and continuing thereafter, Defendants electronically transmitted fraudulent billing data (Claim/Visit ID #467392168) from **Advocate Lutheran General Hospital** in Park Ridge, Illinois, to the Blue Cross Community Claims Processing Center located at PO Box 650712, Dallas, Texas 75265-0712. The Dallas PO Box address appears on Plaintiff's insurance documentation (Exhibit K), and standard healthcare industry practice requires electronic transmission (via EDI 837I format) of institutional claims to payors. Discovery will confirm the specific transmission method and routing, but the combination of (i) the out-of-state payor address, (ii) standard industry electronic billing practices, and (iii) the instantaneous nature of modern healthcare claims processing supports the inference that interstate wire communication occurred, satisfying the interstate commerce requirement of 18 U.S.C. Section 1343.

37A.    VERBATIM FALSE STATEMENT IN BILLING SUBMISSION: The electronic claim transmitted to Blue Cross Community contained the following material misrepresentation:

Revenue Code: 0126

Description: "ROOM-BOARD/PVT - MED/GEN/DETOX"

Per Diem Rate: $2,930.00

Units: 11 days

Total: $32,230.00

This billing code communicates to the payor that the patient received inpatient detoxification services in a private room requiring medical management. This representation was false: Plaintiff

was not a detoxification patient, received no detoxification protocol, and required no medical management for withdrawal. The code was selected to maximize reimbursement, not to accurately describe services rendered.

38.     These claims were false and fraudulent because:

a.  Plaintiff was not a detoxification patient. He presented to the Emergency Department seeking refills of his prescribed medications (clonazepam and Adderall) after being without them for several days. Hospital records document that Plaintiff "states that he needs medication" and "the only reason he is here is because he needs his medication."

b.  Plaintiff did not receive detoxification services. No detoxification protocol was initiated. No withdrawal assessment was performed. No detoxification medications were administered.

c.  The "Room Charge Detox" billing code (Revenue Code 0126) was used to maximize reimbursement for what was actually unlawful detention of a voluntary patient.

d.  The specific fraudulent billing line items transmitted via interstate wire include:

i.   HCPCS Code J1630 (Haloperidol Lactate) - billed for chemical restraint, not detox;

ii.  HCPCS Code J2060 (Lorazepam 2 mg/ml Solution) - billed for chemical restraint, not detox;

iii. Revenue Code 0126 ("Room Charge Detox") at $2,930.00/day for 11 days = $32,230.00;

iv.  Total fraudulent charges: $33,580.00.

39.     The total fraudulent billing for Plaintiff's admission was $33,580.00, including $32,230.00 in "Room Charge Detox" charges for eleven days at $2,930.00 per day, transmitted electronically to CMS and Illinois Department of Healthcare and Family Services via interstate wire. [Note: Certain summary documents reflect $33,580.26; Plaintiff relies on the underlying itemized bill (Exhibit B) showing $33,580.00 as the controlling figure.]

40.     Defendants knew or should have known the billing was false because: (a) no detoxification orders appear in Plaintiff's medical record; (b) Plaintiff's chief complaint was anxiety and medication refills, not substance withdrawal; (c) Defendants' own clinical notes do not document any detoxification treatment; and (d) the attending psychiatrist **Dr. Murphy** never ordered a detox protocol yet authorized billing under Revenue Code 0126.

Predicate Act Two: Healthcare Fraud (18 U.S.C. 1347)

**41.** Defendants knowingly and willfully executed a scheme to defraud a health care benefit program in connection with the delivery of health care services.

**42.** Defendants billed $33,580.00 for an eleven-day psychiatric admission during which:

    a. Despite a clinical note referencing preparation of a petition, no Petition for Involuntary Admission was ever filed with the Cook County Circuit Court as required by 405 ILCS 5/3-601, and no petition document was produced in Plaintiff's medical records;

    b. Despite a clinical note referencing preparation of certificates, no Certificates for Involuntary Admission were ever filed with any court as required by 405 ILCS 5/3-602, and no certificate documents were produced in Plaintiff's medical records;

    c. No court order authorizing involuntary detention was ever obtained;

    d. Plaintiff, a voluntary patient, was physically prevented from leaving by security personnel, four-point restraints, and chemical sedation.

**43.** Under Illinois law, billing for involuntary psychiatric services requires compliance with the Mental Health and Developmental Disabilities Code. Services provided during unlawful detention—detention without legal authority—are not compensable.

**44.** Defendants submitted claims representing that the services were medically necessary and legally authorized when Defendants knew or should have known that no legal authorization existed—no petition had been filed with any court, no certificate had been filed, and no court order had been obtained.

Predicate Act Three: Healthcare Fraud - Medicaid (18 U.S.C. 1347)

**45.** Defendants submitted false claims to Illinois Medicaid (Title XIX) for services never rendered, specifically billing $33,580.00 under Revenue Code 0126 "Room Charge Detox" when Plaintiff was not a detox patient and received no detox services. Pursuant to 42 C.F.R. § 424.32, institutional providers must submit claims accurately describing services rendered. On information and belief, the fraudulent claim was submitted electronically via EDI 837I format on or about February 10-14, 2023—within 3-7 days of Plaintiff's February 7, 2023 discharge, consistent with standard hospital billing cycles and the regulatory requirement that institutional claims be submitted "as soon as practicable after the service is furnished."

46. Medicaid paid these fraudulent charges. The submission of false claims to a federal healthcare program constitutes healthcare fraud under 18 U.S.C. § 1347. The fraudulent billing scheme defrauded both the federal government (which provides approximately 50% matching funds for Illinois Medicaid under 42 U.S.C. § 1396d(b)) and Illinois taxpayers.

**THE SCHEME TO DEFRAUD**

47. The scheme to defraud operated as follows:

   a. STEP ONE - VOLUNTARY ADMISSION: Defendants admit patients who voluntarily present to the Emergency Department seeking mental health assistance.

   b. STEP TWO - IMMEDIATE CHEMICAL RESTRAINT: Within minutes of arrival, Defendants administer powerful sedating medications (haloperidol, lorazepam) to render patients compliant, regardless of the patient's wishes.

   c. STEP THREE - UNLAWFUL DETENTION: Defendants physically prevent voluntary patients from leaving, using security personnel, locked doors, and physical restraints, without initiating the legally required commitment process.

   d. STEP FOUR - PAPERWORK WITHOUT COURT FILING: Clinical notes reference preparation of petitions and certificates for involuntary admission, but these documents are deliberately not filed with the court as required by Illinois law, thereby avoiding judicial oversight while creating internal documentation that appears compliant. The referenced petition and certificate documents were not produced in Plaintiff's 420-page medical record production despite the clinical notation.

   e. STEP FIVE - FRAUDULENT BILLING: Defendants bill Medicare, Medicaid, and private insurers for "Detox" services at premium rates ($2,930/day) regardless of the patient's actual diagnosis or treatment.

   f. STEP SIX - EXTENDED DETENTION: Defendants extend the detention as long as possible to maximize billing, using continued chemical sedation to prevent patients from demanding release.

   g. STEP SEVEN - CRIMINAL PROSECUTION: When patients resist or react to forced medication, Defendants contact law enforcement and cooperate in criminal prosecution, which serves to discredit the patient and deter future complaints.

48. On information and belief, this scheme is systematic and ongoing—it is not an isolated incident but rather the Enterprise's regular way of conducting business. The 12th floor psychiatric unit's limited surveillance coverage, on information and belief, facilitates the

scheme by reducing the risk that staff misconduct will be documented.

## PLAINTIFF'S EXPERIENCE

49.     On January 28, 2023, at approximately 6:38 p.m., Plaintiff voluntarily presented to the Emergency Department of **Advocate Lutheran General Hospital** seeking refills of his prescribed medications after being without them for several days.

50.     Hospital records document that Plaintiff was "initially polite" and "calm and cooperative upon initial meeting."

51.     Within 33 minutes of arrival, at 7:11 p.m., Hospital staff forcibly administered an intramuscular injection of Haloperidol 5 mg and Lorazepam 2 mg to Plaintiff without his consent.

52.     On January 29, 2023, Plaintiff was admitted to the inpatient psychiatric unit as a VOLUNTARY patient.

53.     Throughout the eleven-day admission, no Petition for Involuntary Admission was filed with the Cook County Circuit Court, no Certificates were filed with any court, and no court order authorizing Plaintiff's detention was ever obtained. Although a clinical note references preparation of commitment paperwork, no such documents were produced in Plaintiff's medical records, and no court docket reflects any mental health proceeding initiated against Plaintiff during the relevant time period.

53A.    VOLUNTARY ADMISSION STATUS IS LEGALLY DISPOSITIVE: Hospital records unambiguously document Plaintiff's admission status as "VOLUNTARY." Under the Illinois Mental Health and Developmental Disabilities Code, a voluntary patient "shall be allowed to leave the facility at any time during the normal day shift hours" unless commitment procedures are initiated within 24 hours. 405 ILCS 5/3-403, 5/3-601. No commitment procedures were ever initiated. Therefore:

   a.   Plaintiff had the unconditional legal right to leave at any time during normal business hours;

   b.   Defendants' physical prevention of Plaintiff's departure—through locked doors, security personnel, chemical sedation, and four-point mechanical restraints—constituted false imprisonment as a matter of law;

   c.   Because no petition was filed within 24 hours as required by 405 ILCS 5/3-601, every subsequent hour of detention was legally unauthorized;

    d.   A hospital cannot lawfully bill for "services" rendered during unlawful detention; the detention itself vitiates the legal basis for any charges;

    e.   The voluntary status is not merely a procedural technicality—it is the foundational legal fact that transforms Defendants' conduct from healthcare into kidnapping (720 ILCS 5/10-1) and healthcare fraud (18 U.S.C. § 1347).

## PHARMACOLOGICAL CAUSATION: THE 180-SECOND TIMELINE

**54.**    The Defendants' own records prove that the alleged "assault" was a pharmacological event:

    a.   16:17:00 CST (4:17 p.m.): Defendant **Grace Coakley**, RN, administered an intramuscular injection of Haloperidol 3 mg (HCPCS Code J1630) and Lorazepam 2 mg (HCPCS Code J2060) to Plaintiff.

    b.   16:20:00 CST (4:20 p.m.): The "Incident" allegedly begins, according to the Park Ridge Police Fact Sheet generated by the Enterprise's report, which states: "Incident Begin Time: 4:20 PM."

**55.**    TIMING ANALYSIS: Exactly 180 seconds elapsed between the forced injection of a powerful antipsychotic/benzodiazepine cocktail and the behavior reported as a crime. The pharmacological effect (akathisia—a documented side effect of haloperidol causing extreme agitation and restlessness) manifested within 3 minutes, and Defendants reported the drug-induced reaction to police as a felony.

**55A.**    EXPERT TESTIMONY: Plaintiff intends to offer expert testimony from a qualified pharmacologist or psychiatrist to establish that:

    a.   Haloperidol (Haldol) is a high-potency antipsychotic with a well-documented side effect profile including akathisia (severe motor restlessness), dystonia (muscle spasms), and paradoxical agitation;

    b.   The onset of akathisia following intramuscular injection of haloperidol typically occurs within 2-10 minutes;

    c.   The 180-second interval between injection (16:17) and the reported "incident" (16:20) falls squarely within the expected onset window for drug-induced akathisia;

    d.   A reasonable medical professional would have recognized that behavior occurring 3 minutes after forced injection of haloperidol and lorazepam was likely pharmacologically induced rather than volitional criminal conduct.

56. Criminal charges were filed against Plaintiff in Cook County criminal case number 23CR0241301, charging four counts of Aggravated Battery to a Nurse (720 ILCS 5/12-3.05(d)(11)), a Class 3 felony, for behavior that began exactly 180 seconds after Defendants forcibly injected him with sedating medications.

## UNIT TRANSFER TIMELINE

57. Following police involvement, Plaintiff was transferred to a different unit:

   a. 18:05 CST: Defendant **Emilia Hostalek**, RN, documents: "Patient put in restraints per Public Safety."

   b. 18:49 CST: **Dr. Patrick Piper** entered the order to transfer Plaintiff from Unit 3C (a monitored psychiatric unit with CCTV surveillance) to the 12th Floor MMWU, Room 1258.

58. UNIT SELECTION: Plaintiff was not a withdrawal patient requiring MMWU placement. On information and belief, the 12th Floor MMWU has limited or no CCTV coverage compared to the 3rd floor psychiatric unit. The transfer of a restrained patient to a different unit occurred less than 45 minutes after police involvement, which supports an inference that unit selection may have been influenced by surveillance considerations.

## RESTRAINT DURATION: 115 CONSECUTIVE HOURS

59. Federal Regulation 42 C.F.R. Section 482.13(e)(8)(i) limits orders for the use of restraint for the management of violent or self-destructive behavior to 4 hours for adults. Section 482.13(e)(12) requires face-to-face evaluation by a physician within 1 hour of initiation.

   a. Restraints Initiated: February 2, 2023, at 18:05 CST.

   b. Restraints Removed: February 7, 2023, at approximately 11:00 CST (for police transfer to jail).

   c. Total Duration: Approximately 115 consecutive hours.

60. RESTRAINT DURATION CALCULATION: Mechanical four-point restraints were maintained for approximately 115 consecutive hours (115 hours / 4-hour federal limit = 28.75x the permitted duration). The restraints were removed only for transfer to police custody, not for any documented clinical reason. The restraint documentation contains gaps of 2+ hours in the required monitoring checks, and lacks documented one-hour face-to-face physician evaluations as required by 42 C.F.R. Section 482.13(e)(12).

**ENOXAPARIN ADMINISTRATION: CORROBORATING PLAINTIFF'S RECOLLECTION**

**61.** Plaintiff recalls staff commenting on his hypertensive crisis while restrained by stating words to the effect of: "we need to put some blood thinners in him." This specific memory is corroborated by the Hospital's timestamped records:

    a. 18:39 CST: Vital signs record a hypertensive reading of 151/73 mmHg.

    b. 21:16 CST: Defendant **Shirin Jiva**, RN, administered Enoxaparin (Lovenox), a blood thinner.

**62.** Plaintiff, chemically sedated and physically restrained in four-point restraints, could not have known the specific medication category "blood thinner" unless the comment actually occurred. The correlation between his memory of the comment and the subsequent administration of that exact class of medication constitutes corroboration.

**63.** On February 7, 2023, Defendants discharged Plaintiff directly to the custody of Park Ridge Police, while Plaintiff remained under the influence of sedating medications Defendants had administered throughout the preceding days.

**REVENUE CODE 0126 MISCLASSIFICATION**

**64.** The Hospital utilized U.S. interstate wires to submit claims to Blue Cross Community (Medicaid/Medicare) using specific billing codes:

    a. Revenue Code: 0126

    b. Description: "Room Charge Detox"

    c. Rate: $2,930.00 per day

    d. Dates Billed: February 2, 3, 4, 5, 6, and 7, 2023

**65.** BILLING CODE ANALYSIS: Plaintiff was admitted for "Psychiatric Evaluation," not detoxification. No detox protocol was administered. No withdrawal assessment was performed. No detoxification medications were given. The admission was coded as "Detox" (Revenue Code 0126) despite the absence of any detoxification services, resulting in charges totaling $33,580.00.

**CONTRADICTORY NURSING DOCUMENTATION**

66.     The Hospital's nursing flowsheets contain entries that are internally inconsistent:

    a.  02/06/2023 at 23:00 CST: Nursing staff documented the Patient's behavior as "Striking out/Punching" to justify continued mechanical restraints.

    b.  02/06/2023 at 23:00 CST: In the exact same minute, on the same nursing flowsheet, Staff documented "Food/Meals" and "Fluids" status as "Patient asleep."

    c.  Additional entries throughout February 3-6, 2023 document Plaintiff as "Patient asleep" or "Patient resting quietly" during the same time periods that other entries claim he was "combative," "aggressive," or "striking out."

67.     DOCUMENTATION INCONSISTENCY: It is physiologically impossible for a patient to be asleep while simultaneously "punching" staff. These contradictory entries—appearing on the same flowsheet at the same timestamp—indicate that the restraint documentation was either auto-populated or prepared without regard to actual patient status, undermining the reliability of the records used to justify continued restraint and billing under Revenue Code 0126.

68.     This inconsistency in medical records is relevant to the wire fraud claim, as the records were electronically transmitted to Dallas, Texas to support billing claims to Blue Cross Community.

**MEWS SCORE DATA: MEDICAL NECESSITY ANALYSIS**

69.     Plaintiff was transferred to the 12th Floor MMWU (Medical Mental Wellness Unit), ostensibly requiring "medical" management for detoxification. However, the Hospital's internal Modified Early Warning Score (MEWS) data—the objective metric hospitals use to identify patients requiring intensive medical intervention—is inconsistent with this justification:

    a.  MEWS is a standardized scoring system used to identify patients at risk of clinical deterioration. A score of 0-1 indicates a stable patient requiring routine care; a score of 5+ indicates a patient requiring intensive monitoring or ICU transfer.

    b.  Plaintiff's documented MEWS scores throughout the restraint period remained consistently at 0 to 1 (Stable), indicating a medically stable patient who did not require placement on a "medical" detox unit.

    c.  Plaintiff's Sepsis Score was documented at 1.25—well below the threshold indicating any medical emergency.

    d.  Plaintiff's vital signs remained stable throughout: no fever, no tachycardia, no respiratory distress, no signs of alcohol or benzodiazepine withdrawal requiring medical detoxification.

**70.**    MEDICAL NECESSITY ANALYSIS: Admitting a stable patient (MEWS 0-1) to a "Medical Detox" unit while billing premium Revenue Code 0126 ($2,930/day) raises questions about medical necessity. The MMWU transfer coincided with: (a) application of the "Detox" billing code despite no detox services; and (b) placement in a unit with, on information and belief, limited surveillance compared to Unit 3C.

### RESTRAINT RENEWAL DOCUMENTATION DEFICIENCIES

**71.**    Federal Regulation 42 C.F.R. Section 482.13(e)(8)(i) limits restraint orders to 4 hours for adults before requiring physician reassessment and new orders. Section 482.13(e)(12) requires a face-to-face evaluation by a physician within one hour of restraint initiation. **Dr. Murphy**'s "renewal" orders raise questions regarding compliance:

    a.  **Dr. Murphy**'s restraint renewal orders appear at regular intervals (every 4 hours) with timestamps that are precisely timed, which may indicate auto-generated or pre-signed orders rather than actual examinations.

    b.  No corresponding nursing documentation exists showing **Dr. Murphy** physically present on the unit at the times of these "examinations."

    c.  The restraint flowsheets do not contain entries such as "Physician at bedside" or "Patient examined by **Dr. Murphy**" at the times corresponding to her renewal orders.

**72.**    DOCUMENTATION GAP: **Dr. Murphy**'s restraint renewal orders lack corresponding nursing documentation showing physician presence at bedside during the times of required evaluations. This raises questions regarding compliance with 42 C.F.R. 482.13 and the accuracy of billing for physician evaluation services.

### DISCHARGE-TO-CUSTODY COORDINATION

**73.**    The timing of Plaintiff's discharge suggests coordinated action between Hospital and law enforcement:

    a.  11:00 CST (approximately): Restraints removed from Plaintiff after 115 hours.

    b.  11:15 CST: Park Ridge Police arrive at the Hospital. The Police Fact Sheet documents: "D was AOR. D invoked." (Defendant Advised of Rights; Defendant

*Allababidi v. Advocate Health, et al.*          *RICO Complaint*

Invoked right to silence.)

    c.   The 15-minute gap between restraint removal and police arrival suggests pre-coordination. On information and belief, the Hospital did not call police after removing restraints; rather, police were already en route because discharge directly to custody had been pre-arranged.

**74.**   DISCHARGE TIMING: On information and belief, the coordination between Hospital and Park Ridge Police Department in timing Plaintiff's arrest served to:

    a.   Prevent Plaintiff from filing complaints about his treatment while memories were fresh;

    b.   Create a criminal record that would discredit any future civil lawsuit;

    c.   Justify the 115 hours of restraint after the fact by obtaining a criminal conviction;

    d.   Shift liability from the Hospital to Plaintiff by reframing drug-induced reactions as criminal assault.

**EXCLUSION OF INVESTIGATIVE REPORT FROM SUBPOENA PRODUCTION**

**75.**   Documentary evidence reflects that certain investigative materials were excluded from subpoena production. On February 21, 2023, the official Subpoena Tracking Sheet was annotated with the notation:

"Detective Fitzgerald #142... report will not be included in subpoena."

**76.**   EVIDENTIARY SIGNIFICANCE: The documented exclusion of Detective Fitzgerald's investigative report from subpoena production—per the internal tracking notation—supports an inference of deliberate concealment. That report would likely have documented Plaintiff's drugged state at the time of the alleged "incident" and the 180-second gap between injection and behavior. The exclusion is relevant to:

    a.   Whether the billing scheme was concealed during criminal proceedings;

    b.   Whether discovery of pharmacological causation was prevented;

    c.   The credibility of criminal charges against Plaintiff;

    d.   Whether coordination existed between Hospital and prosecution.

**77.**   The documented exclusion of this report, while not conclusive proof of bad faith standing alone, supports an inference of consciousness of wrongdoing when viewed in context with the other evidence of the scheme.

## CERTIFICATION OF EFFORTS TO OBTAIN EVIDENCE

**77A.**   Plaintiff certifies that he has made good-faith efforts to obtain documentary evidence supporting the allegations herein, including:

     a.   Requests under the Illinois Freedom of Information Act (5 ILCS 140/) to the Park Ridge Police Department for the complete investigative file, including Detective Fitzgerald's report;

     b.   Requests to **Advocate Lutheran General Hospital** for the complete medical record (420+ pages received and reviewed);

     c.   Request for itemized billing statements (received October 28, 2025);

     d.   Review of Cook County Circuit Court criminal case file 23CR0241301.

**77B.**   DISCOVERY WILL REVEAL: On information and belief, and subject to confirmation through discovery, the following evidence exists and will support the allegations herein:

     a.   Electronic billing system records showing the assignment of Revenue Code 0126 to Plaintiff's admission;

     b.   Hospital policies regarding billing code selection for the 12th Floor MMWU;

     c.   CCTV footage logs (or absence thereof) for Unit 3C and 12th Floor MMWU;

     d.   Internal communications regarding Plaintiff's transfer, restraint, and discharge;

     e.   Detective Fitzgerald's investigative report documenting Plaintiff's condition at the time of the alleged incident;

     f.   Billing records for other patients admitted to the 12th Floor MMWU under similar circumstances.

## LEGAL STANDARDS

**78.**   RICO STATUTORY FRAMEWORK: Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

79.　ASSOCIATION-IN-FACT ENTERPRISE: An "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has held that an association-in-fact enterprise need only have three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Importantly, *Boyle* clarified that "an association-in-fact enterprise must have a structure" but that "the very concept of an association in fact is expansive" and "the existence of an enterprise may be inferred from the evidence." *Id.* at 944-45. Here, the Enterprise—the 12th Floor detention-billing workflow—has a common purpose (maximizing revenue through fraudulent billing), defined relationships among participants (hierarchical decision-making from Corporate Defendants to attending physicians to nursing staff), and sufficient longevity (operating since at least January 2023).

80.　DISTINCTNESS REQUIREMENT: The "person" who conducts the enterprise's affairs must be distinct from the "enterprise" itself. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Where the enterprise is an association-in-fact (such as a workflow or scheme), corporate defendants and their employees can be "persons" distinct from the enterprise they operate.

81.　OPERATION OR MANAGEMENT TEST: To "conduct or participate" in an enterprise's affairs, a defendant must have "some part in directing" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This includes not only upper management but also "lower-rung participants" who are "under the direction of upper management." *Id.* at 184.

82.　PATTERN OF RACKETEERING: A "pattern" requires at least two predicate acts of racketeering activity within ten years that are related and demonstrate continuity. 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continuity can be "closed-ended" (a series of related predicates over a substantial period) or "open-ended" (past conduct that by its nature projects into the future with a threat of repetition). *Id.* at 241-42. Critically, the Supreme Court held that predicates are part of an "open-ended" pattern where they constitute "a regular way of conducting defendant's ongoing legitimate business" or where "the threat of repetition" is present. *Id.* at 242-43. Here, the detention-billing scheme is the Enterprise's regular way of doing business, satisfying open-ended continuity.

83.　INJURY TO BUSINESS OR PROPERTY: A civil RICO plaintiff must show injury "by reason of" the RICO violation—i.e., that the violation was the proximate cause of the plaintiff's injury to "business or property." 18 U.S.C. § 1964(c); *Holmes v. Securities

Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* The plaintiff's injury must not be derivative of harm to third parties through a complex causal chain. Here, Plaintiff's injury is direct: the fraudulent bill was addressed to him, the debt is in his name, and he must expend resources to contest it. Personal injuries (pain, emotional distress) are not recoverable under civil RICO. *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988); *Evans v. City of Chicago*, 434 F.3d 916, 931 (7th Cir. 2006).

## ANTICIPATED DEFENSES AND PRE-BUTTALS

**84.** Plaintiff anticipates Defendants will raise the following defenses at the motion to dismiss stage. Each defense fails for the reasons stated:

### DEFENSE 1: INTRACORPORATE CONSPIRACY DOCTRINE

EXPECTED ARGUMENT: Defendants will argue that employees of a corporation cannot "conspire" with the corporation because they constitute a single legal entity. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

WHY IT FAILS: (a) The intracorporate conspiracy doctrine does not apply to RICO's association-in-fact enterprise theory because the Enterprise is distinct from the Corporate Defendants—the Enterprise is the detention-billing workflow, not **Advocate** itself. See *Cedric Kushner*, 533 U.S. at 163 (distinctness satisfied where corporation is "person" and illegal scheme is "enterprise"). (b) Even if applicable, the doctrine contains an exception for employees acting outside the scope of employment (ultra vires). The Individual Defendants' conduct—detaining patients without legal authority, billing for fictitious services, filing false police reports—falls outside any legitimate employment scope. See *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154 (2007). (c) The conspiracy alleged involves multiple RICO "persons" with divergent personal interests (license protection, liability avoidance) who agreed to conduct the Enterprise's affairs—not a single entity acting through agents.

### DEFENSE 2: FAILURE TO PLEAD PATTERN/CONTINUITY

EXPECTED ARGUMENT: Defendants will argue that Plaintiff alleges only a single episode involving one patient, insufficient to establish the "pattern" required by *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).

WHY IT FAILS: (a) Plaintiff's allegations are based on Plaintiff's documented experience, but the infrastructure evidence—hard-coded EMR defaults, purpose-built unit with limited surveillance, systematic non-filing of petitions—demonstrates that the fraud is the Enterprise's "regular way of doing business," satisfying open-ended continuity. Id. at 242. (b) Discovery will reveal billing records for other 12th Floor MMWU patients coded under Revenue Code 0126 without detox services. Plaintiff specifically requests that the Court permit limited discovery on the pattern issue before ruling on any motion to dismiss. (c) The scheme involves multiple predicate acts (wire fraud, healthcare fraud) demonstrating closed-ended continuity based on Plaintiff's case. (d) The infrastructure evidence proves the scheme is systematic and will continue absent judicial intervention.

**DEFENSE 3: LACK OF REVES "OPERATION OR MANAGEMENT" FOR INDIVIDUAL DEFENDANTS**

EXPECTED ARGUMENT: Defendants will argue that nurses and counselors merely "followed orders" and did not "operate or manage" the Enterprise as required by Reves v. Ernst & Young, 507 U.S. 170 (1993).

WHY IT FAILS: (a) Reves expressly includes "lower-rung participants" who carry out the enterprise's activities "under the direction of upper management." 507 U.S. at 184. The Individual Defendants executed essential functions of the scheme: administering chemical restraints (**Coakley**), applying mechanical restraints (**Zygmunt**), preparing unfiled commitment paperwork (**March**, **Forte**), and authorizing fraudulent billing (Murphy). (b) Each Individual Defendant exercised professional discretion—nurses decided how to document restraints, counselors decided what to write on certificates, physicians decided what orders to sign. This is not ministerial conduct. (c) Removal of any Individual Defendant would have disrupted the scheme; each was an essential cog in the fraud machinery.

**DEFENSE 4: LACK OF PROXIMATE CAUSE / SPECULATIVE DAMAGES**

EXPECTED ARGUMENT: Defendants will argue that Plaintiff's claimed injuries (especially educational/career damages) are too remote or speculative to satisfy RICO's proximate cause requirement under Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992).

WHY IT FAILS: (a) Plaintiff's Tier 1 injuries—criminal defense fees, bond costs, and lost wages—are directly and proximately caused by the RICO predicates. The causal chain is short and direct: false police report → arrest → criminal charges → defense costs. (b) The criminal defense costs flow directly from the false police report, which is an overt act in furtherance of the RICO scheme. (c) Plaintiff limits RICO damages to

documented business/property injuries; personal injuries (pain, emotional distress) are pleaded only under state law counts. (d) As to Tier 2 educational damages: Defendants' own intake note documents that Plaintiff was "currently at UIC getting a degree in Biochemistry, with hopes to go to medical school"—Defendants themselves documented the career path their fraud disrupted.

DEFENSE 5: RULE 9(b) PARTICULARITY

EXPECTED ARGUMENT: Defendants will argue that the fraud allegations lack the specificity required by Federal Rule of Civil Procedure 9(b).

WHY IT FAILS: The Predicate Acts Matrix (¶29) identifies each predicate act with the "who, what, when, where, and how" required by Rule 9(b): specific dates, specific actors, specific transmission methods, specific origin and destination, specific documents, specific false statements, and specific dollar amounts, all tied to specific exhibits. This exceeds the particularity standard in this Circuit. See Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992).

**DEFENSE 6: YOUNGER ABSTENTION / RES JUDICATA**

EXPECTED ARGUMENT: Defendants may argue that this Court should abstain in favor of pending state court proceedings or that claims are barred by res judicata.

WHY IT FAILS: (a) Younger abstention does not apply because no ongoing state court proceeding adjudicates federal RICO claims; the state criminal case (23CR0241301) concerns different issues (alleged patient conduct) not federal healthcare fraud. (b) Res judicata does not apply because no final judgment on the merits exists in any state proceeding, and the state tort claims seek different relief than the federal RICO treble damages. (c) The Verified Second Amended Complaint in state court concerns personal injury torts (false imprisonment, battery, IIED) not federal racketeering—the claims are complementary, not duplicative.

**DEFENSE 7: STATUTE OF LIMITATIONS**

EXPECTED ARGUMENT: Defendants will argue that claims arising from a February 2023 detention are time-barred by applicable statutes of limitations.

**WHY IT FAILS:**

A. FEDERAL RICO: WELL WITHIN 4-YEAR LIMITATIONS PERIOD
   Civil RICO claims are subject to a four-year statute of limitations. Agency Holding Corp.

v. Malley-Duff & Associates, Inc., 483 U.S. 143 (1987). The predicate acts occurred in February-**March** 2023. This action was filed in December 2025—well within the four-year period. No limitations defense exists for the federal RICO claims.

B. DISCOVERY RULE TOLLS STATE LAW CLAIMS

For supplemental state law claims (battery, false imprisonment, IIED), Illinois applies a two-year limitations period. 735 ILCS 5/13-202. However, under Illinois's "discovery rule," the limitations period does not begin until the plaintiff knows or reasonably should know of the injury AND its cause. Hermitage Corp. v. Contractors Adjustment Co., 166 Ill. 2d 72, 77 (1995); Knox College v. Celotex Corp., 88 Ill. 2d 407 (1981).

Plaintiff could not have reasonably discovered the full extent of his injuries and their cause until October 28, 2025, when Defendants finally produced unredacted medical records in response to discovery in Case No. 24 L 6527. Prior to that date:

(i) Plaintiff was chemically sedated with Haloperidol, Lorazepam, Diphenhydramine, and other psychoactive drugs throughout the detention and could not personally observe or remember who injected him;

(ii) The identity of the nurse who administered the initial "180-second" injection (Defendant **Coakley**) and the nurse who returned at 21:16 CST to administer additional injections (Defendant **Jiva**) were not disclosed until the unredacted Medication Administration Record (MAR) was produced on October 28, 2025;

(iii) The specific billing fraud (Revenue Code 0126 "Detox" charges for non-detox services) was not ascertainable until the itemized bill was produced in discovery;

(iv) The FOIA-produced records (HFS-2790, HFS-2802) confirming Medicaid submission dates were not obtained until late 2025.

Therefore, the statute of limitations for state law claims did not begin to run until October 28, 2025, making this December 2025 filing timely.

C. FRAUDULENT CONCEALMENT TOLLS ALL CLAIMS

Even absent the discovery rule, Defendants' active concealment tolls all limitations periods. Defendants:

(i) Chemically sedated Plaintiff, preventing contemporaneous memory formation;
(ii) Prepared but never filed commitment petitions, concealing the lack of legal authority;
(iii) Withheld unredacted medical records until compelled by discovery;
(iv) The Individual Defendants' identities were concealed within voluminous medical records that Plaintiff could not interpret without expert analysis.

Illinois courts toll limitations where defendants engage in fraudulent concealment of

claims. DeLuna v. Burciaga, 223 Ill. 2d 49, 82 (2006).

D. CONTINUING VIOLATION DOCTRINE

The RICO enterprise's conduct constitutes a continuing violation that extends into the limitations period. The criminal case (23CR0241301) initiated based on Defendants' false police report remains pending as of the filing date, and Defendants' witness tampering and obstruction (retaining counsel Tressler LLP to threaten litigation against Plaintiff's attorney) occurred within the limitations period.

**DEFENDANT JIVA'S PERSONAL LIABILITY: SMOKING GUN EVIDENCE**

**84A.** Defendant **SHIRIN Z. JIVA**, RN warrants particular attention for her personal liability because the medical records contain dispositive evidence proving her participation in the RICO conspiracy and her knowledge that the "battery" allegation was false:

a. THE TIMELINE IMPEACHMENT: At 16:20 CST on February 2, 2023, **Jiva** was listed as a "VICTIM" of alleged battery in the Security Incident Report. Yet the Medication Administration Record reveals that the same **Shirin Jiva**, RN returned to Plaintiff's room at 21:16 CST—five (5) hours later—to personally administer an Enoxaparin (blood thinner) injection to the same patient she claimed had just "battered" her.

b. WHY THIS DESTROYS HER DEFENSE: No genuine victim of battery voluntarily returns alone to the assailant's room hours later to perform a non-emergency injection. **Jiva**'s conduct proves: (i) she did not actually fear Plaintiff; (ii) the "battery" claim was pretextual; (iii) she was an active participant in the scheme, not a victim.

c. THE "BLOOD THINNERS AHAHAHA" STATEMENT: During the injection at 21:16 CST, in the presence of Plaintiff's mother as eyewitness, **Jiva** mockingly stated "blood thinners ahahaha" while administering the Enoxaparin. This statement, made to a restrained patient who had been chemically sedated for hours, demonstrates consciousness of participation in wrongful conduct rather than legitimate medical care.

d. RINGLEADER IDENTIFICATION: Plaintiff's mother, who was present throughout portions of the detention, identified **Jiva** as the "ringleader" who coordinated with other nurses in the scheme. This eyewitness identification will be supported by declaration.

e. **JIVA'S PERSONAL RICO LIABILITY**: By returning to administer injections to a patient she falsely claimed had battered her, **Jiva** demonstrated: (i) knowledge

that the battery claim was false; (ii) continued participation in the detention scheme despite that knowledge; (iii) operation or management of Enterprise affairs through the administration of unauthorized medical procedures.

## COUNT I - VIOLATION OF 18 U.S.C. 1962(c)
(RICO - Conduct of Enterprise Through Pattern of Racketeering)
(Against All Defendants)

**85.**　　Plaintiff incorporates by reference paragraphs 1 through 83 as though fully set forth herein.

**86.**　　Defendants are "persons" within the meaning of 18 U.S.C. 1961(3).

**87.**　　The enterprise described in paragraphs 28-33 is an "enterprise" within the meaning of 18 U.S.C. 1961(4).

**88.**　　Defendants conducted and participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. 1962(c).

**89.**　　The pattern of racketeering activity consisted of multiple predicate acts of wire fraud (18 U.S.C. 1343), healthcare fraud (18 U.S.C. 1347), and mail fraud (18 U.S.C. 1341), as described in the Predicate Acts Matrix (paragraph 36) and paragraphs 37-46.

**90.**　　The predicate acts are related because they all arose from the same scheme to unlawfully detain psychiatric patients and fraudulently bill government healthcare programs.

**91.**　　The predicate acts demonstrate continuity because: (a) they occurred over an extended period; (b) they involved the same participants; (c) they employed the same methods; and (d) they are part of an ongoing regular way of conducting the enterprise's business.

**92.**　　OPEN-ENDED CONTINUITY: The Defendants' use of Revenue Code 0126 ("Room Charge Detox") for psychiatric patients who are not undergoing detoxification appears, on information and belief, to be a systemic billing practice rather than an isolated clerical error. This practice constitutes the Enterprise's regular way of doing business and has no natural termination point—it will continue indefinitely absent judicial intervention. As the Supreme Court explained in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989), open-ended continuity exists where "the predicate acts are part of an ongoing entity's regular way of doing business" or where "past conduct that by its nature projects into the future with a threat of repetition." Here, the detention-billing scheme is precisely such a regular business practice, satisfying open-ended continuity. On information and belief, the 12th Floor "Detox" billing practice has been applied to

other patients as a matter of routine policy. The mechanized, repetitive nature of the scheme is evidenced by **Dr. Murphy**'s precisely-timed 4-hour restraint renewal orders (Exhibit I), which show time-triggered actions without variance, and the systematic restraint documentation workflow (Exhibit E), demonstrating that the conduct was part of a regular practice applied to detained patients, not a one-off error targeting Plaintiff alone. The scope of this practice is a proper subject for discovery.

THE EMR SYSTEM AS POTENTIAL INSTRUMENTALITY: On information and belief, the Enterprise may utilize billing configuration settings in the Epic Electronic Medical Record (EMR) system that facilitate the application of Revenue Code 0126 ("Room Charge Detox") to 12th Floor MMWU admissions. The factual basis for this belief is: (i) Plaintiff's detailed bill (Exhibit B) shows Revenue Code 0126 applied as a per diem line item for eleven consecutive days despite no detoxification orders, withdrawal assessments, or detox medications documented in the 420-page medical record; (ii) this billing pattern—premium "Detox" coding without corresponding clinical services—is inconsistent with individualized billing decisions and suggests systematic application. Discovery will determine whether this results from EMR configuration settings, chargemaster mapping rules, billing department policy, or some combination thereof. The relevant discovery targets include: Epic EMR configuration tables, hospital chargemaster entries for the 12th Floor MMWU, billing department standard operating procedures, and 30(b)(6) testimony on revenue code assignment.

92A.   SYSTEMIC INFRASTRUCTURE SUPPORTING PATTERN ALLEGATION: On information and belief, the Enterprise's use of Revenue Code 0126 may be a default or standard billing practice for the 12th Floor MMWU. The infrastructure evidence—locking restraint beds, the alleged absence of comprehensive CCTV surveillance on the 12th Floor compared to Unit 3C, pre-established "Detox" billing codes in the electronic system, and precisely-timed restraint renewal orders—supports an inference that the billing scheme is systematic rather than isolated. On information and belief, patients admitted to the 12th Floor MMWU under similar circumstances may be systematically subjected to similar billing practices. The 12th Floor MMWU appears purpose-suited for this billing practice: it combines medical billing codes ("Detox") with psychiatric detention capabilities (restraint beds) while potentially minimizing evidentiary documentation. Plaintiff's case provides a window into what discovery may reveal to be systematic healthcare billing irregularities affecting other patients.

92B.   DISCOVERY WILL ESTABLISH PATTERN: Plaintiff specifically alleges that discovery will reveal:

(i) Billing records for all patients admitted to the 12th Floor MMWU in 2022-2024 showing systematic use of Revenue Code 0126 regardless of diagnosis;

(ii) Epic EMR system configuration documents, chargemaster entries, and revenue code mapping tables for 12th Floor MMWU admissions;

(iii) Hospital policies and procedures for the 12th Floor MMWU that institutionalize the detention-billing workflow;

(iv) Testimony from current and former employees (including 30(b)(6) designees) confirming that the practices alleged herein are standard operating procedure;

(v) Internal coding rule tables and billing department standard operating procedures for revenue code assignment;

(vi) All payor submissions for Revenue Code 0126 from the 12th Floor MMWU during a reasonable time window;

(vii) Medicare and Medicaid audit reports, if any, concerning **Advocate**'s psychiatric billing practices;

(viii) Complaints from other patients who were billed for "Detox" services they did not receive.

Plaintiff respectfully requests that the Court permit limited discovery on the pattern/continuity issue before ruling on any motion to dismiss, or alternatively, that the Court credit the infrastructure allegations as sufficient to survive a Rule 12(b)(6) motion.

FACTUAL BASIS FOR SYSTEMIC PRACTICE (On Information and Belief)

**93.** On information and belief, and based on the documents already produced by Defendants, Plaintiff alleges the following factual indicia that the conduct described herein is systemic rather than isolated:

a. BILLING CODE POLICY: Revenue Code 0126 ("Room Charge Detox") is a pre-established billing code in Defendants' electronic billing system. Its application to Plaintiff's admission—despite the complete absence of any detoxification orders, withdrawal assessments, or detox medications—indicates that the code is applied as a matter of policy to maximize reimbursement, not based on actual clinical services.

b. UNIT TRANSFER PATTERN: The 44-minute transfer from Unit 3C (with CCTV) to the 12th Floor MMWU (with limited surveillance) immediately after police involvement suggests a practiced protocol, not a spontaneous clinical decision. A patient restrained for "combative behavior" would typically remain on a monitored unit.

c. PAPERWORK-WITHOUT-COURT-FILING WORKFLOW: Clinical notes reference preparation of commitment petitions and certificates that were never filed with any court. Forms do not reference themselves; staff are trained when to prepare

them and when to file them. On information and belief, the systematic non-filing with the court—while creating internal documentation that references compliance—suggests a deliberate institutional policy designed to avoid judicial oversight rather than inadvertent clerical error.

d.  RESTRAINT RENEWAL TIMESTAMPS: **Dr. Murphy**'s precisely-timed 4-hour restraint renewals, without corresponding nursing documentation of physician presence, raise questions about whether these represent actual bedside evaluations or a systematic documentation workflow—a matter warranting discovery into compliance with 42 C.F.R. § 482.13.

e.  COORDINATED DISCHARGE-TO-CUSTODY: The 15-minute gap between restraint removal and police arrival suggests, on information and belief, pre-arranged timing between Hospital and law enforcement—a coordination that would require institutional protocols, not ad hoc decision-making.

**93A.**  FACTUAL BASIS FOR CONTINUITY BELIEF: The following documented facts support the allegation of open-ended continuity:

(i) The detailed bill (Exhibit B) shows Revenue Code 0126 applied as a per diem line item for eleven consecutive days, demonstrating systematic billing methodology rather than isolated error;

(ii) The fraudulent Medicaid billing demonstrates systematic pursuit of fraudulent proceeds through federal healthcare programs;

(iii) The infrastructure evidence (purpose-built unit with restraint beds, limited CCTV, systematic paperwork-without-filing workflow) indicates institutional capacity for repetition;

(iv) The scheme requires no new decisions for continuation: the billing codes, the unit, the procedures, and the personnel remain in place and operational.

**93B.**  GOVERNMENT ENDANGERMENT FINDING - CORROBORATING PATTERN EVIDENCE: On or about December 1, 2025, the City of Park Ridge, Illinois, in response to Plaintiff's Freedom of Information Act request (5 ILCS 140/1 et seq.), formally determined that disclosure of certain records "would endanger the life or physical safety" of Plaintiff pursuant to 5 ILCS 140/7(1)(d)(vi). This official governmental finding establishes that:

(i) A government entity has independently concluded that Plaintiff faces ongoing danger related to this matter;

(ii) The danger determination arose from Plaintiff's interactions with Defendants and law enforcement coordinated by Defendants;

(iii) The continuing threat supports open-ended continuity—the scheme's effects are ongoing and require judicial intervention;

(iv) The endangerment finding corroborates Plaintiff's allegations that Defendants' conduct poses continuing harm.

**93C.**   PATTERN DISCOVERY REQUEST: Plaintiff specifically requests that this Court permit limited discovery on the pattern issue before ruling on any dispositive motion. Such discovery would include: (i) billing records for all patients admitted to the 12th Floor MMWU and coded under Revenue Code 0126 during 2022-2024; (ii) commitment petition and certificate records showing filing versus non-filing rates; (iii) restraint duration records for MMWU patients; and (iv) police report records for patients discharged to law enforcement custody. On information and belief, such discovery will reveal that Plaintiff's experience was not isolated but part of a systematic pattern of detention, fraudulent billing, and criminal prosecution of vulnerable psychiatric patients.

**PROXIMATE CAUSE: DIRECT INJURY FROM PREDICATE ACTS**

**94.**   THE HEALTHCARE FRAUD ESTABLISHES DIRECT RICO STANDING: Defendants submitted $33,580.00 in fraudulent claims to Illinois Medicaid under Revenue Code 0126 "Room Charge Detox" for services NEVER RENDERED. Plaintiff was not a detox patient. This fraudulent billing constitutes an injury to Plaintiff's "business or property" within the meaning of 18 U.S.C. § 1964(c). See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[a]ny person injured in his business or property" by RICO violations has standing for treble damages). The Supreme Court in *Sedima* emphasized that RICO should be "liberally construed to effectuate its remedial purposes" and that no special "racketeering injury" beyond the harm from predicate acts is required. *Id.* at 497-98. Here, the predicate acts (fraudulent billing) directly caused Plaintiff's injury (a $33,580 debt in his name that he must contest). The healthcare fraud predicate, combined with the false police report leading to criminal charges, caused Plaintiff direct, concrete injury:

(i) Plaintiff was arrested and charged with four counts of Aggravated Battery based on Defendants' false reports—requiring immediate expenditure of resources for criminal defense;

(ii) Plaintiff has been forced to expend substantial resources defending against the criminal charges and vindicating his rights, including: (A) criminal defense attorney fees (approximately $15,000.00); (B) bond posted (approximately $5,000.00); (C) costs of obtaining medical records (approximately $50.00); (D) filing fees for this action ($402.00); (E) time diverted from employment and education;

(iii) The false criminal charges have damaged Plaintiff's reputation and impaired his prospects for medical school admission and employment;

(iv) The criminal case remains a cloud on Plaintiff's record requiring judicial resolution;

(v) Plaintiff was required to post bond in Case No. 23CR0241301 and pay criminal defense attorney fees—costs directly caused by Defendants' false police report, which is an overt act in furtherance of the RICO scheme.

**95.** CONCRETE FINANCIAL HARM: This is not derivative or speculative injury. Plaintiff has suffered actual out-of-pocket losses. Plaintiff's lack of direct reliance on certain misrepresentations (which were made to insurers) is no barrier to RICO standing; what matters is that Plaintiff was directly injured by the scheme's consequences. See *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 657 (2008) (third-party reliance does not break proximate cause where plaintiff was directly harmed by fraud). The fraudulent billing scheme was designed to extract money either from insurers or from patients—in either scenario, Plaintiff's property was directly at risk.

PRIMARY STANDING DAMAGES (Direct Injury from Fraudulent Billing):
(a) Criminal defense attorney fees: approximately $15,000.00;
(b) Bond posted in Case No. 23CR0241301: approximately $5,000.00;
(c) Medical records request fees: approximately $50.00;
(d) Filing fees for this action: $402.00;
(e) Lost wages during 11 days of detention: approximately $1,500.00.

The proximate cause chain is direct: false police report → criminal charges → arrest → bond requirement → defense costs. This is precisely the type of "injury to business or property" that RICO was designed to remedy. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (RICO provides treble damages for "[a]ny person injured in his business or property").

**96.** Plaintiff's injury was directly caused by Defendants' racketeering acts—the relationship is sufficiently direct to satisfy RICO's proximate cause requirement. There are no independent third parties whose injuries must be resolved first; Plaintiff himself received the fraudulent bill addressed to him, and Plaintiff must expend resources to contest the debt in his own name. See *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). As a direct and proximate result of Defendants' RICO violations, Plaintiff was injured in his business or property as follows:

TIER 1 - DOCUMENTED DIRECT FINANCIAL INJURIES (Business/Property - RICO Recoverable):

a. Fraudulent Medicaid billing of $33,580.00 (Visit ID #467392168, Exhibit B)—this billing constitutes healthcare fraud against federal programs, which Plaintiff has

Case: 1:25-cv-15800 Document #: 1 Filed: 12/28/25 Page 40 of 111 PageID #:40
IN FORMA PAUPERIS PURSUANT TO 28 U.S.C. § 1915

*Allababidi v. Advocate Health, et al.*                                    *RICO Complaint*

reported to HHS-OIG as a qui tam whistleblower; Plaintiff was directly injured by this fraud because the fraudulent debt was placed in his name and he has been forced to expend resources contesting it;

b.  Court costs and filing fees associated with this action ($402.00), to be proven at trial with receipts;

c.  Costs of obtaining medical records and documents to prosecute this action (approximately $50.00), to be proven at trial with receipts.

## TIER 1-A - DAMAGES FLOWING FROM FALSE IMPRISONMENT (State Law Only - Per Evans v. City of Chicago, 434 F.3d 916 (7th Cir. 2006)):

NOTE: The Seventh Circuit has held that lost wages and costs flowing from false imprisonment are personal injuries, not "business or property" injuries recoverable under RICO. See Evans, 434 F.3d at 931. Accordingly, Plaintiff seeks the following damages exclusively under the state law fraud count (Count III) and NOT under RICO:

d.  Lost wages during eleven days of detention (January 28 - February 7, 2023), to be proven at trial with employment records;

e.  Out-of-pocket criminal defense attorney fees paid to William Murphy, Esq., to be proven at trial with payment records—these costs flow from the false police report and subsequent prosecution;

f.  Bond posted in Case No. 23CR0241301 (approximately $5,000.00);

g.  Lost income from mandatory court dates in Case No. 23CR0241301.

## TIER 2 - EDUCATIONAL/CAREER PROPERTY INJURIES (State Law Fraud Count Only):

NOTE: Plaintiff pleads Tier 2 damages under the state law fraud count (Count III), recognizing that courts in the Seventh Circuit generally require a direct relationship between predicate acts and injury for RICO recovery. These injuries, while real and substantial, are sought under state law:

h.  Tuition and fees paid to UIC for Biochemistry degree rendered non-productive for intended purpose (medical school pathway), documented by UIC billing records, to be proven at trial;

i.  MCAT preparation course fees and examination fees expended in reliance on unimpeded medical school application process, to be proven at trial with receipts;

j.  Medical school application fees forfeited or rendered futile due to mandatory felony disclosure requirement on AMCAS and AACOMAS applications;

k.  Documented career trajectory: Defendants' own intake note establishes Plaintiff was "Currently at UIC and getting a degree in Biochemistry, with hopes to go to medical

school" (January 28, 2023, Exhibit A)—this contemporaneous documentation by Defendants proves the career path that their conduct disrupted;

l.   Lost earning capacity differential, to be quantified at trial with expert economic testimony.

**97.**    TREBLING CALCULATION: Tier 1 documented damages (fraudulent debt of $33,580.00 + filing fees + records costs = approximately $34,032.00) constitute the core "injury to business or property" subject to trebling under 18 U.S.C. 1964(c). Tier 1-A (lost wages, criminal defense costs, bond) and Tier 2 (educational/career damages) are sought exclusively under the state law fraud count (Count III) and are NOT subject to RICO trebling, consistent with *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006).

DAMAGES COMPUTATION (18 U.S.C. § 1964(c) Treble Damages):

CORE RICO DAMAGES (Direct Injury from Fraudulent Billing Scheme):

| Category | Description | Amount | Trebled |
|----------|-------------|--------|---------|
| Tier 1(a) | Fraudulent billing debt | $33,580.00 | $100,740.00 |
| Tier 1(b) | Filing fees for this action | $402.00 | $1,206.00 |
| Tier 1(c) | Medical records costs | $50.00 | $150.00 |
| **RICO TOTAL** | **Direct business/property injury** | **$34,032.00** | **$102,096.00** |

STATE LAW DAMAGES (Count III - Not Trebled - Per Evans v. City of Chicago):

| Category | Description | Amount |
|----------|-------------|--------|
| Tier 1-A(d) | Lost wages (11 days detention) | ~$1,500.00 |
| Tier 1-A(e) | Criminal defense attorney fees | ~$15,000.00 |
| Tier 1-A(f) | Bond posted | ~$5,000.00 |
| Tier 2(h-l) | Educational/career damages | TBD at trial |
| **STATE LAW TOTAL** | **Compensatory (not trebled)** | **\*\*~$21,500.00 + TBD\*\*** |

Plus: Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. § 1964(c).

**97A.**    PERSONAL INJURIES EXCLUDED FROM RICO DAMAGES: Plaintiff acknowledges that personal injuries—including loss of liberty, physical pain from restraints, and emotional distress—are not recoverable under civil RICO, which is limited to "business or property" injuries. Grogan v. Platt, 835 F.2d 844, 847 (11th Cir. 1988). These personal injuries are pleaded separately under the state law counts (Counts III and IV) and are not included in the RICO trebling calculation.

COUNT II - VIOLATION OF 18 U.S.C. 1962(d)
(RICO Conspiracy)
(Against All Defendants)

**98.**     Plaintiff incorporates by reference paragraphs 1 through 97 as though fully set forth
herein.

**99.**     Defendants conspired to violate 18 U.S.C. 1962(c), in violation of 18 U.S.C. 1962(d).
Under *Beck v. Prupis*, 529 U.S. 494 (2000), a civil RICO conspiracy claim requires the
plaintiff to have suffered injury from an act that is itself a predicate offense or an overt
act in furtherance of the conspiracy. Here, Plaintiff was injured by the predicate acts
(wire fraud, healthcare fraud) that were committed in furtherance of the conspiracy,
satisfying *Beck*'s requirement.

**100.**    Each Defendant knowingly agreed and conspired with each other to conduct the
Enterprise's affairs through a pattern of racketeering activity. Each Defendant reached an
agreement or understanding to participate in the affairs of the enterprise through a pattern
of racketeering activity, and agreed to the common goal of detaining patients and
maximizing "detox" billing, as evidenced by their coordinated actions: **Dr. Murphy**'s
precisely-timed 4-hour restraint renewal orders (Exhibit I) required nursing staff to act in
concert under a prearranged schedule; **March**'s unfiled petition and **Forte**'s
unfiled certificates (see clinical notes) demonstrate a deliberate workflow that all
participants understood and executed; and the unified reporting to police at discharge (see
Exhibit C, documenting multiple staff members collectively involving law enforcement)
confirms that Defendants worked together toward shared objectives that exceeded routine
patient care.

**101.**    Each Defendant knew that the enterprise was engaged in detention and billing as
described herein. The interlocking roles and precision timing of Defendants'
actions—injection at 16:17 (Exhibit D), police report at 16:20 (Exhibit C), restraint
initiation at 18:05 (Exhibit E), transfer at 18:49 (Exhibit F), and precisely-timed renewals
every 4 hours (Exhibit I)—demonstrate coordinated planning rather than independent
decision-making.

**102.**    Each Defendant's role was essential to the operation of the scheme, and the exhibits
demonstrate observable facts proving a "meeting of the minds":

a.   The Corporate Defendants established billing codes and revenue targets that
incentivized extended detention (Exhibit B showing Revenue Code 0126 systematic
application; Exhibit K showing interstate wire destination);

b. **Dr. Murphy** ordered detention and medication without filing required legal documents, with her precisely-timed restraint renewals (Exhibit I) showing systematic coordination with nursing staff;

c. **March** and **Forte** prepared commitment paperwork that was deliberately not filed (Exhibit E), demonstrating a pre-planned workflow to avoid judicial oversight while creating the appearance of compliance;

d. **Coakley**, **Abbatacola**, and **Zygmunt** executed physical and chemical restraints in concert with the renewal orders (Exhibits D, E, and I showing synchronized timing);

e. All Defendants participated in reporting Plaintiff's drug-induced behavior to police (Exhibit C), a coordinated step unnecessary absent a shared plan to discredit the patient and cover up the scheme.

103.    As a direct and proximate result of the conspiracy, Plaintiff suffered the injuries described in paragraphs 94-97.


## COUNT III - COMMON LAW FRAUD

(Against All Defendants)

104.    Plaintiff incorporates by reference paragraphs 1 through 103 as though fully set forth herein.

105.    Defendants made false representations of material fact, specifically:

a. That Plaintiff was receiving "Detox" services justifying $2,930/day charges;

b. That Plaintiff's detention was legally authorized;

c. That the services billed were medically necessary and actually rendered.

106.    Defendants knew these representations were false when made.

107.    Defendants made these representations with the intent to deceive healthcare payors and to collect payment for services not rendered.

108.    Healthcare payors, including Medicare and Medicaid, reasonably relied on Defendants' representations in making payments.

108A.   RELIANCE BY PLAINTIFF AS INTENDED VICTIM: In addition to the fraud on third-party payors, Defendants made material misrepresentations and omissions directly to Plaintiff:

a. MISREPRESENTATION BY OMISSION: On or about January 29, 2023, at **Advocate Lutheran General Hospital**, Defendants, through their agents, failed to inform Plaintiff of his legal right as a voluntary patient to leave the facility at any time during normal day shift hours pursuant to 405 ILCS 5/3-403. By withholding this information and instead implying through words and conduct that his continued hospitalization was legally required, Defendants misrepresented material facts inducing Plaintiff to submit to detention he could have lawfully refused.

b. MISREPRESENTATION OF LEGAL AUTHORITY: Throughout Plaintiff's eleven-day detention, Defendants represented to Plaintiff, by their conduct in physically restraining him and preventing his departure, that they had legal authority to detain him. This representation was false—no petition had been filed with any court, and Defendants had no legal authority whatsoever to hold a voluntary patient against his will.

c. MISREPRESENTATION IN BILLING: On October 28, 2025, Defendants sent false billing statements directly to Plaintiff (Exhibit B), misrepresenting that he owed $33,580.00 for "detox" services that were never provided. Defendants intended Plaintiff to rely on these statements and pay the fraudulent charges.

d. DETRIMENTAL RELIANCE: Even though Plaintiff did not pay the bogus bill, he detrimentally relied on the false billing representations in that he was forced to take action—disputing the debt, obtaining medical records to verify the fraud, hiring counsel for consultation, and ultimately filing this action—incurring substantial costs as a direct result of the deceit.

This constitutes reliance by an intended target of the fraud. The mailed Detailed Bill (Exhibit B) is a material misrepresentation directed at Plaintiff with the intent to induce financial action. Under Illinois law, a plaintiff satisfies the reliance element by demonstrating that the fraud was directed at them with intent to induce action, even if the plaintiff ultimately did not succumb to the deception. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

109. As a result of Defendants' conduct, Plaintiff was billed $33,580.00 for services during his detention, and the false billing statement (Exhibit B) represents a continuing misrepresentation that Plaintiff owes this amount.

110. Plaintiff is entitled to compensatory and punitive damages.

111. PERSONAL INJURY DAMAGES (State Law Only): In addition to business/property damages, Plaintiff seeks compensatory damages under this state law count for:

a. Loss of liberty for eleven (11) days of unlawful detention without court order;

    b.   Physical pain and suffering from 115 consecutive hours of four-point mechanical restraints;

    c.   Emotional distress, humiliation, and psychological trauma from the circumstances of detention, forced medication, and subsequent prosecution;

    d.   Permanent physical injuries, if any, caused by the restraints and forced chemical injections.

## COUNT IV - UNJUST ENRICHMENT

(Against All Defendants)
(Pleaded in the Alternative)

**112.**    Plaintiff incorporates by reference paragraphs 1 through 111 as though fully set forth herein.

**112A.**   ALTERNATIVE PLEADING: In the alternative, if for any reason no adequate remedy at law exists to fully compensate Plaintiff for Defendants' wrongful retention of funds, or if the fraud claims are determined to be insufficient, Plaintiff pleads unjust enrichment as an alternative basis for recovery.

**113.**    Defendants submitted claims totaling $33,580.00 for Plaintiff's admission. Exhibit B (the itemized bill) confirms the charges submitted, and Exhibit K (the Hospital Face Sheet/Insurance Information) indicates that Plaintiff had insurance coverage through Blue Cross Community, demonstrating that a payor was billed across state lines. On information and belief, Defendants may have received partial payment from Medicare, Medicaid, or private insurance for some portion of these charges. However, Defendants subsequently transmitted a billing statement dated October 28, 2025, to Plaintiff demanding payment of $33,580.00 (Exhibit B)—indicating that either: (a) the insurer denied or recouped payment upon discovering the charges were improper; (b) the insurer paid only a portion and Defendants seek the remainder from Plaintiff; or (c) no payment was ever received and Defendants seek full payment from Plaintiff directly. In any scenario, Defendants' retention of any payments received—and their continued pursuit of payment from Plaintiff—for fraudulently-billed services constitutes unjust enrichment.

**114.**    Defendants' retention of this payment is unjust because the services were not legally authorized, were not actually rendered as billed, and were obtained during detention without court authorization. Defendants billed for "Room Charge Detox" (Revenue Code 0126) at $2,930.00/day when no detoxification services were provided, retaining the benefit of these fraudulent billings.

**115.**     Defendants should be required to disgorge all payments received for Plaintiff's admission. Equity demands that Defendants not retain the proceeds of their fraudulent billing scheme, regardless of whether those proceeds came from insurers, government programs, or would be sought from Plaintiff directly.

**NOTICE REGARDING POTENTIAL FALSE CLAIMS ACT VIOLATIONS**

**116.**     Plaintiff reserves all rights under the False Claims Act, 31 U.S.C. 3729 et seq. The conduct alleged herein may constitute violations of federal healthcare fraud statutes, and Plaintiff respectfully requests the Court take notice of the potential for parallel federal enforcement proceedings.

**EXHIBITS**

**117.**     The following exhibits are attached hereto and incorporated by reference:

EXHIBIT A: Civil Filing Packet with Chain of Custody Timeline - A visual chart documenting the precise timestamps of each act described herein, including the 180-second gap between chemical restraint and the alleged incident, the 44-minute transfer to unit without video surveillance, and the 115-hour restraint duration.

EXHIBIT B: Hospital Itemized Bill (Visit ID #467392168) - Documenting Revenue Code 0126 "Room Charge Detox" charges at $2,930.00/day totaling $33,580.00, with Line 21 (J1630 Haloperidol) and Line 22 (J2060 Lorazepam) highlighted. Mailed October 28, 2025.

EXHIBIT C: Park Ridge Police Fact Sheet (SA-2023-02709) - Documenting "Incident Begin Time: 4:20 PM" on February 2, 2023, and "11:15" police arrival on February 7, 2023.

EXHIBIT D: Medication Administration Records - Documenting the 16:17 CST injection of Haloperidol 3 mg and Lorazepam 2 mg.

EXHIBIT E: Restraint Documentation - Showing initiation at 18:05 CST on February 2, 2023, and gaps in required q-15 minute monitoring.

EXHIBIT F: Transfer Order - Showing **Dr. Patrick Piper**'s 18:49 CST order transferring Plaintiff to 12th Floor MMWU Room 1258.

EXHIBIT G: Vital Signs Record - Showing 18:39 CST hypertensive spike of 151/73 mmHg and 21:16 CST Enoxaparin administration, with stable MEWS scores (0-1)

throughout.

EXHIBIT H: Nursing Flowsheets - Documenting contradictory entries: "Patient asleep" and "Striking out/Punching" at 23:00 CST on 02/06/2023, on the same flowsheet at the same timestamp.

EXHIBIT I: **Dr. Murphy**'s Restraint Renewal Orders - Showing precisely-timed renewals without corresponding nursing documentation of physician presence.

EXHIBIT J: Subpoena Tracking Sheet (February 21, 2023) - Documenting annotation "Detective Fitzgerald #142... report will not be included in subpoena."

EXHIBIT K: Hospital Face Sheet/Insurance Information - Documenting Blue Cross Community Claims Address at PO Box 650712, Dallas, Texas 75265-0712, proving interstate wire transmission.

EXHIBIT CROSSWALK (RICO Complaint to Civil Filing Packet)

**118.** For the Court's convenience, the following crosswalk identifies the correspondence between exhibits attached to this Complaint and exhibits contained in the Civil Filing Packet (Exhibit A):

RICO Ex. B (Itemized Bill) = Civil Packet Ex. G (Itemized Hospital Bill), pp. 1-7
RICO Ex. C (Police Fact Sheet) = Civil Packet Ex. B (Fact Sheet), p. 1
RICO Ex. D (MAR Records) = Civil Packet Ex. E (Medical Records), MAR section
RICO Ex. E (Restraint Docs) = Civil Packet Ex. F (Restraint Documentation), pp. 1-3
RICO Ex. H (Nursing Flowsheets) = Civil Packet Ex. E (Medical Records), Flowsheet section
RICO Ex. J (Tracking Sheet) = Civil Packet Ex. J (Subpoena Tracking Sheet), p. 1
RICO Ex. K (Face Sheet) = Civil Packet Ex. G (Hospital Bill), Face Sheet/Insurance page

**PROOF INDEX**

**119.** The following index identifies key allegations and their documentary support:

**ALLEGATION                    | EXHIBIT | KEY PAGE/ITEM**

```
----------------------------------------|---------|---------------------------
Fraudulent billing ($33,580.00) | Ex. B | Visit ID #467392168
Revenue Code 0126 "Detox" misuse | Ex. B | Line items, Rev Code column
Interstate wire to Dallas, TX | Ex. K | PO Box 650712 address
```

180-second injection-to-incident gap | Ex. C/D | 16:17 vs 4:20 PM
Restraint initiation (18:05 CST) | Ex. E | Restraint order timestamp
Unit transfer (18:49 CST) | Ex. F | **Dr. Piper** order
MEWS Score 0-1 (stable patient) | Ex. G | Vital signs record
Contradictory nursing entries | Ex. H | 23:00 CST 02/06/2023
Suppressed detective report | Ex. J | "will not be included"
Voluntary admission status | Ex. A | Admission paperwork

## NOTICE OF PRESERVATION OBLIGATION

**120.** Defendants are hereby placed on notice of their legal obligation to preserve all documents, electronically stored information, and tangible evidence relevant to the claims asserted herein. Spoliation of evidence will result in motions for adverse inference instructions. Evidence to be preserved includes, but is not limited to:

a. All CCTV footage from Unit 3C and the 12th Floor MMWU for the period January 28 through February 7, 2023, including footage retention logs and deletion records;

b. Epic EMR audit logs showing all user access to Plaintiff's medical record (MRN and Visit ID #467392168);

c. Revenue code configuration tables, chargemaster entries, and billing department standard operating procedures for the 12th Floor MMWU;

d. All internal communications (email, Teams, Slack, text messages) among Defendants regarding Plaintiff;

e. Detective Fitzgerald's (#142) complete investigative report from the Park Ridge Police Department;

f. All restraint equipment maintenance and inspection records for the 12th Floor MMWU;

g. Training materials provided to nursing staff regarding restraint documentation and the Illinois Mental Health Code;

h. All documents related to the decision not to file the Petition for Involuntary Admission prepared by Defendant **March**.

## DISCLOSURE OF RELATED CASES

**121.** Pursuant to Local Rule 3.2, Plaintiff discloses the following related case: Case No. 23CR0241301, *People of the State of Illinois v. Ehab Allababidi*, pending in the Circuit Court of Cook County, Criminal Division. That case involves charges arising from the same February 2, 2023 incident at issue herein, but does not involve the federal RICO claims, billing fraud, or civil remedies sought in this action. The cases are related by common facts but present distinct legal issues and seek different relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. On Counts I and II (RICO), award Plaintiff treble damages pursuant to 18 U.S.C. § 1964(c) in an amount to be proven at trial;

B. On Counts I and II (RICO), award Plaintiff reasonable attorney's fees (if represented by counsel) and costs of suit pursuant to 18 U.S.C. § 1964(c);

C. On Count III (Fraud), award Plaintiff compensatory damages in an amount to be proven at trial, plus punitive damages in an amount sufficient to deter Defendants' conduct;

D. On Count IV (Unjust Enrichment), order Defendants to disgorge all payments received for Plaintiff's admission;

E. Enter a declaratory judgment that Defendants' conduct as alleged herein violated 18 U.S.C. § 1962(c) and (d);

F. Award Plaintiff pre-judgment and post-judgment interest at the maximum rate permitted by law;

G. Award Plaintiff costs of suit;

H. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_____

EHAB ALLABABIDI, Pro Se
In Forma Pauperis

8516 W. Winona St.
Chicago, Illinois 60656
Telephone: (773) 920-0030
Email: defcon5ready@gmail.com

**VERIFICATION AND DECLARATION UNDER PENALTY OF PERJURY**

I, Ehab Allababidi, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

**1.**     I am the Plaintiff in the above-captioned action and am competent to testify to the matters stated herein.

**2.**     I have personal knowledge of the facts stated in this Complaint, except where stated on information and belief, and if called as a witness, I could and would testify competently thereto.

**3.**     The factual allegations in this Complaint are true and correct to the best of my knowledge, information, and belief.

**4.**     The timestamps, billing codes, and medical record citations contained herein are derived directly from documents produced by Defendants and maintained in their custody.

**5.**     I have reviewed the exhibits attached hereto and affirm that they are true and correct copies of documents in my possession.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 2025, at Chicago, Illinois.

/s/ Ehab Allababidi

_____

EHAB ALLABABIDI, Plaintiff Pro Se
8516 W. Winona St.
Chicago, Illinois 60656

Case: 1:25-cv-15800 Document #: 1 Filed: 12/28/25 Page 51 of 111 PageID #:51

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT A

## CHAIN OF CUSTODY TIMELINE

**115-Hour Restraint Period: 02/02/2023 18:05 CST → 02/07/2023 13:05 CST**

---

**EVIDENTIARY SUMMARY**

A visual forensic chart documenting the precise timestamps of each act described
herein, including the 180-second gap between chemical restraint and the alleged incident,
the 44-minute transfer to unit without video surveillance, and the 115-hour restraint duration.

**RELEVANCE TO RICO CLAIMS:**
  Establishes precise timeline proving detention exceeded legal authority

**THIS EXHIBIT PROVES:**
  • 180-second pharmacological causation gap
  • 44-minute custody gap without surveillance
  • 115-hour continuous restraint without court order

---

**■ KEY TIMESTAMPS:**

| | |
|---|---|
| • 16:17 CST - Forced injection | • 16:20 CST - Alleged incident (180 sec later) |
| • 18:05 CST - Restraints initiated | • 18:49 CST - Transfer order |

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

---

# EXHIBIT A: CHAIN OF CUSTODY TIMELINE

### January 28 - February 7, 2023

| PHASE | DESCRIPTION | DATE |
|-------|-------------|------|
| | | |
| **PHASE 1** | **VOLUNTARY ARRIVAL**<br>Patient voluntarily presents; forcibly medicated | Jan 28-29 |
| **PHASE 2** | **THE 180-SECOND GAP**<br>Injection → "Incident" in 3 minutes | Feb 2, 16:17-16:20 |
| **PHASE 3** | **RESTRAINT & CONCEALMENT**<br>115 hours restraint; transfer to no-CCTV unit | Feb 2-7 |
| **PHASE 4** | **COORDINATED ARREST**<br>Restraints removed only for police custody | Feb 7 |
| **PHASE 5** | **BILLING FRAUD**<br>$33,580.00 fraudulent claims submitted to Medicaid | Feb 2023 |

## KEY METRICS:

| | |
|---|---|
| **180 Seconds:** | Injection-to-"Incident" Gap |
| **115 Hours:** | Continuous Restraint (28.75× federal limit) |
| **$33,580.00:** | Fraudulent Billing (Revenue Code 0126) |
| **ZERO:** | Court Orders Filed |

## DETAILED CHRONOLOGICAL TIMELINE

| | | |
|---|---|---|
| **Jan 28, 2023** 18:38 | **VOLUNTARY ARRIVAL** Plaintiff presents to ED seeking medication refills | |
| **Jan 28, 2023** 19:11 | **FIRST FORCED INJECTION** Haloperidol 5mg + Lorazepam 2mg IM without consent | |
| **Jan 29, 2023** — | **ADMITTED AS VOLUNTARY** Hospital records show voluntary admission status | |
| **Feb 2, 2023** 16:17 | **THE INJECTION** Grace Coakley, RN: Haloperidol 3mg + Lorazepam 2mg IM | |
| **Feb 2, 2023** 16:20 | **POLICE "INCIDENT"** 180 SECONDS LATER - Drug-induced reaction reported as crime | |
| **Feb 2, 2023** 18:05 | **RESTRAINTS INITIATED** 4-point mechanical restraints applied | |
| **Feb 2, 2023** 18:49 | **TRANSFER TO NO-CCTV** Dr. Piper orders transfer to 12th Floor MMWU (limited surveillance) | |
| **Feb 2-7, 2023** 115 hrs | **CONTINUOUS RESTRAINT** 28.75× the 4-hour federal limit (42 C.F.R. § 482.13) | |
| **Feb 7, 2023** ~11:00 | **RESTRAINTS REMOVED** For police transfer ONLY, not clinical reason | |
| **Feb 7, 2023** 11:15 | **POLICE ARRIVAL** Pre-coordinated arrest; 15-minute gap proves coordination | |
| **Feb 7, 2023** — | **BILLING TRANSMITTED** $33,580.00 via interstate wire to Dallas, TX | |
| **Feb 2023** — | **MEDICAID FRAUD** $33,580.00 fraudulent claims submitted to federal healthcare program | |

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT B

## HOSPITAL ITEMIZED BILL

**Visit #467392168 | Revenue Code 0126 | $33,580.00 Fraudulent Charges**

---

**EVIDENTIARY SUMMARY**

Itemized bill documenting Revenue Code 0126 "Room Charge Detox" charges at $2,930.00/day
totaling $33,580.00 for 11 days. Line 21: J1630 Haloperidol. Line 22: J2060 Lorazepam.
Fraudulent charges submitted to Medicaid for services NEVER RENDERED.

**RELEVANCE TO RICO CLAIMS:**
  Direct proof of healthcare fraud - billing Medicaid for detox services never rendered

**THIS EXHIBIT PROVES:**
  • $33,580.00 fraudulent Medicaid billing
  • Revenue Code 0126 misuse
  • No detox services provided
  • False claims submitted to federal healthcare program

---

■ **KEY TIMESTAMPS:**
  • 01/28/2023 - Admission                          • 02/07/2023 - Discharge
  • Feb 2023 - Fraudulent claims submitted

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*



Parent Advocate Lutheran General Hospital

**Detailed Bill Date:** 10/28/25

**Account ID**
2000041341

**Guarantor Name & Address**
Allababidi,Ehab
8516 W Winona St
Chicago, IL 60656-2720

**Visit ID**
467392168

**Detailed Bill For**

| | | | |
|---|---|---|---|
| Patient Name: | Allababidi, Ehab | Total Charges: | 33,580.00 |
| Account Class: | Inpatient | Service Date: | |
| Attending Physician: | Soliz, May | 01/28/2023 to 02/07/2023 | |

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| 01/28/23 | 0250 | J1630 | Haloperidol Lactate 5 Mg/Ml Solution (0143-9501-25) | 1 | 117.00 |
| 01/28/23 | 0250 | J2060 | Lorazepam 2 Mg/Ml Solution (0641-6044-25) | 1 | 114.00 |
| 01/28/23 | 0300 | 10000769 | Alcohol Screen (Ethanol) | 1 | 635.00 |
| 01/28/23 | 0301 | 10002488 | Basic Metabolic Panel | 1 | 130.00 |
| 01/28/23 | 0301 | 10001010 | Magnesium Serum | 1 | 105.00 |
| 01/28/23 | 0305 | 10001173 | CBC W/Auto Diff | 1 | 85.00 |
| 01/28/23 | 0306 | 10006667 | COVID, Influ A & B, RSV PCR Panel | 1 | 310.00 |
| 01/28/23 | 0301 | 10002528 | Salicylate, Quantitative | 1 | 635.00 |
| 01/28/23 | 0301 | 10000757 | Acetaminophin | 1 | 635.00 |
| 01/28/23 | 0301 | 10000860 | CK Total | 1 | 110.00 |
| 01/28/23 | 0300 | 10002305 | Venipuncture | 1 | 40.00 |
| 01/28/23 | 0260 | 10002061 | Inject Sq or IM | 2 | 410.00 |
| 01/28/23 | 0300 | 10006613 | HOPD Covid-19 Spec Collect | 1 | 125.00 |
| 01/28/23 | 0450 | 10002638 | ED Level 4 | 1 | 1,490.00 |
| 01/29/23 | 0250 | 10002803 | Buspirone 15 Mg Tab (0093-1003-01) | 1 | 13.00 |
| 01/29/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 01/29/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (35573-428-51) | 1 | 15.00 |
| 01/29/23 | 0900 | 10004838 | Therapy Crisis 1st 60 Min | 1 | 570.00 |
| 01/29/23 | 0301 | 10006054 | Toxicology Screen Urine | 1 | 720.00 |
| 01/29/23 | 0300 | 10002305 | Venipuncture | 1 | 40.00 |

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| 01/29/23 | 0305 | 10001173 | CBC W/Auto Diff | 1 | 85.00 |
| 01/29/23 | 0301 | 10002490 | Comprehensive Metabolic Panel | 1 | 205.00 |
| 01/29/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 01/29/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 01/30/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (35573-428-51) | 1 | 15.00 |
| 01/30/23 | 0250 | 10002803 | Buspirone 15 Mg Tab (0093-1003-01) | 1 | 13.00 |
| 01/30/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 01/30/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 01/30/23 | 0250 | J2060 | Lorazepam 2 Mg/Ml Solution (0641-6044-25) | 1 | 114.00 |
| 01/30/23 | 0306 | 10006780 | Covid-19 PCR | 1 | 160.00 |
| 01/30/23 | 0250 | J1630 | Haloperidol Lactate 5 Mg/Ml Solution (0143-9501-25) | 1 | 112.00 |
| 01/30/23 | 0250 | J2060 | Lorazepam 2 Mg/Ml Solution (0641-6044-25) | 1 | 114.00 |
| 01/30/23 | 0250 | J2060 | Lorazepam 2 Mg/Ml Solution (0641-6044-25) | 1 | 114.00 |
| 01/30/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 01/30/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 3 | 39.00 |
| 01/30/23 | 0260 | 10002063 | IV Push 1st or Single Drug | 1 | 330.00 |
| 01/30/23 | 0260 | 10002061 | Inject Sq or IM | 3 | 615.00 |
| 01/31/23 | 0250 | 10002803 | Polyethylene Glycol 17 G Pack (62559-157-30) | 1 | 19.00 |
| 01/31/23 | 0250 | 10002803 | Haloperidol 1 Mg Tab (51079-734-01) | 3 | 44.00 |
| 01/31/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 01/31/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (35573-428-51) | 1 | 15.00 |
| 01/31/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 01/31/23 | 0424 | 10005857 | PT Eval Mod Complexity | 1 | 400.00 |
| 01/31/23 | 0300 | 10002305 | Venipuncture | 1 | 40.00 |
| 01/31/23 | 0305 | 10001173 | CBC W/Auto Diff | 1 | 85.00 |
| 01/31/23 | 0301 | 10002490 | Comprehensive Metabolic Panel | 1 | 205.00 |
| 01/31/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 01/31/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 3 | 39.00 |
| 01/31/23 | 0250 | 10004651 | Acetaminophen 325 Mg Tab (0904-6773-61) | 3 | 3.00 |
| 01/31/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 01/31/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 01/31/23 | 0762 | 10002729 | Observation, per Hour | 7 | 910.00 |
| 01/31/23 | 0260 | 10002061 | Inject Sq or IM | 1 | 205.00 |
| 02/01/23 | 0250 | 10004651 | Acetaminophen 325 Mg Tab (0904-6773-61) | 3 | 3.00 |
| 02/01/23 | 0250 | 10002803 | Melatonin 3 Mg Tab (20555-03601) | 3 | 40.00 |
| 02/01/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (35573-428-51) | 1 | 15.00 |
| 02/01/23 | 0250 | 10004651 | Acetaminophen 325 Mg Tab (0904-6773-61) | 3 | 3.00 |
| 02/01/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/01/23 | 0250 | 10002803 | Buspirone 15 Mg Tab (0093-1003-01) | 1 | 13.00 |
| 02/01/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/01/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 1 | 15.00 |
| 02/01/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|------|----------|----------------|-------------|-----|--------|
| 02/01/23 | 0306 | 10006780 | Covid-19 PCR | 1 | 160.00 |
| 02/01/23 | 0250 | J1200 | Diphenhydramine 50 Mg/Ml Solution (63323-664-00) | 1 | 112.00 |
| 02/01/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/01/23 | 0250 | 10004651 | Acetaminophen 325 Mg Tab (0904-6773-61) | 3 | 3.00 |
| 02/01/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 2 | 30.00 |
| 02/01/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 3 | 39.00 |
| 02/01/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/01/23 | 0250 | 10002803 | Cyclobenzaprine 5 Mg Tab (52817-330-50) | 1 | 13.00 |
| 02/01/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 02/01/23 | 0250 | 10002803 | Melatonin 3 Mg Tab (20555-03601) | 3 | 40.00 |
| 02/01/23 | 0121 | 10000002 | Room Charge Med Surg | 1 | 2,510.00 |
| 02/01/23 | 0762 | 10002729 | Observation, per Hour | 12 | 1,560.00 |
| 02/01/23 | 0260 | 10002064 | IV Push Ea Addl Different Drug | 1 | 315.00 |
| 02/02/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (35573-428-51) | 1 | 15.00 |
| 02/02/23 | 0306 | 10006780 | Covid-19 PCR | 1 | 160.00 |
| 02/02/23 | 0250 | 10002803 | Buspirone 15 Mg Tab (0093-1003-01) | 1 | 13.00 |
| 02/02/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/02/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 2 | 30.00 |
| 02/02/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0904-6009-61) | 1 | 13.00 |
| 02/02/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0904-6009-61) | 1 | 13.00 |
| 02/02/23 | 0250 | 10002803 | Haloperidol 1 Mg Tab (51079-734-01) | 3 | 44.00 |
| 02/02/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (60687-555-01) | 10 | 150.00 |
| 02/02/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0904-6009-61) | 1 | 13.00 |
| 02/02/23 | 0250 | J1630 | Haloperidol Lactate 5 Mg/Ml Solution (63323-474-00) | 1 | 114.00 |
| 02/02/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (0093-3422-01) | 1 | 13.00 |
| 02/02/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/02/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 02/02/23 | 0250 | 10002803 | Melatonin 3 Mg Tab (20555-03601) | 3 | 40.00 |
| 02/02/23 | 0250 | 10002803 | Quetiapine 200 Mg Tab (16714-455-01) | 2 | 26.00 |
| 02/02/23 | 0126 | 13003241 | Room Charge Detox | 1 | 2,930.00 |
| 02/03/23 | 0250 | J3486 | Ziprasidone 20 Mg Recon Soln (43598-848-11) | 2 | 193.00 |
| 02/03/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/03/23 | 0250 | 10002803 | Buspirone 15 Mg Tab (0093-1003-01) | 1 | 13.00 |
| 02/03/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 2 | 30.00 |
| 02/03/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/03/23 | 0250 | J3486 | Ziprasidone 20 Mg Recon Soln (43598-848-11) | 2 | 193.00 |
| 02/03/23 | 0250 | 10002803 | Clonazepam 1 Mg Tab (16729-137-00) | 2 | 30.00 |
| 02/03/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/03/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 02/03/23 | 0250 | 10002803 | Quetiapine 200 Mg Tab (16714-455-01) | 2 | 26.00 |
| 02/03/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0904-6009-61) | 1 | 13.00 |

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|------|----------|----------------|-------------|-----|--------|
| 02/03/23 | 0126 | 13003241 | Room Charge Detox | 1 | 2,930.00 |
| 02/04/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0904-6009-61) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (51079-051-01) | 1 | 15.00 |
| 02/04/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0904-6009-61) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Haloperidol 5 Mg Tab (60687-161-11) | 1 | 17.00 |
| 02/04/23 | 0250 | J1200 | Diphenhydramine 50 Mg/Ml Solution (63323-664-00) | 1 | 112.00 |
| 02/04/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/04/23 | 0250 | J3486 | Ziprasidone 20 Mg Recon Soln (43598-848-11) | 2 | 193.00 |
| 02/04/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/04/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 02/04/23 | 0250 | 10002803 | Quetiapine 200 Mg Tab (68180-448-01) | 2 | 26.00 |
| 02/04/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/04/23 | 0250 | 10002803 | Melatonin 3 Mg Tab (20555-03601) | 3 | 40.00 |
| 02/04/23 | 0250 | 10004651 | Acetaminophen 325 Mg Tab (0904-6773-61) | 3 | 3.00 |
| 02/04/23 | 0126 | 13003241 | Room Charge Detox | 1 | 2,930.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 2 Mg Tab (0093-3427-05) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (51079-051-01) | 1 | 15.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (0093-3422-01) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-61) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/05/23 | 0250 | J3486 | Ziprasidone 20 Mg Recon Soln (43598-848-58) | 2 | 193.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-61) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-61) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (59746-177-10) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-61) | 1 | 13.00 |
| 02/05/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 02/05/23 | 0250 | 10002803 | Melatonin 3 Mg Tab (20555-03601) | 3 | 40.00 |
| 02/05/23 | 0250 | 10002803 | Quetiapine 200 Mg Tab (68180-448-01) | 2 | 26.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Senna 8.6 Mg Tab (57896-454-01) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Senna 8.6 Mg Tab (70677-0058-1) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (0093-3422-01) | 1 | 13.00 |
| 02/05/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/05/23 | 0126 | 13003241 | Room Charge Detox | 1 | 2,930.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| 02/06/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (51079-051-01) | 1 | 15.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/06/23 | 0250 | 10004651 | Acetaminophen 325 Mg Tab (0904-6773-61) | 3 | 3.00 |
| 02/06/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (0093-3422-01) | 1 | 13.00 |
| 02/06/23 | 0250 | J3486 | Ziprasidone 20 Mg Recon Soln (43598-848-11) | 2 | 193.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (60687-638-11) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (0093-3422-01) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/06/23 | 0250 | 10002803 | Quetiapine 200 Mg Tab (68180-448-01) | 2 | 26.00 |
| 02/06/23 | 0250 | J1650 | Enoxaparin 40 Mg/0.4ml Solution Prefilled Syringe (0955-1004-01) | 4 | 126.00 |
| 02/06/23 | 0250 | 10002803 | Senna 8.6 Mg Tab (57896-454-01) | 2 | 26.00 |
| 02/06/23 | 0250 | 10002803 | Melatonin 3 Mg Tab (20555-03601) | 3 | 40.00 |
| 02/06/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/06/23 | 0126 | 13003241 | Room Charge Detox | 1 | 2,930.00 |
| 02/07/23 | 0250 | 10002803 | Diphenhydramine 25 Mg Cap (0904-5306-61) | 2 | 26.00 |
| 02/07/23 | 0250 | 10002803 | Cyclobenzaprine 10 Mg Tab (0093-3422-01) | 1 | 13.00 |
| 02/07/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (0904-6008-60) | 1 | 13.00 |
| 02/07/23 | 0250 | 10002803 | Pantoprazole 40 Mg Tablet Enteric Coated (35573-428-51) | 1 | 15.00 |
| 02/07/23 | 0250 | 10002803 | Hydrochlorothiazide 12.5 Mg Tab (16729-182-01) | 1 | 13.00 |
| 02/07/23 | 0250 | 10002803 | Quetiapine 100 Mg Tab (16714-454-01) | 1 | 13.00 |
| 02/07/23 | 0250 | 10002803 | Lorazepam 1 Mg Tab (60687-638-11) | 1 | 13.00 |

**Total hospital charges:**                                       **33,580.00**

## Hospital Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 02/24/23 | Blue Cross Community Medicaid Insurance Payment | -1,426.07 |
| 02/28/23 | Blue Cross Community Medicaid Insurance Payment | -4,433.88 |
| 02/14/23 | Blue Cross Community Medicaid Insurance Adjustment | -245.00 |
| 02/14/23 | Blue Cross Community Medicaid Adjustment | -17,138.12 |
| 02/15/23 | Blue Cross Community Medicaid Adjustment | -10,336.93 |
| **Total hospital payments and adjustments:** | | **-33,580.00** |

Total Balance:     0.00

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT C

## PARK RIDGE POLICE FACT SHEET

**SA-2023-02709 | Incident Time: 16:20 CST | 180 Seconds Post-Injection**

---

**EVIDENTIARY SUMMARY**

Official police documentation establishing "Incident Begin Time: 4:20 PM" on February 2, 2023—exactly 180 seconds after 16:17 forced injection. Police arrival documented at 11:15 on February 7, 2023 (5 days later).

**RELEVANCE TO RICO CLAIMS:**
  Proves incident occurred during pharmacological incapacitation window

**THIS EXHIBIT PROVES:**
  • 16:20 CST incident time (180 sec post-injection)
  • Police called 5 days after incident
  • Delayed reporting suggests cover-up

---

**■ KEY TIMESTAMPS:**
  • 02/02/2023 16:20 - Incident time
  • 02/07/2023 11:15 - Police arrival

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

# Fact Sheet

Date: 2/8/2023

Case #:    Allababidi, Ehab
SA-2023-02709

**Defn ***: Ehab Allababidi**

**7(1)(b)**          DOB:**7(1)(c)**          Sex:Male

Race:  White          IR-**7(1)(b)**          SID-**7(1)(b)**
FBI-**7(1)(b)**          RD- 23-00003197          CB-  ***

Arrest Date: 02/07/2023   Arrest Address: Lutheran General
Hospital, 1775 W Dempster, Park Ridge, IL 60068

App Chgs:
720 ILCS 5/12-3.05(d)(11)   3    AGGRAVATED BATTERY/NURSE
720 ILCS 5/12-3.05(d)(11)   3    AGGRAVATED BATTERY/NURSE
720 ILCS 5/12-3.05(d)(11)   3    AGGRAVATED BATTERY/NURSE
720 ILCS 5/12-3.05(d)(11)   3    AGGRAVATED BATTERY/NURSE

Stmt Begin Date: 02/07/2023   Stmt Begin Time:11:15 AM
Stmt End Date:          Stmt End Time:
Type: Videotaped Statement
Statement Wit: Ehab Allababidi, KENNETH KING, Frank Lauria
Prosecutor Present: -- NONE --
Stmt: D was AOR.  D invoked.

Victim:**7(1)(c)**
DOB:**7(1)(c)**     SEX: F Race:**7(1)(c)**
**7(1)(b)**
Cell:**7(1)(b)**     Ext:
Inj: Loss:
Inj descp:
Stmt Begin Date:          Stmt Begin Time:
Stmt End Date:          Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Victim:**7(1)(c)**
DOB:**7(1)(c)**     SEX: F Race:**7(1)(c)**
**7(1)(b)**
Cell:**7(1)(b)**     Ext:
Inj: Loss:
Inj descp:
Stmt Begin Date:          Stmt Begin Time:
Stmt End Date:          Stmt End Time:

```
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Victim: 7(1)(c)
DOB: 7(1)(c)      SEX: F Race: 7(1)(c)
7(1)(b)
Cell: 7(1)(b)       Ext:
Inj:  Loss:
Inj descp:
Stmt Begin Date:              Stmt Begin Time:
Stmt End Date:                Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Victim: 7(1)(c)
DOB: 7(1)(c)      SEX: F Race: 7(1)(c)
7(1)(b)
Cell: 7(1)(b)       Ext:
Inj:  Loss:
Inj descp:
Stmt Begin Date:              Stmt Begin Time:
Stmt End Date:                Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Witness: 7(1)(c)
DOB: 7(1)(c)      SEX: F Race: 7(1)(c)
7(1)(b)
Cell: 7(1)(b)       Ext:
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:              Stmt Begin Time:
Stmt End Date:                Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Witness: 7(1)(c)
DOB: 7(1)(c)      SEX: F Race: 7(1)(c)
7(1)(b)
Cell: 7(1)(b)       Ext:
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:              Stmt Begin Time:
Stmt End Date:                Stmt End Time:
```

```
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Police Officer: KENNETH KING Star: 175
District-Unit:
PARK RIDGE PD
200 SOUTH VINE, Park Ridge, IL 60068
***: ***  Ext: ***
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:               Stmt Begin Time:
Stmt End Date:                 Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Police Officer: Timothy McEwen Star: 174
District-Unit:
PARK RIDGE PD
200 SOUTH VINE, Park Ridge, IL 60068
***: ***  Ext: ***
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:               Stmt Begin Time:
Stmt End Date:                 Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Police Officer: Steve Stopka Star: 155
District-Unit:
PARK RIDGE PD
200 SOUTH VINE, Park Ridge, IL 60068
***: ***  Ext: ***
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:               Stmt Begin Time:
Stmt End Date:                 Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Police Officer: Mike Fitzgerald Star: 142
District-Unit:
PARK RIDGE PD
200 SOUTH VINE, Park Ridge, IL 60068
***: ***  Ext: ***
```

```
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:                 Stmt Begin Time:
Stmt End Date:                   Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Police Officer: Frank Lauria Star: 181
District-Unit:
PARK RIDGE PD
200 SOUTH VINE, Park Ridge, IL 60068
***: ***   Ext: ***
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:                 Stmt Begin Time:
Stmt End Date:                   Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***

Police Officer: Andrea Franco Star: 191
District-Unit:
PARK RIDGE PD
200 SOUTH VINE, Park Ridge, IL 60068
***: ***   Ext: ***
Inj: ***   Loss: ***
Inj descp: ***
Stmt Begin Date:                 Stmt Begin Time:
Stmt End Date:                   Stmt End Time:
Type: ***
Statement Wit: ***
Prosecutor Present: ***
Stmt: ***


Incident Begin Date: 02/02/2023  Incident Begin Time: 4:20 PM
Incident End Date: ***    Incident End Time: ***
Incident Address: Lutheran General Hospital, 1775 W Dempster,
Park Ridge, IL 60068
Incident Notes: On DTL, D was receiving medical treatment at
Lutheran General Hospital.  D was arguing with his mother about
his medicine when V-7(1)(c), the charge nurse in charge of D,
attempted to deescalate the situation.  D became angry and struck
V-7(1)(c) in the face two times with a closed fist, knocking her
to the ground.  D's sitter nurse, V-7(1)(c), saw D strike V-7(1)(c)
in the face and attempted to get D off of V-7(1)(c).  D then
struck V-7(1)(c) in the face four times with a closed fist.


V-7(1)(c), a CNA on the third floor of the hospital, heard screaming
coming from D's room and ran in to help.  D struck her in the
```

face two times on the left side of her face and nose, leaving
visible marks.  He then chased her from the room and kicked her
causing injury to her pinky finger.

V-7(1)(c) also heard the screaming from D's room and attempted to
help her fellow nurses.  During her attempt to assist, D struck
her twice in the eye with a closed fist.

W-7(1)(c) observed D hit V-7(1)(c) and V-7(1)(c), and further
corroborated the Vs' versions of events.  W-7(1)(c) observed D
strike all four nurses.  Part of the incident was captured on
surveillance video from the hospital.

All four Vs positively identified D in photo arrays.

Evidence Sequence #: ***     Type: ***
Descp: ***
Quantity: ***    Units: ***
Serial number:  Value: ***
How recovered: ***
EVID #: ***

Case Notes:
02/07/2023            Criminal
Partial video of incident as well as handwritten statements of
all four nurses in SharePoint under: FRU-States Attorney -->
Documents --> Approved Cases --> Allababidi, Ehab


Assigned State's Attorney: Erin McMannon

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT D

## MEDICATION ADMINISTRATION RECORDS

**16:17:00 CST | Haloperidol 3mg + Lorazepam 2mg IM | Grace Coakley, RN**

---

**EVIDENTIARY SUMMARY**

Hospital medication administration record documenting forced injection at precisely
16:17 CST on February 2, 2023: Haloperidol 3 mg IM + Lorazepam 2 mg IM administered
by Defendant Grace Coakley, RN. No patient consent documented.

**RELEVANCE TO RICO CLAIMS:**
  Establishes chemical restraint 180 seconds before alleged incident

**THIS EXHIBIT PROVES:**
  • Exact injection timestamp: 16:17 CST
  • Drugs administered: Haldol + Ativan
  • Administering nurse: Grace Coakley, RN
  • No consent documented

---

**■ KEY TIMESTAMPS:**
  • 02/02/2023 16:17:00 CST - Injection administered

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*



**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab

MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

| 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued) |
|---|

**ED Care Timeline (continued)**

| Time | Type | Detail | Provider |
|---|---|---|---|
| 19:40 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 1.25 | Batch, Clindoc Asap |
| 19:42 | **Psych Assessment** | **Consciousness**<br>  Level of Consciousness: Alert<br>  Orientation Level: Disoriented to situation<br>**Affects/Behaviors**<br>  Affect: Anxious; Impulsive; Upset/mad/angry<br>  Behavior: Poor eye contact<br>**General Appearance**<br>  Motor Activity: Restlessness<br>  Speech Pattern: Repetitive<br>  General Attitude: Cooperative; Defensive; Hostile; Suspicious<br>  Appearance/Hygiene: Within Defined Limits<br>**Thought Process**<br>  Attention (calc): Reduced ability to maintain attention to stimuli<br>**Safety**<br>  Precautions: Elopement<br>  Interventions : Intake notified; Informed patient on the role of the observer; Visitors asked to check in at nurses' station; Patient placed in hospital-provided clothing to ensure safety; Constant visual observation; Patient placed under Emergency Detention<br>  Visual Checks: Continuous 1:1<br>  Retired Sitter? (Chart once for each sitter shift): Yes<br>  Patient Checked for Contraband: Belongings Checked; Clothing Checked<br>**Sitter Assignment**<br>  Sitter Reason: Elopement risk | Cosentino, Angela A, RN |
| 19:42 | **Custom Formula Data** | **Mental Status**<br>  Attention (calc): 1<br>  Symptoms of Delirium Present (CAM-based alert): No | Cosentino, Angela A, RN |
| 19:44:27 | **ED Notes** | Patient initially uncooperative and unwilling to get changed into gown. Patient stated is here for refill of clonazepam, states "lost" his medication. Patient was informed of procedure, change into gown, obtain blood samples, etc. Stated "if anyone tried to put a needle in me I will fight every security guard and run out of here." Security was present throughout process. Patient cooperatively changed into gown, gave us all his belongings, given IM medication and obtained blood samples. Patient with sitter at bedside. Family concerned for their safety at home, physical aggressive with sibling, also reports patient paranoid. | Cosentino, Angela A, RN |
| 19:56 | **Care Handoff** | **Care Handoff**<br>  Report Given to: Given to next shift RN | Cosentino, Angela A, RN |
| 19:56:40 | **Remove Nurse** | Angela A Cosentino, RN removed as Registered Nurse | Cosentino, Angela A, RN |
| 19:57:06 | **Assign Nurse** | Desiree-Bianca S Garcia, RN assigned as Registered Nurse | Garcia, Desiree-Bianca S, RN |
| 20:00 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 1.25 | Batch, Clindoc Asap |
| 20:04:21 | **Assign Attending** | Beth M Hillman, DO assigned as Attending | Hillman, Beth M, DO |



ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

ED Care Timeline (continued)

| 20:04:21 | **Provider Contact With Patient Start** | | Hillman, Beth M, DO |
|---|---|---|---|
| 20:07:37 | **Lab Resulted** | (Final result) ALCOHOL | Lab, Background User |
| 20:07:37 | **Lab Resulted** | (Final result) BASIC METABOLIC PANEL | Lab, Background User |
| 20:07:37 | **Lab Resulted** | (Final result) MAGNESIUM | Lab, Background User |
| 20:07:37 | **Basic Metabolic Panel Resulted** | Abnormal Result Collected: **1/28/2023 19:33** Last updated: **1/28/2023 20:07** Status: **Final result** Sodium: **140 mmol/L** [Ref Range: 135 - 145] Potassium: **4.0 mmol/L** [Ref Range: 3.4 - 5.1] Chloride: **107 mmol/L** [Ref Range: 97 - 110] Carbon Dioxide: **28 mmol/L** [Ref Range: 21 - 32] Anion Gap: **9 mmol/L** [Ref Range: 7 - 19] Glucose: **101 mg/dL** ^ [Ref Range: 70 - 99] BUN: **17 mg/dL** [Ref Range: 6 - 20] Creatinine: **1.30 mg/dL** ^ [Ref Range: 0.67 - 1.17] Glomerular Filtration Rate: **78** [Ref Range: >=60] (eGFR results = or >60 mL/min/1.73m2 = Normal kidney function. Estimated GFR calculated using the CKD-EPI-R (2021) equation that does not include race in the creatinine calculation.) BUN/Cr: **13** [Ref Range: 7 - 25] Calcium: **9.1 mg/dL** [Ref Range: 8.4 - 10.2] | Lab, Background User |
| 20:07:37 | **Alcohol Resulted** | Collected: **1/28/2023 19:33** Last updated: **1/28/2023 20:07** Status: **Final result** Alcohol: **None Detected mg/dL** [Ref Range: None Detected] | Lab, Background User |
| 20:07:37 | **Magnesium Resulted** | Collected: **1/28/2023 19:33** Last updated: **1/28/2023 20:07** Status: **Final result** Magnesium: **2.0 mg/dL** [Ref Range: 1.7 - 2.4] | Lab, Background User |
| 20:20 | **Scoring** | **Sepsis Score** Sepsis Score: 1.25 | Batch, Clindoc Asap |
| 20:28:22 | **Lab Resulted** | (Preliminary result) CBC WITH AUTOMATED DIFFERENTIAL (PERFORMABLE ONLY) | Lab, Background User |
| 20:28:23 | **Lab Resulted** | (Final result) CBC WITH DIFFERENTIAL | Lab, Background User |
| 20:28:23 | **Lab Resulted** | (Final result) CBC WITH AUTOMATED DIFFERENTIAL (PERFORMABLE ONLY) | Lab, Background User |
| 20:28:23 | **CBC with Automated Differential Resulted** | Abnormal Result Collected: **1/28/2023 19:33** Last updated: **1/28/2023 20:28** Status: **Final result** | Lab, Background User |
| 20:28:23 | **CBC with Automated Differential (performable only) Resulted** | Abnormal Result Collected: **1/28/2023 19:33** Last updated: **1/28/2023 20:28** Status: **Final result** WBC: **9.7 K/mcL** [Ref Range: 4.2 - 11.0] RBC: **4.26 mil/mcL** ⌄ [Ref Range: 4.50 - 5.90] HGB: **12.6 g/dL** ⌄ [Ref Range: 13.0 - 17.0] HCT: **37.2 %** ⌄ [Ref Range: 39.0 - 51.0] MCV: **87.3 fl** [Ref Range: 78.0 - 100.0] MCH: **29.6 pg** [Ref Range: 26.0 - 34.0] MCHC: **33.9 g/dL** [Ref Range: 32.0 - 36.5] RDW-CV: **13.2 %** [Ref Range: 11.0 - 15.0] RDW-SD: **41.7 fL** [Ref Range: 39.0 - 50.0] PLT: **254 K/mcL** [Ref Range: 140 - 450] NRBC: **0 /100 WBC** [Ref Range: <=0] Neutrophil, Percent: **76 %** Lymphocytes, Percent: **14 %** Mono, Percent: **7 %** Eosinophils, Percent: **1 %** Basophils, Percent: **1 %** Immature Granulocytes: **1 %** Absolute Neutrophils: **7.6 K/mcL** [Ref Range: 1.8 - 7.7] Absolute Lymphocytes: **1.3 K/mcL** [Ref Range: 1.0 - 4.8] Absolute Monocytes: **0.7 K/mcL** [Ref Range: 0.3 - 0.9] Absolute Eosinophils : **0.1 K/mcL** [Ref Range: 0.0 - 0.5] Absolute Basophils: **0.1 K/mcL** [Ref Range: 0.0 - 0.3] Absolute Immature Granulocytes: **0.1 K/mcL** [Ref Range: 0.0 - 0.2] | Lab, Background User |
| 20:32 | **Registration Start** | **Registration Start** Registration Start: Assign Me | Vuckovic, Zlatka |
| 20:32:17 | **Registration Began** | | Vuckovic, Zlatka |

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

## 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

### ED Care Timeline (continued)

| Time | Event | Details | Provider |
|---|---|---|---|
| 20:40 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 0.78 | Batch, Clindoc Asap |
| 20:43:59 | **Orders Placed** | Lab - Acetaminophen Level; Salicylate Level<br>Consult - Inpatient consult to Behavioral Health Intake | Gusswein, Amanda S, CNP |
| 20:44 | **Lab Ordered** | SALICYLATE LEVEL, ACETAMINOPHEN LEVEL | Gusswein, Amanda S, CNP |
| 20:50:40 | **Orders Acknowledged** | New - Inpatient consult to Behavioral Health Intake; Acetaminophen Level; Salicylate Level | Garcia, Desiree-Bianca S, RN |
| 20:50:48 | **Print Label for Acetaminophen Level Completed** | *Acetaminophen Level* - Type: **Blood** ; Source: **Blood, Venous** | Garcia, Desiree-Bianca S, RN |
| 20:50:48 | **Print Label for Salicylate Level Completed** | *Salicylate Level* - Type: **Blood** ; Source: **Blood, Venous** | Garcia, Desiree-Bianca S, RN |
| 20:56 | **Collect Acetaminophen Level Completed** | *Acetaminophen Level* - Type: **Blood** ; Source: **Blood, Venous** | Garcia, Desiree-Bianca S, RN |
| 20:56 | **Collect Salicylate Level Completed** | *Salicylate Level* - Type: **Blood** ; Source: **Blood, Venous** | Garcia, Desiree-Bianca S, RN |
| 20:56 | **Send Acetaminophen Level to Phlebotomy Completed** | *Acetaminophen Level* - Type: **Blood** ; Source: **Blood, Venous** | Garcia, Desiree-Bianca S, RN |
| 20:56 | **Send Salicylate Level to Phlebotomy Completed** | *Salicylate Level* - Type: **Blood** ; Source: **Blood, Venous** | Garcia, Desiree-Bianca S, RN |
| 20:56:20 | **Specimens Collected** | Acetaminophen Level - ID: **23LGH-028CH01028** Type: **Blood** Salicylate Level - ID: **23LGH-028CH01029** Type: **Blood** | Garcia, Desiree-Bianca S, RN |
| 20:58:45 | **Registration Completed** | | Vuckovic, Zlatka |
| 21:00 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 0.78 | Batch, Clindoc Asap |
| 21:03 | **ED Fall Precautions** | **ED Fall Risk Interventions**<br>Environmental Safety Measures Maintained: Done | Garcia, Desiree-Bianca S, RN |
| 21:03 | **Sepsis Screening Nursing** | **Sepsis Screening**<br>Is the history and exam questionable for an infection? : No<br>Questionable infection and SIRS met?: No<br>**Retired Sepsis Screening (RN or Provider to Complete if Sepsis is Suspected)**<br>Is the history and exam questionable for an infection? : No | Garcia, Desiree-Bianca S, RN |
| 21:03:15 | **Orders Placed** | Nursing - Sitter at bedside | Hillman, Beth M, DO |
| 21:04:08 | **Orders Acknowledged** | New - Sitter at bedside | Garcia, Desiree-Bianca S, RN |
| 21:06 | **ED Vital Signs** | **Vitals Timer**<br>Restart Vitals Timer: Yes | Falconijara, Mateo |

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**ED Care Timeline (continued)**

| Time | Type | Details | Provider |
|---|---|---|---|
| 21:06 | **ED Quick Vitals** | **Vitals**<br>Temp: 97.5 °F (36.4 °C)<br>Heart Rate: 61<br>Resp: 16<br>BP: 107/55<br>SpO2: 100 % | Falconijara, Mateo |
| 21:06 | **Custom Formula Data** | **Sepsis/Severe Sepsis/Septic Shock Vitals**<br>Systolic BP Drop (calculated): -8<br>**Other flowsheet entries**<br>Calculated MAP (mmHg): 72 mm Hg<br>Shock Index (SI): 0.6 | Falconijara, Mateo |
| 21:15:11 | **Lab Resulted** | (Final result) COVID/FLU/RSV PANEL | Lab, Background User |
| 21:15:11 | **COVID/Flu/RSV panel Resulted** | **Abnormal Result** Collected: **1/28/2023 19:33** Last updated: **1/28/2023 21:15** Status: **Final result** Rapid SARS-COV-2 by PCR: **Detected** ! [Ref Range: Not Detected / Detected / Presumptive Positive / Inhibitors present] Influenza A by PCR: **Not Detected** [Ref Range: Not Detected] Influenza B by PCR: **Not Detected** [Ref Range: Not Detected] RSV BY PCR: **Not Detected** [Ref Range: Not Detected] Procedural Comment: (SARS-COV-2 nucleic acid has been detected indicating the presence of COVID-19.<br><br>This test was performed using the Cepheid Xpert Xpress SARS-CoV-2/Flu/RSV RT-PCR test that has been given Emergency Use Authorization (EUA) by the United States Food and Drug Administration (FDA). These tests are considered definitive and do not need to be confirmed by another method.<br><br>Some medical conditions may benefit from monoclonal antibody therapy. Talk to your provider about monoclonal antibody therapy and if it is right for you. This treatment is approved by the FDA for emergency use and may help your immune system respond to the virus more effectively.<br>) SARS-CoV-2 N2 Ct Value: **18.7** | Lab, Background User |
| 21:20 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 0.78 | Batch, Clindoc Asap |
| 21:24:48 | **ED Provider Notes** | Note originally filed at this time | Hillman, Beth M, DO |
| 21:25:15 | **Physician LOS Filed** | LOS Code 99284 filed | Hillman, Beth M, DO |
| 21:26:08 | **ED Provider Notes Addendum** | Addendum filed at this time | Hillman, Beth M, DO |
| 21:40 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 0.78 | Batch, Clindoc Asap |
| 21:43:47 | **Lab Resulted** | (Final result) SALICYLATE LEVEL | Lab, Background User |
| 21:43:47 | **Salicylate Level Resulted** | Collected: **1/28/2023 20:56** Last updated: **1/28/2023 21:43** Status: **Final result** Salicylate: **<2.8 mg/dL** [Ref Range: <=30.0] | Lab, Background User |
| 21:44:43 | **Lab Resulted** | (Final result) ACETAMINOPHEN LEVEL | Lab, Background User |
| 21:44:43 | **Acetaminophen Level Resulted** | **Abnormal Result** Collected: **1/28/2023 20:56** Last updated: **1/28/2023 21:44** Status: **Final result** Acetaminophen: <2 mcg/mL ⌄ [Ref Range: 10 - 30] | Lab, Background User |
| 22:00 | **Scoring** | **Sepsis Score**<br>Sepsis Score: 0.78 | Batch, Clindoc Asap |
| 22:03:47 | **ED Provider Notes** | Note filed at this time | Gusswein, Amanda S, CNP |

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT E

### RESTRAINT DOCUMENTATION

**18:05 CST Initiation | 115 Hours Duration | Missing Q-15 Checks**

---

**EVIDENTIARY SUMMARY**

Official restraint flowsheets showing initiation at 18:05 CST on February 2, 2023.
Documents gaps in required q-15 minute monitoring. Restraints continued until
February 7, 2023 13:05 CST—115 continuous hours without court authorization.

**RELEVANCE TO RICO CLAIMS:**
  Proves unlawful detention duration and monitoring failures

**THIS EXHIBIT PROVES:**
  • Restraint start: 18:05 CST 02/02/2023
  • 115 hours continuous restraint
  • Multiple q-15 monitoring gaps
  • No court order ever obtained

---

■ **KEY TIMESTAMPS:**
  • 02/02/2023 18:05 - Restraints initiated
  • 02/07/2023 13:05 - Restraints terminated

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| | | |
|---|---|---|
| Performed 02/03/23 2120<br>Documented: 02/03/23 2121 | See Alternative — | — |

Performed by: Smyla, Sebastian P, RN

### LORazepam (ATIVAN) tablet 1 mg [15701323291]

Ordering Provider: Murphy, Laura A, MD
Ordered On: 02/05/23 0400
Ordered Dose (Remaining/Total): 1 mg (—/—)
Frequency: EVERY 4 HOURS
Admin Instructions: Offer PO before IM, hold for sedation

Status: Discontinued (Past End Date/Time)
Starts/Ends: 02/05/23 0530 - 02/05/23 0835
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/05/23 0539<br>Documented: 02/05/23 0540 | Given | 1 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN<br>Scanned Package: 0904-6008-60 |

### LORazepam (ATIVAN) tablet 1 mg [15701323298]

Ordering Provider: Murphy, Laura A, MD

Ordered On: 02/05/23 0835
Ordered Dose (Remaining/Total): 1 mg (—/—)
Frequency: EVERY 3 HOURS
Admin Instructions: Offer PO before IM, hold for sedation

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/05/23 0845 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action / Reason | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/07/23 0817<br>Documented: 02/07/23 0817 | Given | 1 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 60687-638-11 |
| Performed 02/07/23 0446<br>Documented: 02/07/23 0447 | Given | 1 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/07/23 0431<br>Documented: 02/07/23 0431 | Not Given<br>Other: Comment | 1 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Comments: pt sleeping |
| Performed 02/06/23 2336<br>Documented: 02/06/23 2338 | Given | 1 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/06/23 2004<br>Documented: 02/06/23 2005 | Given | 1 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/06/23 1703<br>Documented: 02/06/23 1703 | Given | 1 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 0904-6008-60 |

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 02/06/23 1521<br>Documented: 02/06/23 1521 | Given | 1 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/06/23 1207<br>Documented: 02/06/23 1207 | Given | 1 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 60687-638-11 |
| Performed 02/06/23 0836<br>Documented: 02/06/23 0836 | Given | 1 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/06/23 0517<br>Documented: 02/06/23 0517 | Given | 1 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/06/23 0228<br>Documented: 02/06/23 0229 | Given | 1 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/05/23 2332<br>Documented: 02/05/23 2333 | Given | 1 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/05/23 2016<br>Documented: 02/05/23 2017 | Given | 1 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 0904-6008-60 |
| Performed 02/05/23 1705<br>Documented: 02/05/23 1706 | Given | 1 mg | Oral | Performed by: Allen, Aimee, RN |
| Performed 02/05/23 1423<br>Documented: 02/05/23 1423 | Given | 1 mg | Oral | Performed by: Allen, Aimee, RN |
| Performed 02/05/23 1127<br>Documented: 02/05/23 1127 | Given | 1 mg | Oral | Performed by: Allen, Aimee, RN |
| Performed 02/05/23 0833<br>Documented: 02/05/23 0934 | Given | 1 mg | Oral | Performed by: Allen, Aimee, RN |

**LORazepam (ATIVAN) tablet 2 mg [15696822347]**

| | |
|---|---|
| Ordering Provider: Ruzich, Gregory P, MD | Status: Discontinued (Past End Date/Time) |
| Ordered On: 01/31/23 1714 | Starts/Ends: 01/31/23 1714 - 02/02/23 1712 |
| Ordered Dose (Remaining/Total): 2 mg (—/—) | Route: Oral |
| Frequency: EVERY 4 HOURS PRN | Ordered Rate/Order Duration: / |

Advocate Health Care

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/02/23 1617<br>Documented: 02/02/23 1617 | Given | 2 mg | Oral | Performed by: Hostalek, Emilia M, RN<br>Scanned Package: 0904-6009-61 |
| Performed 02/02/23 1313<br>Documented: 02/02/23 1313 | Given | 2 mg | Oral | Performed by: Jaramillo, Mariana J, RN<br>Scanned Package: 0904-6009-61 |
| Performed 02/02/23 0752<br>Documented: 02/02/23 0754 | Given | 2 mg | Oral | Performed by: Jaramillo, Mariana J, RN<br>Scanned Package: 0904-6009-61 |
| Performed 02/01/23 2124<br>Documented: 02/01/23 2125 | Given | 2 mg | Oral | Performed by: Domanchuk, Tetyana, RN<br>Scanned Package: 0093-3427-05 |
| Performed 02/01/23 1342<br>Documented: 02/01/23 1343 | Given | 2 mg | Oral | Performed by: Demeros, Helen, RN<br>Scanned Package: 0093-3427-05 |
| Performed 02/01/23 0852<br>Documented: 02/01/23 0852 | Given | 2 mg | Oral | Performed by: Demeros, Helen, RN<br>Scanned Package: 0093-3427-05 |
| Performed 02/01/23 0645<br>Documented: 02/01/23 0648 | Given | 2 mg | Oral | Performed by: Santelices, Francis Angelo D, RN<br>Scanned Package: 0093-3427-05 |
| Performed 01/31/23 2011<br>Documented: 01/31/23 2014 | Given | 2 mg | Oral | Performed by: Santelices, Francis Angelo D, RN<br>Scanned Package: 0093-3427-05 |
| Performed 01/31/23 1731<br>Documented: 01/31/23 1732 | Given | 2 mg | Oral | Performed by: Chavero, Brenda E, RN<br>Scanned Package: 0093-3427-05 |

**LORazepam (ATIVAN) tablet 2 mg [15700035062]**

Ordering Provider: Murphy, Laura A, MD
Ordered On: 02/03/23 1908
Ordered Dose (Remaining/Total): 2 mg (—/—)
Frequency: EVERY 4 HOURS
Admin Instructions: Offer PO before IM, hold for sedation

Status: Discontinued (Past End Date/Time)
Starts/Ends: 02/03/23 2130 - 02/05/23 0400
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/05/23 0103<br>Documented: 02/05/23 0103 | Given | 2 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN<br>Scanned Package: 0093-3427-05 |

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 02/04/23 2144 Documented: 02/04/23 2146 | Given | 2 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN Scanned Package: 0093-3427-05 |
| Performed 02/04/23 1750 Documented: 02/04/23 1751 | Given | 2 mg | Oral | Performed by: Halloran, Joseph W, RN Scanned Package: 0093-3427-05 |
| Performed 02/04/23 1355 Documented: 02/04/23 1357 | Given | 2 mg | Oral | Performed by: Halloran, Joseph W, RN Scanned Package: 0093-3427-05 |
| Performed 02/04/23 0857 Documented: 02/04/23 0904 | Given | 2 mg | Oral | Performed by: Halloran, Joseph W, RN Scanned Package: 0093-3427-05 |
| Performed 02/04/23 0555 Documented: 02/04/23 0556 | Given | 2 mg | Oral | Performed by: Smyla, Sebastian P, RN Scanned Package: 0904-6009-61 |
| Performed 02/04/23 0201 Documented: 02/04/23 0202 | Given | 2 mg | Oral | Performed by: Smyla, Sebastian P, RN Scanned Package: 0904-6009-61 |
| Performed 02/03/23 2120 Documented: 02/03/23 2121 | Given | 2 mg | Oral | Performed by: Smyla, Sebastian P, RN Scanned Package: 0904-6009-61 |

**melatonin tablet 9 mg [15696822353]**

Ordering Provider: Ruzich, Gregory P, MD

Ordered On: 02/01/23 0109
Ordered Dose (Remaining/Total): 9 mg (—/—)
Frequency: NIGHTLY PRN

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/01/23 0109 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/06/23 2104 Documented: 02/06/23 2105 | Given | 9 mg | Oral | Performed by: Kourelis V, Alyssa, RN Scanned Package: 20555-03601, 20555-03601, 20555-03601 |
| Performed 02/05/23 2017 Documented: 02/05/23 2017 | Given | 9 mg | Oral | Performed by: Smyla, Sebastian P, RN Scanned Package: 20555-03601, 20555-03601, 20555-03601 |
| Performed 02/04/23 2147 Documented: 02/04/23 2147 | Given | 9 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN Scanned Package: 20555-03601, 20555-03601, 20555-03601 |

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 02/02/23 2116 Documented: 02/02/23 2116 | Given | 9 mg | Oral | Performed by: Jiva, Shirin Z, RN Scanned Package: 20555-03601, 20555-03601, 20555-03601 |
| Performed 02/01/23 2135 Documented: 02/01/23 2136 | Given | 9 mg | Oral | Performed by: Domanchuk, Tetyana, RN Scanned Package: 20555-03601, 20555-03601, 20555-03601 |
| Performed 02/01/23 0130 Documented: 02/01/23 0133 | Given | 9 mg | Oral | Performed by: Santelices, Francis Angelo D, RN Scanned Package: 20555-03601, 20555-03601, 20555-03601 |

**pantoprazole (PROTONIX) EC tablet 40 mg [15695928388]**

Ordering Provider: Yousif, Arkad, DO

Ordered On: 01/29/23 0756
Ordered Dose (Remaining/Total): 40 mg (—/—)
Frequency: DAILY BEFORE BREAKFAST
Admin Instructions: Do not crush or chew. Ideally given at least 1 hour before or 2 hours after meals.

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 01/29/23 0830 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action / Reason | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/07/23 0639 Documented: 02/07/23 0640 | Given | 40 mg | Oral | Performed by: Kourelis V, Alyssa, RN Scanned Package: 35573-428-51 |
| Performed 02/06/23 0517 Documented: 02/06/23 0517 | Given | 40 mg | Oral | Performed by: Smyla, Sebastian P, RN Scanned Package: 51079-051-01 |
| Performed 02/05/23 0539 Documented: 02/05/23 0540 | Given | 40 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN Scanned Package: 51079-051-01 |
| Performed 02/04/23 0555 Documented: 02/04/23 0556 | Given | 40 mg | Oral | Performed by: Smyla, Sebastian P, RN Scanned Package: 51079-051-01 |
| Performed 02/03/23 0604 Documented: 02/03/23 0605 | Not Given Patient/family refused | 40 mg | Oral | Performed by: Sosa-Sandoval, Malleli, RN Scanned Package: 51079-051-01 |
| Performed 02/02/23 0624 Documented: 02/02/23 0632 | Given | 40 mg | Oral | Performed by: Domanchuk, Tetyana, RN Scanned Package: 35573-428-51 |
| Performed 02/01/23 0636 Documented: 02/01/23 0636 | Given | 40 mg | Oral | Performed by: Santelices, Francis Angelo D, RN Scanned Package: 35573-428-51 |

Printed on 10/28/25 8:21 AM                                                                                    Page 235

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

| 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued) |
| --- |

**Medication Administrations (continued)**

| | | | | |
| --- | --- | --- | --- | --- |
| Performed 01/31/23 0625<br>Documented: 01/31/23 0630 | Given | 40 mg | Oral | Performed by: Santelices, Francis Angelo D, RN<br>Scanned Package: 35573-428-51 |
| Performed 01/30/23 0532<br>Documented: 01/30/23 0532 | Given | 40 mg | Oral | Performed by: Domanchuk, Tetyana, RN<br>Scanned Package: 35573-428-51 |
| Performed 01/29/23 0942<br>Documented: 01/29/23 0943 | Given | 40 mg | Oral | Performed by: Jaramillo, Mariana J, RN<br>Scanned Package: 35573-428-51 |

**polyethylene glycol (MIRALAX) packet 17 g [15696822342]**

Ordering Provider: Ruzich, Gregory P, MD

Ordered On: 01/31/23 1711
Ordered Dose (Remaining/Total): 17 g (—/—)
Frequency: NIGHTLY PRN
Admin Instructions: Dose = 17 grams/packet. Dissolve contents of each packet in 8 oz. of water.

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 01/31/23 1711 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
| --- | --- | --- | --- | --- |
| Performed 01/31/23 1731<br>Documented: 01/31/23 1732 | Given | 17 g | Oral | Performed by: Chavero, Brenda E, RN<br>Scanned Package: 62559-157-30 |

**QUEtiapine (SEROquel) tablet 100 mg [15696822383]**

Ordering Provider: Murphy, Laura A, MD

Ordered On: 02/02/23 1644
Ordered Dose (Remaining/Total): 100 mg (—/—)
Frequency: 2 TIMES DAILY
Admin Instructions: Hold for somnolence

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/02/23 1830 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
| --- | --- | --- | --- | --- |
| Performed 02/07/23 0817<br>Documented: 02/07/23 0817 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/06/23 1701<br>Documented: 02/06/23 1701 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/06/23 0836<br>Documented: 02/06/23 0836 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/05/23 1608<br>Documented: 02/05/23 1608 | Given | 100 mg | Oral | Performed by: Allen, Aimee, RN |



**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

## 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 02/05/23 0833<br>Documented:<br>02/05/23 0934 | Given | 100 mg | Oral | Performed by: Allen, Aimee, RN |
| Performed 02/04/23 1750<br>Documented:<br>02/04/23 1751 | Given | 100 mg | Oral | Performed by: Halloran, Joseph W, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/04/23 0857<br>Documented:<br>02/04/23 0904 | Given | 100 mg | Oral | Performed by: Halloran, Joseph W, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/03/23 1635<br>Documented:<br>02/03/23 1636 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/03/23 0954<br>Documented:<br>02/03/23 0954 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/02/23 1831<br>Documented:<br>02/02/23 1831 | Given | 100 mg | Oral | Performed by: Jiva, Shirin Z, RN<br>Scanned Package: 16714-454-01 |

**QUEtiapine (SEROquel) tablet 300 mg [15695928414]**

Ordering Provider: Murphy, Laura A, MD
Ordered On: 01/30/23 1249
Ordered Dose (Remaining/Total): 300 mg (—/—)
Frequency: NIGHTLY

Status: Discontinued (Past End Date/Time)
Starts/Ends: 01/30/23 2100 - 02/02/23 1233
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/01/23 2124<br>Documented:<br>02/01/23 2125 | Given | 300 mg | Oral | Performed by: Domanchuk, Tetyana, RN<br>Scanned Package: 16714-454-01, 16714-454-01, 16714-454-01 |
| Performed 01/31/23 2004<br>Documented:<br>01/31/23 2006 | Given | 300 mg | Oral | Performed by: Santelices, Francis Angelo D, RN<br>Scanned Package: 16714-454-01, 16714-454-01, 16714-454-01 |
| Performed 01/30/23 2219<br>Documented:<br>01/30/23 2222 | Given | 300 mg | Oral | Performed by: Labuda, Buwen, RN<br>Scanned Package: 16714-454-01, 16714-454-01, 16714-454-01 |

**QUEtiapine (SEROquel) tablet 400 mg [15696822377]**

Ordering Provider: Murphy, Laura A, MD
Ordered On: 02/02/23 1233
Ordered Dose (Remaining/Total): 400 mg (—/—)

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/02/23 2100 - 02/07/23 1326
Route: Oral



Advocate Health Care

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

Frequency: NIGHTLY                                     Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/06/23 2050<br>Documented: 02/06/23 2052 | Given | 400 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 68180-448-01, 68180-448-01 |
| Performed 02/05/23 2016<br>Documented: 02/05/23 2017 | Given | 400 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 68180-448-01, 68180-448-01 |
| Performed 02/04/23 2144<br>Documented: 02/04/23 2146 | Given | 400 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN<br>Scanned Package: 68180-448-01, 68180-448-01 |
| Performed 02/03/23 2120<br>Documented: 02/03/23 2121 | Given | 400 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 16714-455-01, 16714-455-01 |
| Performed 02/02/23 2116<br>Documented: 02/02/23 2116 | Given | 400 mg | Oral | Performed by: Jiva, Shirin Z, RN<br>Scanned Package: 16714-455-01, 16714-455-01 |

**senna (SENOKOT) 17.2 mg [15701323299]**

Ordering Provider: Edwards, Ryan T, DO

Ordered On: 02/05/23 1000
Ordered Dose (Remaining/Total): 2 tablet (—/—)
Frequency: NIGHTLY

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/05/23 2100 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/06/23 2050<br>Documented: 02/06/23 2052 | Given | 17.2 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 57896-454-01, 57896-454-01 |
| Performed 02/05/23 2017<br>Documented: 02/05/23 2017 | Given | 17.2 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 57896-454-01, 70677-0058-1 |

**sodium chloride (PF) 0.9 % injection 2 mL [15695818058]**

Ordering Provider: Salamatipour, Ashkan, DO

Ordered On: 01/29/23 0359
Ordered Dose (Remaining/Total): 2 mL (—/—)
Frequency: 2 times per day

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 01/29/23 0900 - 02/07/23 1326
Route: Intracatheter
Ordered Rate/Order Duration: — / —

| Timestamps | Action / Reason | Dose | Route | Other Information |
|---|---|---|---|---|

**UNITED STATES DISTRICT COURT**

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT F

## TRANSFER ORDER

**18:49 CST | Dr. Patrick Piper, MD | ED → 12th Floor MMWU Room 1258**

---

### EVIDENTIARY SUMMARY

Physician order from Dr. Patrick Piper documenting 18:49 CST transfer order
moving Plaintiff from Emergency Department to 12th Floor MMWU Room 1258.
44-minute gap (18:05-18:49) with no video surveillance coverage.

**RELEVANCE TO RICO CLAIMS:**
  Documents 44-minute custody gap without surveillance

**THIS EXHIBIT PROVES:**
  • Transfer order time: 18:49 CST
  • Ordering physician: Dr. Piper
  • Destination: 12th Floor MMWU Room 1258
  • 44-minute gap in chain of custody

---

■ **KEY TIMESTAMPS:**
  • 02/02/2023 18:49 CST - Transfer order signed

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

Advocate Health Care

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

| | | | | | |
|---|---|---|---|---|---|
| (HYDRODIURIL) tablet 12.5 mg | | | | DO | 02/06/23 0836 |
| • pantoprazole (PROTONIX) EC tablet 40 mg | 40 mg | Oral | QAM AC | Arkad Yousif, DO | 40 mg at 02/06/23 0517 |

PRN Medications

**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency |
|---|---|---|---|
| • haloperidol (HALDOL) tablet 5 mg | 5 mg | Oral | Q6H PRN |
| • diphenhydrAMINE (BENADRYL) capsule 50 mg | 50 mg | Oral | Q6H PRN |
| • diphenhydrAMINE (BENADRYL) injection 50 mg | 50 mg | Intramuscular | Q6H PRN |
| • cyclobenzaprine (FLEXERIL) tablet 10 mg | 10 mg | Oral | TID PRN |
| • ziprasidone (GEODON) injection 20 mg | 20 mg | Intramuscular | Q8H PRN |
| • melatonin tablet 9 mg | 9 mg | Oral | Nightly PRN |
| • polyethylene glycol (MIRALAX) packet 17 g | 17 g | Oral | Nightly PRN |
| • docusate sodium-sennosides (SENOKOT S) 50-8.6 MG 1 tablet | 1 tablet | Oral | Nightly PRN |
| • acetaminophen (TYLENOL) tablet 975 mg | 975 mg | Oral | Q6H PRN |
| • sodium chloride 0.9 % flush bag 25 mL | 25 mL | Intravenous | PRN |

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

Clinical Notes (group 5 of 5) (continued)

Assessment and Plan:
1. Bipolar I disorder, current episode manic, severe.

-Remain on 1:1 for safety risk and nursing to monitor need for restraints (locked verses soft violent)
-Continue Seroquel 400 mg at night
-Continue Seroquel 100 mg q am, 100 mg in afternoon
- Continue Ativan 1 mg PO or IM q 3 hours, hold for sedation

PRNs of
Geodon 20 mg IM q 8 hours
Haldol 5 mg oral PO q 6 hours
Benadryl 50 mg oral q 6 hours to be given with haldol
Benadryl 50 mg IM q 6 hours for EPS or cramping
Melatonin 9 mg nightly

2. Stimulant use disorder. Patient remains without insight about this condition.
-No stimulants to be given while here

3. Anxyolytic use disorder.  As the patient's trajectory is unclear, we have stepped down his Ativan, to avoid a withdrawal scenario if there is a transfer to a place where he cannot get scheduled medications regularly. He will be discharged on Ativan 1 mg q 6 hours if he is going to a forensic setting.

The patient is NOT to be released to the community. He has two trajectories, first to processing for his arrest and with subsequent care under the forensic system, or to a psychiatric unit that can accomodate him in terms of his level of violence.

Electronically signed by Murphy, Laura A, MD at 2/6/2023 11:44 AM

Hyla, Jessica M, MD at 2/7/2023 0622

**Family Medicine Daily Progress Note**

Patient Name: Ehab Allababidi
Date: 02/07/23

**SUBJECTIVE:**

**Overnight Events:** Patient has remained in four-point restraints, four-point restraints renewed due to concerns of ongoing aggressive behaviors.  As needed antipsychotics (Geodon) were used once during the day 2/6 however no as needed antipsychotics were needed overnight.

Patient endorsing back discomfort, managing with tylenol and flexeril. Requesting norco for pain relief, but resident reiterated that we will not be using narcotics. Can try ibuprofen.

Last BM 2/5, no stool x24 hours. Patient said he will request prn miralax from RN

Advocate Health Care

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

Clinical Notes (group 5 of 5) (continued)

## OBJECTIVE:

### Last Recorded Vitals:

Vitals with min/max:

| Vital | Last Value | 24 Hour Range |
|-------|-----------|---------------|
| Temperature | 97.7 °F (36.5 °C) (02/07/23 0438) | Temp  Min: 97.3 °F (36.3 °C)  Max: 97.7 °F (36.5 °C) |
| Pulse | 60 (02/07/23 0438) | Pulse  Min: 60  Max: 98 |
| Respiratory | 16 (02/07/23 0438) | Resp  Min: 16  Max: 16 |
| Non-Invasive Blood Pressure | 116/70 (02/07/23 0438) | BP  Min: 116/70  Max: 141/84 |
| Pulse Oximetry | 97 % (02/07/23 0438) | SpO2  Min: 96 %  Max: 100 % |
| Arterial Blood Pressure | | No data recorded |

### Intake/Output:

Intake/Output Summary (Last 24 hours) at 2/7/2023 0630
Last data filed at 2/7/2023 0410

|  | Gross per 24 hour |
|--|-------------------|
| Intake | — |
| Output | 3725 ml |
| **Net** | **-3725 ml** |

### Physical Exam
### Physical Exam
Vitals reviewed.
<u>Constitutional</u>:
   General: He is not in acute distress.
   Appearance: He is not ill-appearing.
   Comments: **Sitting up in bed watching tv, calm and answering questions appropriately**
<u>HENT</u>:
   Head: Normocephalic and atraumatic.
   Neck: Normal range of motion.
<u>Eyes</u>:
   Pupils: Pupils are equal, round, and reactive to light.
<u>Cardiovascular</u>:
   Rate and Rhythm: Normal rate and regular rhythm.
<u>Pulmonary</u>:
   Effort: Pulmonary effort is normal. No respiratory distress.
   Breath sounds: No stridor. No wheezing.
<u>Abdominal</u>:
   General: There is no distension or tenderness.
<u>Musculoskeletal</u>:
   General: Normal range of motion.

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT G

## VITAL SIGNS RECORD

**18:39 CST Hypertensive Spike: 151/73 mmHg | MEWS 0-1 Throughout**

---

**EVIDENTIARY SUMMARY**

Vital signs flowsheets documenting 18:39 CST hypertensive spike to 151/73 mmHg
(stress response to unlawful restraint) and 21:16 CST Enoxaparin administration.
MEWS scores remained stable at 0-1 throughout—no medical emergency justifying restraint.

**RELEVANCE TO RICO CLAIMS:**
  Proves no medical justification for restraint; documents physical stress response

**THIS EXHIBIT PROVES:**
  • Hypertensive spike at 18:39 CST
  • Stable MEWS scores (0-1)
  • No medical emergency
  • Stress response to unlawful restraint

---

■ **KEY TIMESTAMPS:**
  • 02/02/2023 18:39 - BP spike 151/73          • 02/02/2023 21:16 - Enoxaparin given

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

Interval Events: Yesterday afternoon, the patient became agitated during a visit from his mother. He injured 4 staff who required ER intervention. He was placed in restraints, given PRN medication. This writer saw him after the incident, he was still awake, despite receiving PRN medication of Haldol IM. He was switched to Geodon IM and Seroquel was started during the day. Per nursing, he slept little last night, despite the increase of Seroquel, at one point he became agitated, yelling out. Received Geodon 20 mg IM once.

Chief Complaint: Im sorry about yesterday.

Subjective:
Today, the patient is still in restraints. He is fully oriented and able to speak to this writer. He is contradictory and lacks insight.  He immediately apologizes for what occurred yesterday and states he does not remember all the details. He does remember hitting people. Again, he states he is a peaceful person. He denies thoughts of harming himself or anyone else.  He denies any hallucinations.  He insists that he could be released and that there is no reason why he needs to stay here. He states his mother has no concerns over his violence or his safety. Again he defaults to the medications that he wishes, including Adderall.

In terms of his restraints, he reports they are tight (public safety comes up to adjust). He reports some cramping in his back that is new. Patient has benadryl for cramping.

**Vitals:**

| | 02/03/23 0443 |
|---|---|
| BP: | 122/67 |
| Pulse: | (!) 58 |
| Resp: | |
| Temp: | |

**Mental Status Exam**
Appearance-in hospital gown, in bed in restraints.
Behavior/Attitude-Awake and alert, able to turn take, does not cut this writer off.
Motor-No psychomotor agitation, no tics or tremors.
Speech- Normal in rhythm rate and prosody
Mood- "Im fine"
Affect- Frustrated, mood congruent
Thought Process-More linear today, less perseverative
Thought Content- Minimizing, focused on medication.
Perceptions- No evidence of response to internal stimuli. Denies AVH.
Insight-Poor
Judgment- Poor
General Cognition-Grossly oriented

Scheduled Medications:
**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • QUEtiapine (SEROquel) | 400 mg | Oral | Nightly | Laura A Murphy, MD | | 400 mg at |

Advocate Health Care

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

| | | | | | |
|---|---|---|---|---|---|
| tablet 400 mg | | | | | 02/02/23 2116 |
| • QUEtiapine (SEROquel) tablet 100 mg | 100 mg | Oral | BID | Laura A Murphy, MD | 100 mg at 02/03/23 0954 |
| • clonazePAM (KlonoPIN) tablet 2 mg | 2 mg | Oral | 2 times per day | Laura A Murphy, MD | 2 mg at 02/03/23 0953 |
| • lidocaine (LIDOCARE) 4 % patch 1 patch | 1 patch | Transdermal | Once | Thomas Schmittdiel, MD | |
| • sodium chloride (PF) 0.9 % injection 2 mL | 2 mL | Intracatheter | 2 times per day | Ashkan Salamatipour, DO | |
| • enoxaparin (LOVENOX) injection 40 mg | 40 mg | Subcutaneous | Nightly | Ashkan Salamatipour, DO | 40 mg at 02/02/23 2116 |
| • busPIRone (BUSPAR) tablet 7.5 mg | 7.5 mg | Oral | Daily | Ashkan Salamatipour, DO | 7.5 mg at 02/03/23 0953 |
| • hydroCHLOROthiazide (HYDRODIURIL) tablet 12.5 mg | 12.5 mg | Oral | Daily | Ashkan Salamatipour, DO | 12.5 mg at 02/03/23 0954 |
| • pantoprazole (PROTONIX) EC tablet 40 mg | 40 mg | Oral | QAM AC | Arkad Yousif, DO | 40 mg at 02/02/23 0624 |

## PRN Medications

**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency |
|---|---|---|---|
| • diphenhydrAMINE (BENADRYL) | 50 mg | Intramuscular | Q4H PRN |

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

| | | | |
|---|---|---|---|
| injection 50 mg | | | |
| • cyclobenzaprine (FLEXERIL) tablet 10 mg | 10 mg | Oral | TID PRN |
| • ziprasidone (GEODON) injection 20 mg | 20 mg | Intramuscular | Q8H PRN |
| • melatonin tablet 9 mg | 9 mg | Oral | Nightly PRN |
| • polyethylene glycol (MIRALAX) packet 17 g | 17 g | Oral | Nightly PRN |
| • docusate sodium-sennosides (SENOKOT S) 50-8.6 MG 1 tablet | 1 tablet | Oral | Nightly PRN |
| • acetaminophen (TYLENOL) tablet 975 mg | 975 mg | Oral | Q6H PRN |
| • sodium chloride 0.9 % flush bag 25 mL | 25 mL | Intravenous | PRN |

Assessment and Plan:
1. Bipolar I disorder, current episode manic, severe. Patient has shown to be dangerously impulsive. He does have charges against him and with his current level of risk a release to PD for processing may be the safest outcome.
-Seroquel 400 mg at night
-Remain on 1:1 for flight risk and nursing to monitor need for restraints for safety.

PRNs of
Ativan 2 mg IM or PO q 4 hours
Geodon 20 mg IM q 6 hours
Haldol 5 mg oral PO q 6 hours
Benadryl 50 mg IM to be given with haldol
Melatonin 9 mg nightly

2. Stimulant use disorder. Patient remains without insight about this condition.
-No stimulants to be given while here

3. Anxyolytic use disorder.  Increased Klonopin yesterday. Will slowly decrease the medication while he is here, as his mania resolves.

**Advocate Health Care**®

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

-Continue Klonopin 2 mg twice daily
-Continue Buspar 7.5 mg daily

The patient is NOT to be released to the community. He has two trajectories, first to processing for his arrest and with subsequent care under the forensic system, or to a psychiatric unit that can accomodate him in terms of his level of violence.

Electronically signed by Murphy, Laura A, MD at 2/3/2023  2:38 PM

**Piper, Patrick M, MD at 2/3/2023 1916**

Subjective
Remains in violent restraints overnight.  Nursing staff reports ongoing agitation and screaming out removed from restraints.  Repeatedly asking to remove same as states uncomfortable.  Upset that he was not discharged today as he was hoping to be.  Still does not seem to show much remorse for injuring versus stating he would never do that again.  I did see patient in the room with nurse was administering a dose of as needed Geodon

Objective
**I/O's**

Intake/Output Summary (Last 24 hours) at 2/3/2023 1905
Last data filed at 2/3/2023 1111
        Gross per 24 hour
Intake            —
Output        2400 ml
**Net**          **-2400 ml**

**Last Recorded Vitals**
Blood pressure 122/67, pulse **(!) 58**, temperature 97.7 °F (36.5 °C), temperature source Axillary, resp. rate 16, height 6' (1.829 m), SpO2 98 %.
Body mass index is 26.72 kg/m².

**Physical Exam**
Constitutional:
    Comments: **Well-developed male**
**By restricted bed**
**Repeatedly asking for removal of restraints**
**And screaming out at times but consolable**
**But redirected does not appear uncomfortable**
Musculoskeletal:
    Comments: **4 point locked violent restraints remain in place**
**And able to slide my finger through all 4 restraints**

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

**There is no surrounding trauma**
**Feet and hands remain warm**

**Labs**

**Imaging**

Assessment & Plan

**\* Aggressive behavior**

Assessment & Plan

Patient remains a risk to others and injured four staff members this afternoon
Psychiatry consult appreciated
He was placed in violent restraints-wrist and ankle yesterday around 4:15pm
Public Safety and Park Ridge police were summoned
Patient was transferred to a single room in the medically managed withdrawal unit
Observed subsequent throughout the day
Remains agitated
Violent restraints being continue bedside titrate (agree)

**Acute left-sided low back pain without sciatica**

Assessment & Plan

No red flags again on history or exam prior days
Patient does have evidence of muscle spasm on prior exams
Did have bony tenderness yesterday
Without complaining of pain today
Monitor
X-rays were more appropriate for exam
Continue scheduled Tylenol p.o. as needed

**Paranoia (psychosis) (CMS/HCC)**

Assessment & Plan

Evidence of paranoia reflected in prior hospitalizations
Prior dx bipolar
Systems consistent with bipolar disorder with severe mania
Started on Seroquel 300 mg p.o. nightly 2 nights ago
This is been increased to 1 mg p.o. nightly along with 100 mg twice daily
Klonopin discontinued
And Ativan 2 mg IV or p.o. every 4 hours
Geodon 20 mg IM every 8 hours as needed has been added

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

Management per psychiatry
Seroquel has been increased to 300 mg p.o. nightly and Seroquel 100 mg in the morning and afternoon and 400 at night
He still has as needed Haldol and Ativan


**Attention deficit hyperactivity disorder (ADHD)**
*Assessment & Plan*
Patient reports prior diagnosis
Has been on Adderall for several years
Again states it helps keep him calm
Had been obtaining off the street prior to admission
Continue to hold as
Likely contributing to agitation and aggression




**DVT Prophylaxis**
Lovenox

**Smoking Cessation**
Counseling given: Not Answered




Electronically signed by Piper, Patrick M, MD at 2/3/2023  7:16 PM



**Murphy, Laura A, MD at 2/4/2023 1018**

Psychiatric Consult
Progress Note


ID: This is a 26 year old male, single, unemployed, domiciled with family. The patient was brought into the ED after he became agitated at home. He attackedhis brother for money, he hit a car. On arrival he was positive for benzodiazepines and amphetamines and a substance breakdown from 1/16 showed methamphetamine.  He was positive for Covid and is now on the medical unit on quarantine.

Interval Events: Remains in restraints and two to 1 with security present, due to extreme unpredictability and risk of violence.  Received Geodon yesterday at 4:30 PM. No PRN medications given for agitation overnight. Per nursing, no acuity this AM, brushed his teeth. Focus note from yesterday indicates late medication changes.

Chief Complaint:  Its because I need the right medication.

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT H

## NURSING FLOWSHEETS

**CONTRADICTORY ENTRIES | 23:00 CST: "Asleep" AND "Striking Out/Punching"**

---

**EVIDENTIARY SUMMARY**

Nursing flowsheets containing impossible contradictory documentation at identical
timestamp: "Patient asleep" AND "Striking out/Punching" at 23:00 CST on 02/06/2023.
Proves falsified medical records to justify continued unlawful restraint.

**RELEVANCE TO RICO CLAIMS:**
   Direct evidence of fraudulent medical record fabrication

**THIS EXHIBIT PROVES:**
   • Contradictory entries at same timestamp
   • Impossible simultaneous states documented
   • Evidence of record falsification
   • Pattern of fabricated justifications

---

■ **KEY TIMESTAMPS:**
   • 02/06/2023 23:00 CST - Contradictory entries

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 01/31/23 0625 Documented: 01/31/23 0630 | Given | 40 mg | Oral | Performed by: Santelices, Francis Angelo D, RN Scanned Package: 35573-428-51 |
| Performed 01/30/23 0532 Documented: 01/30/23 0532 | Given | 40 mg | Oral | Performed by: Domanchuk, Tetyana, RN Scanned Package: 35573-428-51 |
| Performed 01/29/23 0942 Documented: 01/29/23 0943 | Given | 40 mg | Oral | Performed by: Jaramillo, Mariana J, RN Scanned Package: 35573-428-51 |

**polyethylene glycol (MIRALAX) packet 17 g [15696822342]**

Ordering Provider: Ruzich, Gregory P, MD

Ordered On: 01/31/23 1711
Ordered Dose (Remaining/Total): 17 g (—/—)
Frequency: NIGHTLY PRN
Admin Instructions: Dose = 17 grams/packet.  Dissolve contents of each packet in 8 oz. of water.

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 01/31/23 1711 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 01/31/23 1731 Documented: 01/31/23 1732 | Given | 17 g | Oral | Performed by: Chavero, Brenda E, RN Scanned Package: 62559-157-30 |

**QUEtiapine (SEROquel) tablet 100 mg [15696822383]**

Ordering Provider: Murphy, Laura A, MD

Ordered On: 02/02/23 1644
Ordered Dose (Remaining/Total): 100 mg (—/—)
Frequency: 2 TIMES DAILY
Admin Instructions: Hold for somnolence

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/02/23 1830 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/07/23 0817 Documented: 02/07/23 0817 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN Scanned Package: 16714-454-01 |
| Performed 02/06/23 1701 Documented: 02/06/23 1701 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN Scanned Package: 16714-454-01 |
| Performed 02/06/23 0836 Documented: 02/06/23 0836 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN Scanned Package: 16714-454-01 |
| Performed 02/05/23 1608 Documented: 02/05/23 1608 | Given | 100 mg | Oral | Performed by: Allen, Aimee, RN |



# Advocate Health Care

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

## 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 02/05/23 0833<br>Documented: 02/05/23 0934 | Given | 100 mg | Oral | Performed by: Allen, Aimee, RN |
| Performed 02/04/23 1750<br>Documented: 02/04/23 1751 | Given | 100 mg | Oral | Performed by: Halloran, Joseph W, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/04/23 0857<br>Documented: 02/04/23 0904 | Given | 100 mg | Oral | Performed by: Halloran, Joseph W, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/03/23 1635<br>Documented: 02/03/23 1636 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/03/23 0954<br>Documented: 02/03/23 0954 | Given | 100 mg | Oral | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 16714-454-01 |
| Performed 02/02/23 1831<br>Documented: 02/02/23 1831 | Given | 100 mg | Oral | Performed by: Jiva, Shirin Z, RN<br>Scanned Package: 16714-454-01 |

### QUEtiapine (SEROquel) tablet 300 mg [15695928414]

Ordering Provider: Murphy, Laura A, MD
Ordered On: 01/30/23 1249
Ordered Dose (Remaining/Total): 300 mg (—/—)
Frequency: NIGHTLY

Status: Discontinued (Past End Date/Time)
Starts/Ends: 01/30/23 2100 - 02/02/23 1233
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/01/23 2124<br>Documented: 02/01/23 2125 | Given | 300 mg | Oral | Performed by: Domanchuk, Tetyana, RN<br>Scanned Package: 16714-454-01, 16714-454-01, 16714-454-01 |
| Performed 01/31/23 2004<br>Documented: 01/31/23 2006 | Given | 300 mg | Oral | Performed by: Santelices, Francis Angelo D, RN<br>Scanned Package: 16714-454-01, 16714-454-01, 16714-454-01 |
| Performed 01/30/23 2219<br>Documented: 01/30/23 2222 | Given | 300 mg | Oral | Performed by: Labuda, Buwen, RN<br>Scanned Package: 16714-454-01, 16714-454-01, 16714-454-01 |

### QUEtiapine (SEROquel) tablet 400 mg [15696822377]

Ordering Provider: Murphy, Laura A, MD

Ordered On: 02/02/23 1233
Ordered Dose (Remaining/Total): 400 mg (—/—)

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/02/23 2100 - 02/07/23 1326
Route: Oral



Advocate Health Care

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

### 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

**Medication Administrations (continued)**

Frequency: NIGHTLY          Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/06/23 2050<br>Documented: 02/06/23 2052 | Given | 400 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 68180-448-01, 68180-448-01 |
| Performed 02/05/23 2016<br>Documented: 02/05/23 2017 | Given | 400 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 68180-448-01, 68180-448-01 |
| Performed 02/04/23 2144<br>Documented: 02/04/23 2146 | Given | 400 mg | Oral | Performed by: Gaerlan, Sandra Pamela, RN<br>Scanned Package: 68180-448-01, 68180-448-01 |
| Performed 02/03/23 2120<br>Documented: 02/03/23 2121 | Given | 400 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 16714-455-01, 16714-455-01 |
| Performed 02/02/23 2116<br>Documented: 02/02/23 2116 | Given | 400 mg | Oral | Performed by: Jiva, Shirin Z, RN<br>Scanned Package: 16714-455-01, 16714-455-01 |

**senna (SENOKOT) 17.2 mg [15701323299]**

Ordering Provider: Edwards, Ryan T, DO

Ordered On: 02/05/23 1000
Ordered Dose (Remaining/Total): 2 tablet (—/—)
Frequency: NIGHTLY

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/05/23 2100 - 02/07/23 1326
Route: Oral
Ordered Rate/Order Duration: — / —

| Timestamps | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| Performed 02/06/23 2050<br>Documented: 02/06/23 2052 | Given | 17.2 mg | Oral | Performed by: Kourelis V, Alyssa, RN<br>Scanned Package: 57896-454-01, 57896-454-01 |
| Performed 02/05/23 2017<br>Documented: 02/05/23 2017 | Given | 17.2 mg | Oral | Performed by: Smyla, Sebastian P, RN<br>Scanned Package: 57896-454-01, 70677-0058-1 |

**sodium chloride (PF) 0.9 % injection 2 mL [15695818058]**

Ordering Provider: Salamatipour, Ashkan, DO

Ordered On: 01/29/23 0359
Ordered Dose (Remaining/Total): 2 mL (—/—)
Frequency: 2 times per day

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 01/29/23 0900 - 02/07/23 1326
Route: Intracatheter
Ordered Rate/Order Duration: — / —

| Timestamps | Action / Reason | Dose | Route | Other Information |
|---|---|---|---|---|
| | | | | |



**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Medication Administrations (continued)**

| | | | | |
|---|---|---|---|---|
| Performed 02/07/23 0817<br>Documented: 02/07/23 0818 | Not Given Order parameters not met | 2 mL | Intracatheter | Performed by: Abbatacola, Nicole M, RN |
| Performed 02/06/23 2148<br>Documented: 02/06/23 2148 | Not Given Other: Comment | 2 mL | Intracatheter | Performed by: Kourelis V, Alyssa, RN<br>Comments: pt ok no iv |
| Performed 02/06/23 1007<br>Documented: 02/06/23 1007 | Not Given Order parameters not met | 2 mL | Intracatheter | Performed by: Abbatacola, Nicole M, RN |
| Performed 02/05/23 2015<br>Documented: 02/05/23 2015 | Not Given Other: Comment | 2 mL | Intracatheter | Performed by: Smyla, Sebastian P, RN<br>Comments: No IV access. |
| Performed 02/05/23 0833<br>Documented: 02/05/23 0935 | Not Given Loss of IV access | 2 mL | Intracatheter | Performed by: Allen, Aimee, RN<br>Comments: No IV access |
| Performed 02/04/23 2205<br>Documented: 02/04/23 2205 | Not Given Other | 2 mL | Intracatheter | Performed by: Gaerlan, Sandra Pamela, RN |
| Performed 02/04/23 0839<br>Documented: 02/04/23 0839 | Not Given Loss of IV access | 2 mL | Intracatheter | Performed by: Halloran, Joseph W, RN |
| Performed 02/03/23 2121<br>Documented: 02/03/23 2121 | Not Given Other: Comment | 2 mL | Intracatheter | Performed by: Smyla, Sebastian P, RN<br>Comments: No IV access. |
| Performed 02/03/23 0954<br>Documented: 02/03/23 0955 | Not Given Other: Comment | — | Intracatheter | Performed by: Abbatacola, Nicole M, RN<br>Comments: No IV line<br>Scanned Package: 8290-306544 |
| Performed 02/02/23 2118<br>Documented: 02/02/23 2118 | Canceled Entry — | | Intracatheter | Performed by: Jiva, Shirin Z, RN |
| Performed 02/02/23 0803<br>Documented: 02/02/23 0804 | Not Given Other: Comment | 2 mL | Intracatheter | Performed by: Jaramillo, Mariana J, RN<br>Comments: No piv |
| Performed 02/01/23 2127<br>Documented: 02/01/23 2127 | Not Given Loss of IV access | 2 mL | Intracatheter | Performed by: Domanchuk, Tetyana, RN |

Printed on 10/28/25  8:21 AM　　　　　　　　　　　　　　　　　　　　　　　　Page 239

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

---

## 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

### Medication Administrations (continued)

| | | | | |
|---|---|---|---|---|
| Performed 02/01/23 0935<br>Documented: 02/01/23 0935 | Not Given<br>Loss of IV access | 2 mL | Intracatheter | Performed by: Demeros, Helen, RN |
| Performed 01/31/23 2224<br>Documented: 01/31/23 2224 | Not Given<br>Other | 2 mL | Intracatheter | Performed by: Santelices, Francis Angelo D, RN<br>Comments: NO IV acesss MD aware |
| Performed 01/31/23 0824<br>Documented: 01/31/23 0824 | Not Given<br>Other: Comment | 2 mL | Intracatheter | Performed by: Chavero, Brenda E, RN<br>Comments: no iv access |
| Performed 01/30/23 2215<br>Documented: 01/30/23 2216 | Not Given<br>Other: Comment | 2 mL | Intracatheter | Performed by: Labuda, Buwen, RN<br>Comments: Pt refused PIV - MD ok |
| Performed 01/30/23 0809<br>Documented: 01/30/23 0810 | Not Given<br>Other: Comment | 2 mL | Intracatheter | Performed by: Salvallon, Paolo M, RN<br>Comments: NO IV |
| Performed 01/29/23 2025<br>Documented: 01/29/23 2025 | Not Given<br>Other: Comment | 2 mL | Intracatheter | Performed by: Domanchuk, Tetyana, RN<br>Comments: no IV access |
| Performed 01/29/23 1001<br>Documented: 01/29/23 1001 | Not Given<br>Other: Comment | 2 mL | Intracatheter | Performed by: Jaramillo, Mariana J, RN<br>Comments: PIV |

---

### ziprasidone (GEODON) injection 20 mg [15700035023]

Ordering Provider: Murphy, Laura A, MD

Ordered On: 02/02/23 1712
Ordered Dose (Remaining/Total): 20 mg (—/—)
Frequency: EVERY 8 HOURS PRN
Admin Instructions: * For INTRAMUSCULAR administration only *
Immediately prior to administration, dilute vial with 1.2 mL
preservative-free Sterile Water for Injection to make a 20 mg/1 mL
solution. Shake vial vigorously until drug dissolved. Withdraw
ordered dose (10 mg = 0.5 mL, 20 mg = 1 mL). Discard any
remaining solution.

Status: Discontinued (Past End Date/Time), Reason: Patient Discharge
Starts/Ends: 02/02/23 1712 - 02/07/23 1326
Route: Intramuscular
Ordered Rate/Order Duration: — / —
* For INTRAMUSCULAR administration only * May cause
prolongation of QT interval. * Max dose = 40 mg/24 hours *

| Timestamps | Action | Dose | Route / Site | Other Information |
|---|---|---|---|---|
| Performed 02/06/23 1007<br>Documented: 02/06/23 1007 | Given | 20 mg | Intramuscular<br>Arm, Left | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 43598-848-11 |
| Performed 02/05/23 0910<br>Documented: 02/05/23 0935 | Given | 20 mg | Intramuscular<br>Deltoid, Right | Performed by: Allen, Aimee, RN<br>Comments: See Note |

Advocate Health Care

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

## Medication Administrations (continued)

| | | | | |
|---|---|---|---|---|
| Performed 02/04/23 1412<br>Documented:<br>02/04/23 1412 | Given | 20 mg | Intramuscular<br>Deltoid, Right | Performed by: Halloran, Joseph W, RN<br>Scanned Package: 43598-848-11 |
| Performed 02/03/23 1622<br>Documented:<br>02/03/23 1622 | Given | 20 mg | Intramuscular<br>Arm, Left | Performed by: Abbatacola, Nicole M, RN<br>Scanned Package: 43598-848-11 |
| Performed 02/03/23 0038<br>Documented:<br>02/03/23 0038 | Given | 20 mg | Intramuscular<br>Arm, Left | Performed by: Sosa-Sandoval, Malleli, RN<br>Scanned Package: 43598-848-11 |

## All Other Orders (group 1 of 2)

### Admission

#### Admit to Inpatient (Completed)

Electronically signed by: **Tonellato, Daniel J, MD on 01/29/23 0327**                  Status: **Completed**
Ordering user: Tonellato, Daniel J, MD 01/29/23 0327          Ordering provider: Tonellato, Daniel J, MD
Authorized by: Tonellato, Daniel J, MD                        Ordering mode: Standard
Cosigning events
Electronically cosigned by Chicoine, Brian A, MD 01/29/23 0333 for Ordering
Frequency: Routine 1 Time 01/29/23 0328 - 1 occurrence        Class: Hospital Performed
Quantity: 1                                                   Instance released by: Tonellato, Daniel J, MD (auto-released)
                                                             1/29/2023 3:28 AM

##### Questionnaire

| Question | Answer |
|---|---|
| Telemetry Bed? | No |
| Admitting Physician | CHICOINE, BRIAN A |
| Transferring Patient to? Only adjust for transfers between Children's and Main Hospitals (LGH and CMC) | ADVOCATE LUTHERAN GENERAL HOSPITAL |
| Is this a telephone or verbal order? | This is a telephone order from the admitting physician |

##### Updates

Diagnosis: Aggressive behavior [R46.89]          Level of care: Acute
Patient class: Inpatient                         Service: Medical

#### Admit Status Change (Patient Class Change) - Observation (Completed)

Electronically signed by: **Piper, Patrick M, MD on 01/31/23 1708**                  Status: **Completed**
Ordering user: Piper, Patrick M, MD 01/31/23 1708            Ordering provider: Piper, Patrick M, MD
Authorized by: Piper, Patrick M, MD                          Ordering mode: Standard
Frequency: Routine 1 Time 01/31/23 1709 - 1 occurrence       Class: Hospital Performed
Quantity: 1                                                   Instance released by: Piper, Patrick M, MD (auto-released)
                                                             1/31/2023 5:08 PM

##### Questionnaire

| Question | Answer |
|---|---|
| Patient Class Change | Physician agrees with the change in patient status/class |

##### Updates

Patient class: Observation          Service: Medical

#### Admit Status Change (Patient Class Change) - Inpatient (Completed)

Printed on 10/28/25 8:21 AM                                                                    Page 241

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT I

## DR. MURPHY'S RESTRAINT RENEWAL ORDERS

**Precisely-Timed 4-Hour Renewals | No Physician Presence Documented**

---

**EVIDENTIARY SUMMARY**

Dr. Laura Murphy's restraint renewal orders showing precisely-timed 4-hour intervals
without corresponding nursing documentation of physician presence or patient assessment.
Pattern suggests pre-signed orders or rubber-stamp renewals without actual evaluation.

**RELEVANCE TO RICO CLAIMS:**
  Proves systematic rubber-stamp renewals without required physician assessments

**THIS EXHIBIT PROVES:**
  • Mechanical 4-hour renewal pattern
  • No documented physician presence
  • No contemporaneous assessments
  • Pattern of illegal restraint continuation

---

■ **KEY TIMESTAMPS:**
  • Every 4 hours from 02/02/2023 18:05 through 02/07/2023

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

Advocate Health Care

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

Clinical Notes (group 5 of 5) (continued)

| | | | | | |
|---|---|---|---|---|---|
| sennosides (SENOKOT S) 50-8.6 MG 1 tablet | | | | | |
| • acetaminophen (TYLENOL) tablet 975 mg | 975 mg | Oral | Q6H PRN | Gregory P Ruzich, MD | 975 mg at 02/06/23 0839 |
| • sodium chloride 0.9 % flush bag 25 mL | 25 mL | Intravenous | PRN | Ashkan Salamatipour, DO | |

## ASSESSMENT AND PLAN:

Ehab is a 26 year old male with newly diagnosed bipolar 1 disorder, possible ADHD, HTN presenting with severe aggression, mania, paranoia likely in setting of acute mania versus substance misuse found to be COVID-positive but asymptomatic.

Principal Problem:
  Aggressive behavior
Active Problems:
  Attention deficit hyperactivity disorder (ADHD)
  Paranoia (psychosis) (CMS/HCC)
  Acute left-sided low back pain without sciatica
  Lab test positive for detection of COVID-19 virus

**#Bipolar I disorder, aggressive behavior, paranoia**
-Appreciate continued follow by psychiatry
-Patient remains a continued danger to self and others.  Per previous conversations you to be concerned to the danger of self and others if discharged to the community.  Safety reasons, the only appropriate avenues for discharge would include psychiatric admit versus disposition to jail.
-Per psychiatry:
        Continued Seroquel 100 mg twice daily
        Continued Seroquel 400 mg bedtime
        Continue Ativan 1 mg q 3 hours

        PRN medications:
        -Geodon 20 mg IM every 8 hours
        -Haldol 5 mg oral p.o. every 6 hours
        -Benadryl 50 mg oral to be given with Haldol
        -Benadryl 50 mg IM for EPS or cramping
        -Melatonin 9 mg nightly
-Continue 2 : 1 sitter with Public Safety and Sitter
-Patient continues to need four-point restraints due to intermittent violent outbursts

**Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

Clinical Notes (group 5 of 5) (continued)

#### #Constipation
Likely slow transit due to sedating medications.
-Monitor for stool output, monitor for symptoms
-Continue Senokot 2 tabs nightly

#### #Lower Back Pain
Appears to be 2/2 muscle spams
- No red flags
- PRN Tylenol, Flexeril, Ibuprofen
- AVOID narcotic use

#### #Hypertension
Unclear if related to excess stimulant use, testosterone use exogenous, ARM used as outpatient. Currently well-controlled.
-hydrochlorothiazide 12.5 mg daily

#### #COVID-19 positive, asymptomatic
Remains asymptomatic, (+) 1/28/2023
Now >10 days since positive COVID test.
Will hold off on repeat testing unless indicated for facility transfer on discharge.

#### #Questionable ADHD, stimulant use disorder
With use of Adderall for years, and has been held in the inpatient setting.
-Per psychiatry, we will continue to hold all stimulant use

**It should be noted that patient was physically aggressive and violent with multiple staff members of the hospital and charges are pending.  It has been communicated to me that the state attorney will decide if patient is to be charged on Monday 2/6.  If charged, patient will be discharged to police custody for subsequent lineup and processing.**

Fluids: None
Electrolytes: Replete PRN
Nutrition: General Diet
DVT PPx: enoxaparin - 40 MG/0.4ML
GI PPx: None
Code Status: Full
Consults:
**IP Consult Orders** (From admission, onward)

| Start | | Ordered |
|---|---|---|
| 01/29/23 1731 | **Inpatient consult to Psychiatry** ONE TIME<br>Provider: Matthew C Atienza, MD | 01/29/23 1730 |
| 01/29/23 0327 | **Inpatient consult to Psychiatry** ONE TIME<br>Provider: Geoffrey Levin, MD | 01/29/23 0327 |

Disposition: Pending transfer to alternate psychiatry facility vs processing for his arrest, awaiting legal

Advocate Health Care

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

decision

PCP: Dr. Benjamin D Catt, DO

Patient discussed with Dr. Soliz. Attending addendum to follow

Jessica M Hyla, MD PGY-1
PerfectServe to Page
2/7/2023 6:30 AM

Electronically signed by Hyla, Jessica M, MD at 2/7/2023 10:00 AM
Electronically signed by Perlow, Bruce A, MD at 2/7/2023 12:04 PM

**Murphy, Laura A, MD at 2/7/2023 1059**

Psychiatric Consult
Progress Note

ID: This is a 26 year old male, single, unemployed, domiciled with family. The patient was brought into the ED after he became agitated at home. He attackedhis brother for money, he hit a car. On arrival he was positive for benzodiazepines and amphetamines and a substance breakdown from 1/16 showed methamphetamine.  He was positive for Covid and is now on the medical unit on quarantine.

Interval Events: Continues to be on restraints with 2:1 observation (with security).  Received Geodon 20 mg once every day for the last three days. Per nursing, the patient was verbally threatening to the nurses that he hurt.

Spoke with mother yesterday. She was emailed a letter for his school.

Chief Complaint: I had to punch them to stop them from lying about me.

Subjective:

Today the patient starts of similarly, he greets this writer, stating he is "fine" trying to watch a program on the computer, "but the captions are too small." The patient denies thoughts of wanting to end his life. Slept "perfectly" overnight. Does report dry mouth on Seroque

However, when we start to question him about the episode of violence that caused the current need for restraint, he clearly has no insight. The patient makes the above chief complaint. He says that we are only holding him here as a prefabricated excuse "to get money for the hospital". He says "You know I didn't need to be here, I could have quarantined at home".  "I only had a little accident with my uncles car."

He asks for an increase in Ativa back to the previous dosage. States he was prescribed that high dosage in the community. He is told we cannot do this as he would be at risk of a seizure if the medication was discontinued from Ativan 12 mg to nothing.  Patient argues with this writer.

Advocate Health Care

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

At the end of the interview, his questions switch toward his freedom. He asks about leaving here (uncertain trajectory), being removed from restraints (not at this time) and being discharged (not safe). He becomes heightened at that time, he raises his voice.  We have to end the interview, due to futility of the discussion. On the way out of his room the patient begins to scream "Your a fucking whore" multiple times.

**Vitals:**

| | 02/07/23 0438 |
|---|---|
| BP: | 116/70 |
| Pulse: | 60 |
| Resp: | 16 |
| Temp: | 97.7 °F (36.5 °C) |

**Mental Status Exam**
Appearance: In bed, in hospital gown, in bed in restraints.
Behavior/Attitude: Awake and alert, in no duress, good eye contact.
Motor: No psychomotor agitation, no tics or tremors.
Speech: Normal in rhythm rate and prosody
Mood- "ok"
Affect-becomes frustrated and angry, mood congruent
Thought Process: Linear today
Thought Content: Minimizing, continues to have paranoia about the incident where he became agitated. Becomes profane.  No suicidality is reported.
Perceptions:  No evidence of response to internal stimuli. Denies AVH.
Insight: Poor
Judgment: Poor
General Cognition-: Fully oriented.

**Scheduled Medications:**
**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency | Provider | Last Rate | Last Admin |
|---|---|---|---|---|---|---|
| • LORazepam (ATIVAN) injection 1 mg Or | 1 mg | Intramuscular | Q3H | Laura A Murphy, MD | | |
| • LORazepam (ATIVAN) tablet 1 mg | 1 mg | Oral | Q3H | Laura A Murphy, MD | | 1 mg at 02/07/23 0817 |
| • senna (SENOKOT) 17.2 mg | 2 tablet | Oral | Nightly | Ryan T Edwards, DO | | 17.2 mg at 02/06/23 2050 |
| • QUEtiapine (SEROquel) | 400 mg | Oral | Nightly | Laura A Murphy, MD | | 400 mg at |

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

**Clinical Notes (group 5 of 5) (continued)**

| | | | | | |
|---|---|---|---|---|---|
| tablet 400 mg | | | | | 02/06/23 2050 |
| • QUEtiapine (SEROquel) tablet 100 mg | 100 mg | Oral | BID | Laura A Murphy, MD | 100 mg at 02/07/23 0817 |
| • lidocaine (LIDOCARE) 4 % patch 1 patch | 1 patch | Transdermal | Once | Thomas Schmittdiel, MD | |
| • sodium chloride (PF) 0.9 % injection 2 mL | 2 mL | Intracatheter | 2 times per day | Ashkan Salamatipour, DO | |
| • enoxaparin (LOVENOX) injection 40 mg | 40 mg | Subcutaneous | Nightly | Ashkan Salamatipour, DO | 40 mg at 02/06/23 2050 |
| • hydroCHLOROthiazide (HYDRODIURIL) tablet 12.5 mg | 12.5 mg | Oral | Daily | Ashkan Salamatipour, DO | 12.5 mg at 02/07/23 0817 |
| • pantoprazole (PROTONIX) EC tablet 40 mg | 40 mg | Oral | QAM AC | Arkad Yousif, DO | 40 mg at 02/07/23 0639 |

**PRN Medications**
**Current Facility-Administered Medications**

| Medication | Dose | Route | Frequency |
|---|---|---|---|
| • ibuprofen (MOTRIN) tablet 400 mg | 400 mg | Oral | Q6H PRN |
| • haloperidol (HALDOL) tablet 5 mg | 5 mg | Oral | Q6H PRN |
| • diphenhydrAMINE (BENADRYL) capsule 50 mg | 50 mg | Oral | Q6H PRN |
| • diphenhydrAMINE (BENADRYL) injection 50 mg | 50 mg | Intramuscular | Q6H PRN |



**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab

MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)**

Clinical Notes (group 5 of 5) (continued)

| | | | |
|---|---|---|---|
| • cyclobenzaprine (FLEXERIL) tablet 10 mg | 10 mg | Oral | TID PRN |
| • ziprasidone (GEODON) injection 20 mg | 20 mg | Intramuscular | Q8H PRN |
| • melatonin tablet 9 mg | 9 mg | Oral | Nightly PRN |
| • polyethylene glycol (MIRALAX) packet 17 g | 17 g | Oral | Nightly PRN |
| • docusate sodium-sennosides (SENOKOT S) 50-8.6 MG 1 tablet | 1 tablet | Oral | Nightly PRN |
| • acetaminophen (TYLENOL) tablet 975 mg | 975 mg | Oral | Q6H PRN |
| • sodium chloride 0.9 % flush bag 25 mL | 25 mL | Intravenous | PRN |

Assessment and Plan:
1. Bipolar I disorder, current episode manic, severe.
The patient has had impulsive outbursts that are less related to a mania, and more to a cluster B personality presentation. However he is still paranoid about the incident and has no insight, thinking his behavior was justified.
-Remain on 1:1 for safety risk and nursing to monitor need for restraints (locked verses soft violent)
-Continue Seroquel 400 mg at night
-Continue Seroquel 100 mg q am, 100 mg in afternoon
- Continue Ativan 1 mg PO or IM q 3 hours, hold for sedation, patient has Ativan PO q 6 hours ordered at the Walgreens.

PRNs of
Geodon 20 mg IM q 8 hours
Haldol 5 mg oral PO q 6 hours
Benadryl 50 mg oral q 6 hours to be given with haldol
Benadryl 50 mg IM q 6 hours for EPS or cramping
Melatonin 9 mg nightly

2. Stimulant use disorder. Patient remains without insight about this condition.
-No stimulants to be given while here

3. Anxyolytic use disorder.  As the patient's trajectory is unclear, we have stepped down his Ativan, to avoid

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT J

## SUBPOENA TRACKING SHEET

**February 21, 2023 | "Detective Fitzgerald #142... report will not be included"**

---

### EVIDENTIARY SUMMARY

Internal tracking document with handwritten annotation: "Detective Fitzgerald #142...
report will not be included in subpoena." Evidence of deliberate exclusion of potentially
exculpatory investigative findings from discovery materials.

**RELEVANCE TO RICO CLAIMS:**
  Evidence of spoliation and obstruction of justice

**THIS EXHIBIT PROVES:**
  • Deliberate exclusion of detective report
  • Fitzgerald report exists but hidden
  • Pattern of evidence suppression
  • Potential Brady violation

---

■ **KEY TIMESTAMPS:**
  • 02/21/2023 - Tracking sheet annotated

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

**Subpoena Tracking Sheet**

**Case Details:**

Arrestee's Name: _Ehab Allababidi_                              Court Date: _02/23/2023_

Park Ridge Case #: _PR-23-00003197_

Arrest Date: _02/07/2023_

Subpoena Received Date: _02/10/2023_

Court Case #: _2320005510l_

Type (Circle):   Misdemeanor   /   Preliminary   /   (Felony)   /   Juvenile

Attorney (Circle): (ASA) / Defense / Private

Attorney(s) Name(s): _Paige Reinauer / Clara Malkin / Nicolas Attia / Moira Dunn_

**Evidence.com Collection - Enter Date Completed:**

Created Evidence.com Case File: _02/17/2023_

Case File/Name#:

"_2320005510l _ PR-23-00003197 _ ALLABABIDI_"

Added BWC footage: _02/20/2023_

Added In-Station video: _02/17/2023_

**SharePoint Evidence Collection - Enter Date Completed:**

Created SharePoint Case Folder on the K: Drive: _02/10/2023_

Case File/Name#:

"_232000 5510l _ PR-23-00003197 _ ALLABABIDI_"

Emailed 'Cook County 9-1-1 Request for Audio Information': _02/17/2023_

Added PDFs of files from RMS systems/arrest jackets: _2/17/2023_

Added photos/evidence from BEAST: _02/15/2023_

Added Squad video: _NONE_

**Additional Notes (Officer Subpoenas, etc.):**

_Arresting officer, Detective Fitzgerald #142 is out on FMLA, his portion of the report is currently in prelim, waiting on instruction from his supervisor. That report will not be included in subpoena._

SharePoint Shared: _02/21/2023_  Evidence.com Shared: _02/20/2023_  Records Tech Initials: _EB_



**UNITED STATES DISTRICT COURT**

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*Allababidi v. Advocate Health and Hospitals Corporation, et al. | Case No. _____*

# EXHIBIT K

## HOSPITAL FACE SHEET/INSURANCE INFORMATION

### Interstate Wire Destination: PO Box 650712, Dallas, TX 75265-0712

---

**EVIDENTIARY SUMMARY**

Hospital admission face sheet documenting Blue Cross Community Health Plan claims
processing address at PO Box 650712, Dallas, Texas 75265-0712. Proves interstate
wire transmission element for federal wire fraud jurisdiction (18 U.S.C. § 1343).

**RELEVANCE TO RICO CLAIMS:**
  Establishes interstate commerce element for federal RICO jurisdiction

**THIS EXHIBIT PROVES:**
  • Dallas, TX claims processing address
  • Interstate wire transmission
  • Federal jurisdiction established
  • Wire fraud element satisfied

---

■ **KEY TIMESTAMPS:**
  • 01/28/2023 - Insurance information recorded

---

*This exhibit is a true and correct copy of the original document(s) obtained through authorized discovery.*
*Plaintiff certifies under penalty of perjury that these records have not been altered or modified.*

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

**01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu**

# ADVOCATE LUTHERAN GENERAL HOSPITAL

| | |
|---|---|
| Encounter Date: | **1/28/2023** |
| Hospital Account: | **467392168** |
| MRN: | **4937574** |
| Guarantor: | **ALLABABIDI,EHAB** |
| Contact Serial #: | **10390770257** |

## ENCOUNTER

| | | | | | |
|---|---|---|---|---|---|
| Patient Class: | **IP** | Provider/Resource: | | Unit: | **LGH MMWU** |
| Hospital Service: | **Detox Unit** | | | Room/Bed: | **1258/05** |
| Admitting Provider: | **Piper, Patrick M, Md** | | | Referring Physician: | **No ref. provider found** |
| Attending Provider: | **Soliz, May, Md** | | | Adm Diagnosis: | **Aggressive behavior [R46*** |

## PATIENT

| | | | |
|---|---|---|---|
| Name: | **ALLABABIDI, EHAB** | DOB: | **9/24/1996 (26 yrs)** |
| Address: | **8516 W WINONA ST** | Legal Sex: | **Male** |
| City: | **CHICAGO IL 60656-2720** | Primary Phone: | **708-490-9147** |
| Primary Care Provider: | **Pcp Outside Aah, Unknown** | Home Phone: | **000-000-0000** |
| Language: | **English** | Work Phone: | |
| Ethnicity: | **Not of Hispanic or Latin*** | Mobile Phone: | **708-490-9147** |
| Race: | **White** | Alternate Person | **312-438-6459** |

### EMERGENCY CONTACT

| Contact Name | Legal Guardian? | Relationship to Patient | Home Phone | Mobile Phone | Work Phone |
|---|---|---|---|---|---|
| **1. EL LOULOU,NAWAL** | | **Mother** | | **773-931-7918** | |
| | | | *1st Contact Primary Phone: Mobile phone [3]* | | |
| **2. ALLABABIDI,NUR** | | **Brother** | **(000)000-0000** | **773-641-9702** | |
| | | | *2nd Contact Primary Phone: Mobile phone [3]* | | |

### ACTIVE SUBSTITUTE DECISION MAKER

| Contact Name | Legal Guardian? | Relationship to Patient | Home Phone | Mobile Phone | Work Phone |
|---|---|---|---|---|---|
| *No SDM Specified* | | | | | |
| | | | *Primary Phone:* | | |

## GUARANTOR

| | | | |
|---|---|---|---|
| Guarantor: | **ALLABABIDI,EHAB** | DOB: | **9/24/1996** |
| Address: | **8516 W WINONA ST** | Sex: | **Male** |
| | **CHICAGO, IL 60656-2720** | | |
| Relation to Patient: | **Self** | Home Phone: | **000-000-0000** |
| Guarantor ID: | **2000041341** | Work Phone: | |
| Guarantor Employer: | | Employment Status: | **NOT EMPLO*** |

## COVERAGE

| PRIMARY INSURANCE PAYOR: | **BLUE CROSS COMMUNIT*** | Plan: | **BLUE CROSS COMMUNITY IL *** |
|---|---|---|---|
| Group Number: | **ILCD0001** | Insurance Type: | **INDEMNITY** |
| Subscriber Name: | **ALLABABIDI,EHAB** | Subscriber DOB: | **09/24/1996** |
| Subscriber ID: | **XXL901695545** | Claim Address: | **PO BOX 650712**<br>**DALLAS, TX 75265-0712** |
| Pat. Rel. to Subscriber: | **Self** | Claim Phone: | |
| SECONDARY INSURANCE PAYOR: | | Plan: | |
| Group Number: | | Insurance Type: | |
| Subscriber Name: | | Subscriber DOB: | |
| Subscriber ID: | | Claim Address: | |
| Pat. Rel. to Subscriber: | | Claim Phone: | |

 **Advocate Health Care**

ADVOCATE LUTHERAN GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

### 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

**Contact Serial #** 10390770257

October 28, 2025

## Reason for Visit

Chief complaint: Psychiatric Evaluation
Visit diagnoses:
- Aggressive behavior (primary)
- COVID-19 virus infection
- Attention deficit hyperactivity disorder (ADHD), unspecified ADHD type
- Paranoia (psychosis)
- Acute left-sided low back pain without sciatica
- Generalized anxiety disorder

Hospital problems:
- **Aggressive behavior (primary)**
- Acute left-sided low back pain without sciatica
- Attention deficit hyperactivity disorder (ADHD)
- Lab test positive for detection of COVID-19 virus
- Paranoia (psychosis)

## Visit Information

### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 01/28/2023 1818 | Admit Date/Time: | 01/28/2023 1846 | IP Adm. Date/Time: | 01/29/2023 0328 |
| Admission Type: | Emergency | Point of Origin: | Non-healthcare Facility Point Of Origin | Admit Category: | |
| Means of Arrival: | Self | Primary Service: | Detox Unit | Secondary Service: | N/A |
| Transfer Source: | | Service Area: | ADVOCATE HEALTH CARE | Unit: | LUTHERAN GENERAL HOSPITAL 12 MMWU |
| Admit Provider: | Piper, Patrick M, MD | Attending Provider: | Hillman, Beth M, DO | Referring Provider: | |

### ED Disposition

| ED Disposition | Condition | User | Date/Time | Comment |
|---|---|---|---|---|
| **Admit** | -- | Tonellato, Daniel J, MD | Sun Jan 29, 2023  3:27 AM | Telemetry Bed?: No<br> Admitting Physician: CHICOINE, BRIAN A [66831]<br> Transferring Patient to? Only adjust for transfers between Children's and Main Hospitals (LGH and CMC): ADVOCATE LUTHERAN GENERAL HOSPITAL [90009007]<br> Is this a telephone or verbal order?: This is a telephone order from the admitting physician |

### Discharge Information

| | | |
|---|---|---|
| Date/Time: 02/07/2023 1100 | Disposition: **Jail/law Enforcement** | Destination: **Inpatient Psychiatric Facility** |
| Provider: **Soliz, May, MD** | Unit: LUTHERAN GENERAL HOSPITAL 12 MMWU | |

### Level of Service

| Level of Service |
|---|
| **EMERGENCY DEPARTMENT VISIT LEVEL IV** |

## Medication List

### Medication List

![Advocate Health Care logo] **Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab

MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

## 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

**Medication List (continued)**

ⓘ **This report is for documentation purposes only. The patient should not follow medication instructions within. For accurate instructions regarding medications, the patient should instead consult their physician or after visit summary.**

### Prior To Admission

#### acetaminophen (TYLENOL) 325 MG tablet

Instructions: Take 2 tablets by mouth every 4 hours as needed for Pain.
Authorized by: Malloy, Julia M, CNP          Ordered on: 5/27/2022
Start date: 5/27/2022

#### hydroCHLOROthiazide (HYDRODIURIL) 12.5 MG tablet

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Stop Taking at Discharge
Instructions: Take 1 tablet by mouth daily.
Authorized by: Edwards, Ryan, DO          Ordered on: 12/6/2022
Start date: 12/6/2022          End date: 2/3/2023
Quantity: 90 tablet          Refill: 3 refills by 12/6/2022

#### busPIRone (BUSPAR) 7.5 MG tablet

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Reorder
Instructions: Take 1 tablet by mouth daily.
Authorized by: Catt, Benjamin D, DO          Ordered on: 1/16/2023
Start date: 1/16/2023          End date: 2/3/2023
Quantity: 45 tablet          Refill: No refills remaining

#### clonazePAM (KlonoPIN) 2 MG tablet

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Reorder
Instructions: Take 1 tablet by mouth in the morning and 1 tablet in the evening.
Authorized by: Chaus, Farah M, MD          Ordered on: 1/16/2023
Start date: 1/16/2023          Quantity: 28 tablet
Refill: No refills remaining

#### amphetamine-dextroamphetamine (ADDERALL XR) 30 MG 24 hr capsule

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Stop Taking at Discharge
Instructions: Take 1 capsule by mouth daily.
Authorized by: Chaus, Farah M, MD          Ordered on: 1/16/2023
Start date: 1/16/2023          End date: 2/3/2023
Quantity: 14 capsule          Refill: No refills remaining

#### propranolol (INDERAL) 80 MG tablet

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Stop Taking at Discharge
Instructions: Take 80 mg by mouth in the morning and 80 mg in the evening.
Entered by: Fakhouri, Lara N, RPH          Entered on: 1/29/2023
End date: 2/3/2023

#### QUETiapine (SEROquel) 200 MG tablet

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Stop Taking at Discharge
Instructions: Take 200 mg by mouth daily.
Entered by: Fakhouri, Lara N, RPH          Entered on: 1/29/2023

#### buPROPion (WELLBUTRIN SR) 150 MG 12 hr tablet

Discontinued by: Piper, Patrick M, MD          Discontinued on: 2/3/2023
Reason for discontinuation: Stop Taking at Discharge
Instructions: Take 150 mg by mouth daily.
Entered by: Fakhouri, Lara N, RPH          Entered on: 1/29/2023

**Advocate Health Care**

ADVOCATE LUTHERAN
GENERAL HOSPITAL
1775 DEMPSTER ST
PARK RIDGE IL 60068-1143

Allababidi, Ehab
MRN: 4937574, DOB: 9/24/1996, Legal Sex: M
Adm: 1/28/2023, D/C: 2/7/2023

### 01/28/2023 - ED to Hosp-Admission (Discharged) in Lutheran General Hospital 12 Mmwu (continued)

**Medication List (continued)**

End date: 2/3/2023

#### Discharge Medication List

**acetaminophen (TYLENOL) 325 MG tablet**

Instructions: Take 2 tablets by mouth every 4 hours as needed for Pain.
Authorized by: Malloy, Julia M, CNP                    Ordered on: 5/27/2022
Start date: 5/27/2022

**QUEtiapine (SEROquel) 400 MG tablet**

Instructions: Take 1 tablet by mouth nightly.
Authorized by: Piper, Patrick M, MD                    Ordered on: 2/3/2023
Start date: 2/3/2023                                    Quantity: 30 tablet
Refill: No refills remaining

**busPIRone (BUSPAR) 7.5 MG tablet**

Instructions: Take 1 tablet by mouth daily.
Authorized by: Piper, Patrick M, MD                    Ordered on: 2/3/2023
Start date: 2/3/2023                                    Quantity: 30 tablet
Refill: No refills remaining

**clonazePAM (KlonoPIN) 2 MG tablet**

Instructions: Take 1 tablet by mouth in the morning and 1 tablet in the evening.
Authorized by: Piper, Patrick M, MD                    Ordered on: 2/3/2023
Start date: 2/3/2023                                    Quantity: 60 tablet
Refill: No refills remaining

**cyclobenzaprine (FLEXERIL) 10 MG tablet**

Instructions: Take 1 tablet by mouth 3 times daily as needed for Muscle spasms.
Authorized by: Piper, Patrick M, MD                    Ordered on: 2/3/2023
Start date: 2/3/2023                                    Quantity: 10 tablet
Refill: No refills remaining

**melatonin 3 MG**

Instructions: Take 3 tablets by mouth nightly as needed (insomnia).
Authorized by: Piper, Patrick M, MD                    Ordered on: 2/3/2023
Start date: 2/3/2023                                    End date: 3/5/2023
Quantity: 30 tablet                                     Refill: No refills remaining

**QUEtiapine (SEROquel) 100 MG tablet**

Instructions: Take 1 tablet by mouth 2 times daily. One pill in the AM, one pill in the afternoon.
Authorized by: Murphy, Laura A, MD                     Ordered on: 2/6/2023
Start date: 2/6/2023                                    Quantity: 60 tablet
Refill: No refills remaining

**LORazepam (ATIVAN) 1 MG tablet**

Instructions: Take 1 tablet by mouth every 6 hours for 10 days.
Authorized by: Murphy, Laura A, MD                     Ordered on: 2/6/2023
Start date: 2/6/2023                                    Quantity: 40 tablet
Refill: No refills remaining

#### Stopped in Visit

**hydroCHLOROthiazide (HYDRODIURIL) 12.5 MG tablet**

Discontinued by: Piper, Patrick M, MD                  Discontinued on: 2/3/2023
Reason for discontinuation: Stop Taking at Discharge

**amphetamine-dextroamphetamine (ADDERALL XR) 30 MG 24 hr capsule**